UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATHAN CONNOLLY AND SHANI MOTT**<br><br>            Plaintiffs<br><br>v.<br><br>**SHANE LANHAM,** *et al.*<br><br>            Defendants | **Case No.:  1:22-cv-02048-SAG** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

Defendants Shane Lanham and 20/20 Valuations, LLC, by and through undersigned counsel, hereby submits this Memorandum of Law in support their Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 25).

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………2

FACTS…………...……………………………………………………………………4

STANDARD OF REVIEW……………………………………………………………6

ARGUMENT…………………………………………………………………………7

    I.    Count I of Plaintiffs' First Amended Complaint (Fair Housing Act) Should be Dismissed…………………………………………………………7

        A.    Plaintiffs' Racial Discrimination Claim Fails to Set Forth Facts to Establish the Requisite Discriminatory Intent…………………7

        B.    In the Alternative, Plaintiffs' Claims Based Upon Fair Housing Act Section 3604 Must be Dismissed Because Plaintiffs' Refinance Application Involved Neither the Sale nor Rental of their Home ...……………………………………21

    II.    Counts III and IV of Plaintiffs' First Amended Complaint (Section 1981 and 1982) Should be Dismissed………………………………………23

J:\2C828\Motion\MTD-Memo.docx

III.    Count V of Plaintiffs' First Amended Complaint (Maryland
        Fair Housing Laws) Should be Dismissed …..…………………………………25

CONCLUSION………………………………………………………………………………27

## INTRODUCTION

This matter arises out of Plaintiffs' allegations of racial discrimination when Defendants performed an appraisal on Plaintiffs' home after Plaintiffs submitted an application to re-finance their mortgage with Co-Defendant loanDepot.com, LLC.  Defendant Shane Lanham is a licensed real estate appraiser and the owner of 20/20 Valuations, LLC.

The claims and causes of action in the First Amended Complaint against Defendants Shane Lanham and 20/20 Valuations, LLC are:

| | |
|---|---|
| Count I | Violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* |
| Count III | Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 |
| Count IV | Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982 |
| Count V | Violation of Maryland Fair Housing Laws, Md. Code, State Gov. § 20-702, *et seq.* |

Plaintiffs allege that Defendants performed the appraisal in a fashion inconsistent with professional appraisal standards because of racial discrimination.  Plaintiffs allege that Defendants limited the search for comparable properties to a very small portion of Plaintiffs' neighborhood, or outside the neighborhood boundary, failed to consider houses throughout Plaintiffs' neighborhood that were more similar than the comparable properties Defendants selected, made excessive downward adjustments to the sales prices of the selected comparable, failed to make appropriate upward adjustments to reflect features that Plaintiffs' house had that others did not, and failed to account for substantial improvements made by Plaintiffs.  Plaintiffs also allege that Mr. Lanham was "indifferent and aloof" during his visit to Plaintiffs' house, that he did not smile, did not make eye contact, said little during the appraisal, and asked Plaintiffs whether they pay dues to the Homeland Association.

Those facts, however, do not establish state a cognizable claim for racial discrimination in violation of the statutes listed above.  While Plaintiffs' have articulated allegations supporting an argument that Defendants "negligently" performed the appraisal (such as by limiting the search for comparable properties or not properly adjusting for features), there is nothing in the factual record to support the Plaintiffs' broad conclusion that Defendants acted "negligently" because of racial discrimination.

Additionally, Plaintiffs allege that six months after Defendants' appraisal, they had another appraisal done with a "whitewashing" experiment, and that the result of the second appraisal was substantially higher.  That fact, however, does not equate to Defendants acting with a racially discriminatory motive; it only establishes that two different appraisals, six month apart, resulted in different appraised values.

Moreover, several of Plaintiffs' claims against Defendants are barred as a matter of law for different reasons.  Because Defendants' appraisal was conducted in connection with an application for a mortgage refinance, and not a purchase or sale transaction, Plaintiffs' claims under Section 3604 of the Fair Housing Act and Section 20-705 of the Maryland Fair Housing Laws are barred as a matter of law and must be dismissed.  Additionally, Plaintiffs' claim under Section 1982 is barred because that statute only applies to discrimination in connection with inheriting, purchasing, leasing, selling, holding, and conveying property, and Plaintiffs' mortgage refinancing transaction did not involve an attempt to inherit, purchase, lease, sell, hold, or convey property.  Lastly, Plaintiffs' claims under the Maryland Fair Housing Laws are barred by failure to exhaust administrative remedies as required under Section 20-1035 of the State Government Article of the Maryland Code.

## FACTS[1]

Plaintiffs, who are African-American, purchased their home located at 209 Churchwardens Road in Baltimore City, Maryland in 2017 for $450,000.  *See* ECF No. 25 at ¶¶35, 45.  Plaintiffs do not allege whether an appraisal of their home was performed when they purchased their home, and if so, the value returned with that appraisal.

Plaintiffs' home is in the Homeland neighborhood of Baltimore City, and abuts Northern Parkway.  *See* ECF No. 25 at ¶¶27-35, 58.  Plaintiffs allege that Homeland is a small neighborhood that is majority "non-Hispanic white."  *See* ECF No. 25 at ¶31.

Plaintiffs allege that in April 2020 took out a home equity loan and invested $35,000 to remodel their club room, $5,000 on a tankless water heater, $5,000 on window well repair, $8,000 on recessed lighting, and $5,000 in landscaping.  *See* ECF No. 25 at ¶36  Plaintiffs allege that these improvements increased the value of their home.  *See* ECF No. 25 at ¶36.  Plaintiffs do not allege whether an appraisal of their home was performed for the home equity loan, and if so, the value returned with that appraisal.

Four years after purchasing their home, in May 2021 Plaintiffs sought to refinance their existing mortgage and home equity loan and submitted an application to Co-Defendant loanDepot.com, LLC.  *See* ECF No. 25 at ¶37.  Plaintiffs allege that in conjunction with the mortgage refinance application, loanDepot.com, LLC hired Defendants to conduct an appraisal of Plaintiffs' home.  *See* ECF No. 25 at ¶43.  Defendant Shane Lanham is a licensed real estate appraiser and the owner of 20/20 Valuations, LLC.  *See* ECF No. 25 at ¶17.

---

[1] The facts set forth in this Memorandum are taken from Plaintiffs' First Amended Complaint, and are accepted as true for purposes of this Motion only.  If this matter proceeds with litigation, Defendants will expressly deny many of the factual averments in the First Amended Complaint.

Plaintiffs allege that on June 14, 2021, Mr. Lanham visited Plaintiffs' home as part of the appraisal process, and that Mr. Lanham was "indifferent and aloof," "did not smile or make eye contact" and "said little." *See* ECF No. 25 at ¶45. Plaintiffs describe Mr. Lanham's demeanor at their home as "significantly different" than when they spoke on the telephone to schedule the visit. *See* ECF No. 25 at ¶45. Thereafter, Mr. Lanham called Plaintiffs and asked if they pay dues or fees to the Homeland Association. *See* ECF No. 25 at ¶47.

With an effective date of June 14, 2021, Mr. Lanham appraised Plaintiffs' property for $472,000. *See* ECF No. 25 at ¶50. When Plaintiffs learned about the appraised amount (from Defendant loanDepot.com, LLC), Plaintiffs explained that there is a long and well-documented history of devaluing Black homes, and that the appraisal was racially discriminatory. *See* ECF No. 25 at ¶¶50-51. Because of the appraised value, Defendant loanDepot.com, LLC denied Plaintiffs' refinance application. *See* ECF No. 25 at ¶100.

In January 2022, Plaintiffs submitted another application to refinance their mortgage and home equity loan with Swift Home Loans. *See* ECF No. 25 at ¶116. Before another appraisal could be conducted, Plaintiffs performed a "whitewashing," including removing "markers of Black identity" such as family photographs and artwork; Plaintiffs also had a white colleague of theirs present at their home during the second appraisal *See* ECF No. 25 at ¶¶118-122. The second appraisal returned a valuation of $750,000. *See* ECF No. 25 at ¶123. Plaintiffs did not attach or provide a copy of the second appraisal with the First Amended Complaint.

Plaintiffs filed their Complaint on August 15, 2022. Plaintiffs allege that Defendants used the sales comparison approach to perform the appraisal, a "common appraisal method," but that Defendants did not follow proper and well-establish appraisal standards because racial discrimination and a "belief that, because they are Black, Dr. Connolly and Dr. Mott did not belong

in Homeland, an attractive and predominantly white neighborhood" and a "belief that Plaintiffs' home is worth less than other homes in Homeland because the homeowners are Black and because the home borders the majority Black area in the northeast corner of Homeland." *See* ECF No. 25 at ¶54. Plaintiffs allege the following defects in Defendants' appraisal:

- Mr. Lanham allegedly improperly limited the geographic area from which he considered properties to compare to Plaintiffs' home. *See* ECF No. 25 at ¶¶55-60.

- Mr. Lanham allegedly selected invalid, low pried, comparable properties without justification. *See* ECF No. 25 at ¶¶61-64.

- Mr. Lanham allegedly depressed his valuation of Plaintiffs' home by improper adjustments (either making negative adjustments to sales prices of comparable properties, or by failing to make adjustments to account for positive aspects of Plaintiffs' home not shared by comparable properties). *See* ECF No. 25 at ¶¶65-72.

## STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 342 (4th Cir. 1999) (internal quotations omitted). Pursuant to the Federal Rules of Civil Procedure, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). When a pleading is deficient, a party may file a motion to dismiss for failure to state a claim. Id., Rule 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must establish "factual plausibility" by pleading "factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A reviewing court must "take the facts in the light most favorable to the plaintiff," but it need not accept legal conclusions drawn from those facts or "unwarranted inferences, unreasonable

6

conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts., Inc. v. J. D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).  *See also Iqbal*, 556 U.S. at 679. "A formulaic recitation of the elements of cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Where the complaint fails to permit a court of law to infer more than the mere possibility of misconduct, the complaint fails as a matter of law.  *Iqbal*, 556 U.S. 679.  Moreover, a complaint should be dismissed where, even if the facts in the complaint are proven true, the plaintiff is not entitled to relief.  Fed. R. Civ. P. 12(b)(6).  A complaint that provides no more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient under the rule.  *Twombly*, 550 U.S. at 555–56.

## ARGUMENT

## I.    Count I of Plaintiffs' First Amended Complaint (Fair Housing Act) Should be Dismissed

### A.    Plaintiffs' Racial Discrimination Claim Fails to Set Forth Facts to Establish the Requisite Discriminatory Intent

The Fair Housing Act (FHA) is a comprehensive open housing law that imposes liability on private actors who discriminate against members of protected classes in the real estate market. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968).

To state a claim under the FHA, a plaintiff must allege he is (1) an "aggrieved person" who (2) has been "subjected to an alleged discriminatory housing practice."  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997) (quoting 42 U.S.C. § 3613(a)(1)(A)). "A plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact." *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).  In this case, Plaintiffs' FHA claim is premised on disparate treatment.  To state a claim for disparate treatment, a plaintiff must allege

the defendant "acted with discriminatory intent." *See Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 976 (N.D. Cal. 2013). A plaintiff need not "prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a motivating factor." *See Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 504 (9th Cir. 2016) (internal quotation and citation omitted). This discriminatory intent may be shown by either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (internal quotation and citation omitted).

In this case, Plaintiffs allege that Mr. Lanham was motivated to discriminate against them based upon their race and that Mr. Lanham had discriminatory intent when he drafted the appraisal because he "did not follow proper and well-established appraisal standards" which resulted in an "undervaluation of Plaintiffs' home." *See* ECF No. 25 at ¶54.  Without more, however, Mr. Lanham's alleged failure to follow proper and well-established appraisal standards, i.e., allegations for a negligence action, does not satisfy Plaintiffs' burden under Rule 12(b)(6) and *Iqbal* and *Twombly* for a racial discrimination claim.

Plaintiffs first allege that Mr. Lanham acted with discriminatory intent and motive because he improperly limited the geographic area from which he considered properties to compare to the Plaintiffs' home.  *See* ECF No. 25 at ¶54. Plaintiffs allege that Mr. Lanham did not review comparable properties from throughout the Homeland neighborhood, but limited his search to houses north of Northern Parkway.  *See* ECF No. 25 at ¶54. Plaintiffs allege that Mr. Lanham chose three comparable properties north of Northern Parkway including one "located outside of Homeland proper, in a majority-Black census block."  *See* ECF No. 25 at ¶54.  Plaintiffs further

8

allege in the First Amended Complaint that, after Plaintiffs appealed the appraisal decision, Mr. Lanham asserted that the comparable properties located north of Northern Parkway were "most locationally similar to" Plaintiffs' home compared to properties in the "heart of Homeland," and that this explanation is "inaccurate and clearly pretextual." *See* ECF No. 25 at ¶58.

To the contrary, Plaintiffs' allegation ignore that "the cliché 'location, location, location' [is] a universal consideration in residential real estate valuation." *In re Espinal*, No. 11-11340, 2012 Bankr. LEXIS 2095, at *5 (Bankr. D.R.I. May 4, 2012). *See also Bank of Am., N.A. v. Sundquist*, 430 P.3d 623, 625 (Utah 2018) ("Location, location, location are, at least according to Lord Harold Samuel, the three things that matter most in real estate."); *Commerce Assocs. LP v. New Castle Cty. Office of Assessment*, 159 A.3d 1206, 1208 (Del. 2017) (describing "location, location, location" as "a major known real estate factor"); *Barton v. District of Columbia*, 131 F. Supp. 2d 236, 247 (D.D.C. 2001) (stating "the three most important things in real estate are 'location, location, location'"). Selecting comparable properties for an appraisal in very close proximity to Plaintiffs' property and thus most locationally similar cannot create an inference of racial discrimination. As Plaintiffs allege, the use of the sales comparison approach to conducting an appraisal "opens the door for discrimination." *See* ECF No. 25 at ¶53. That alone, however, does not supply facts necessary to overcome a Motion to Dismiss.[2]

Furthermore, Plaintiffs allegation that Mr. Lanham selected comparable properties "in a majority-Black census block" while he "ignored majority-white areas" does not establish the necessary connection to make the appraisal racially discriminatory because Plaintiffs do not allege that Mr. Lanham studied the 2020 census data on the Homeland neighborhood, that Mr. Lanham

---

[2] By the same token, if an appraiser artificially selects comparable properties that have a higher value than the subject property, this results in harmful over-inflation of appraised values and can lead to foreclosures when credit-strapped borrowers cannot repay their debt obligations.

relied upon the 2020 census data for his appraisal, or even that Mr. Lanham knew the information identified in the census data. Those missing allegations are critical, and Plaintiffs cannot in good-faith allege that Mr. Lanham studied, relied upon, or knew the census data as part of his appraisal because the race of the owners of the comparable properties, or the racial makeup of a neighborhood is irrelevant and not a consideration when appraising the value of a property. Plaintiffs repeatedly allege that Mr. Lanham should have used comparable properties in the portions of the Homeland neighborhood that are "predominantly white," but without an allegation that Mr. Lanham knew that the comparable properties he selected were owned by African-Americans or were "in a majority-Black census block," Plaintiffs cannot bridge the allegation that Mr. Lanham selected comparable properties that were most "locationally similar" to Plaintiffs' home because of discriminatory intent.

Plaintiffs then allege that Mr. Lanham acted with discriminatory intent and motive because the three comparable properties that Mr. Lanham selected, regardless of location, "were not suitable." *See* ECF No. 25 at ¶62. Plaintiffs allege that the first comparable property was "a fixer-upper," and that the second comparable property was "not within Homeland at all." *See* ECF No. 25 at ¶62. Plaintiffs do not make an specific allegation regarding if and why the third comparable property Mr. Lanham selected was not suitable. On its face, it is unclear how this allegation could establish discriminatory motive because otherwise, every disgruntled property owner who believes that an appraiser selected comparable properties that are of lesser quality or condition would be able to claim racial discrimination.

Moreover, Plaintiffs' First Amended Complaint quotes from the listing of the first comparable property describing it as a "fixer upper." *See* ECF No. 25 at ¶62. To be accurate, and for completeness, the full listing states:

Amazing value in Homeland! Elegant classic brick center hall colonial features large rooms with beautiful moldings and ample natural light. A dining room with decorative fi replace is adjacent to kitchen (an intermediary wall could be removed for large, modern kitchen/dining combo).Charming wood paneled office/library off dining room offers perfect work from home space. Huge living room with decorative (potential wood-burning) fi replace is adjacent to large tiled sunroom with French doors to large bluestone patio and flat fenced yard. Upstairs find a large bedroom suite with bathroom as well as and three additional bedrooms and a hall bath. Third floor is an open bonus space that could be used as bedroom, playroom, or work/study space. Full basement features bar, half bath, laundry and ample storage. Generous closets, hardwood floors and many Pella double-paned windows throughout. Bathrooms and kitchen need some TLC, and the price reflects this, but this home has great bones and HUGE potential located close to schools and shopping and abutting two lanes that lead into charming North Homeland. Large parking pad and two car garage. Central Air. Mature plantings abound in well-landscaped yard and gardens.

*See* Exhibit 1 (available at https://www.coldwellbankerhomes.com/md/baltimore/102-e-northern-pkwy/pid_38633103/ (last visited December 12, 2022)).[3]   The listing also included numerous photographs, including of the kitchen:

---

[3] As this Court explained in *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001), when confronted with a motion to dismiss, courts may, without rendering the motion one for summary judgment, "consider any documents referred to in the complaint and relied upon to justify a cause of action—even if the documents are not attached as exhibits to the complaint." *Id.* at 683 (finding defendant's attaching correspondence and an agreement that was relied upon in plaintiff's complaint to its motion to dismiss to be proper). *See also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir.1994) (deeming a complaint "to include ... any statements or documents incorporated in it by reference" and permitting a defendant to produce such materials when attacking the complaint).   Therefore, because Plaintiffs' First Amended Complaint explicitly references the listing for the first comparable property, Mr. Lanham's appraisal, and records from the Maryland Department of Assessments and Taxation, attaching those documents to this Motion does not convert it to one for summary judgment.



*See* Exhibit 2 (available at https://redf.in/rSGxwK and https://ssl.cdn-redfin.com/photo/235/bigphoto/962/MDBA528962_8_3.jpg (last visited December 12, 2022)). This photograph is remarkably similar to the photograph of the kitchen in the Plaintiffs' home, from Mr. Lanham's appraisal:



*See* Exhibit 3.  Likewise, the following is a photograph of a bathroom from the listing for the first

comparable property, reflecting an older style of tile and fixtures:



*See* Exhibit 4 (available at https://redf.in/rSGxwK and https://ssl.cdn-redfin.com/photo/235/bigphoto/962/MDBA528962_14_3.jpg (last visited December 12, 2022)). Similarly, the following is a photograph of the half-bathroom in Plaintiffs' home, taken from Mr. Lanham's appraisal, with a similar aesthetic appeal:



*See* Exhibit 5.  Arguing about whether kitchens and bathrooms have been updated, or whether other properties more accurately reflect the condition of a property, can give rise to an appeal following an appraisal, but do not give establish discriminatory intent or motive for racial discrimination.  Otherwise, every adverse appraisal decision would, in and of itself, provides grounds for a federal lawsuit.

Moreover, Plaintiffs' First Amended Complaint describes the second comparable property as "not within Homeland at all."  *See* ECF No. 25 at ¶62. However, the listing for the second comparable property states that the property is a "sensational brick beauty in desirable Homeland."

*See* Exhibit 6 (available at https://www.coldwellbankerhomes.com/md/baltimore/5606-purlington-way/pid_40368710/ (last visited December 12, 2022)).  Additionally, this Court can take judicial notice of records from the Maryland Department of Assessments and Taxation records, *Medrano v. Elmer's Painting & Remodeling, Inc*., Civil Action No. TDC-15-1292, 2017 U.S. Dist. LEXIS 121282, at *2 n.5 (D. Md. Aug. 2, 2017) ("The undersigned takes judicial notice of the records of the Maryland Department of Assessments and Taxation pursuant to Federal Rule of Evidence 201(b)(2)."); *White v. Lexington Court Apartments, LLC*, Civil Action No. DKC 16-0427, 2016 U.S. Dist. LEXIS 51550, at *3 n.4 (D. Md. Apr. 18, 2016) ("The court may take judicial notice of information found on SDAT's website."), and both Plaintiffs' home and the second comparable property are identified as being in the same neighborhood ("27080132.03").  *See* Exhibit 7.  Arguing about whether a property is inside, outside or on the border of a neighborhood does not establish discriminatory intent or motive for racial discrimination.

Plaintiffs next allege that Mr. Lanham acted with discriminatory intent and motive because he made improper adjustments to the value of Plaintiffs' home.  *See* ECF No. 25 at ¶¶67-70.  Plaintiffs allege that Mr. Lanham deducted 10% from the value of Plaintiffs' home for being on Northern Parkway, which Plaintiffs allege is excessive while agreeing that some deduction is appropriate.  *See* ECF No. 25 at ¶68.  Plaintiffs allege that Mr. Lanham must have made this excessive deduction because of Plaintiffs' race, but Plaintiffs do not allege that Mr. Lanham has not applied the same or similar deduction for property owners of different races.  It is Plaintiffs' burden to allege facts giving rise to discriminatory motive, and if Plaintiffs do not allege that Mr. Lanham has treated them differently than property owners of a different race, Plaintiffs cannot meet their burden.

Plaintiffs also allege that Mr. Lanham gave them credit for improvements made to the property ($1,250 to $5,000 for a finished basement/club room; and $4,000 for a porch balcony), but that "This is less than the industry standard." *See* ECF No. 25 at ¶70. Furthermore, Plaintiffs allege that the money they invested for the finished basement/club room was "to remodel their club room," *see* ECF No. 25 at ¶36, meaning it was to "remodel" the basement or club room that had already been finished. While the parties can dispute the value of remodeling a basement that was already finished, that dispute does not support a conclusion that Mr. Lanham devalued the improvement because of Plaintiffs' race. Plaintiffs must allege direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated Defendants, and allegations that Mr. Lanham did not comply with industry standard does not satisfy that high burden; otherwise, every professional malpractice or negligence action would give rise to facts sufficient to allege racial discrimination.

In a further attempt to support an inference of racial discrimination, Plaintiffs allege that Defendants must have acted with racially discriminatory motive because of "his belief that, because they are Black, Dr. Connolly and Dr. Mott did not belong in Homeland, an attractive and predominantly white neighborhood," citing to alleged facts that Mr. Lanham was aloof during the appraisal, and that Mr. Lanham asked Plaintiffs whether they pay dues to the Homeland Association. *See* ECF No. 25 at ¶¶45, 47. The alleged fact that Mr. Lanham was not friendly with Plaintiffs, and "was indifferent and aloof," however, does not support an inference of racial discrimination, especially given that the First Amended Complaint is devoid of any allegations that Mr. Lanham's behavior while meeting Plaintiffs during his visit to their home was any different than his behavior while meeting with homeowners of different races. *See, e.g., McNeal v. Presence Chi. Hosps. Network*, 804 F. App'x 407, 409 (7th Cir. 2020) (stating that "isolated

16

incidents of unfriendliness or 'other subtle indicia of distaste' are generally not evidence of discriminatory animus. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010)."); *Easaw v. Newport*, 253 F. Supp. 3d 22, 31 (D.D.C. 2017) ("While the plaintiff 'noticed a gradual "coolness" towards her' from Ms. Newport, *id.*, a 'chilly' relationship does not imply a discriminatory one."); *Lacey v. Ala. Dep't of Conservation & Nat. Res.*, No. 2:14-cv-637-WHA, 2015 U.S. Dist. LEXIS 57303, at *13-14 (M.D. Ala. May 1, 2015) ("Even making the inference most favorable to Lacey, that Major Huffaker's conduct indicated disinterest in the interview for some reason, without any other evidence of discriminatory intent the court cannot draw the additional inference that such disinterest was related to Lacey's race."); *Amina Al-Habashy v. Vir., Dep't of Juvenile Justice*, Civil Action No. 7:11cv00306, 2012 U.S. Dist. LEXIS 24869, at *14 (W.D. Va. Feb. 28, 2012) "Al-Habashy's naked opinion regarding the panelists' interview demeanor, without more, does not indicate circumstances giving rise to an inference of discrimination."); *Kenfield v. Colo. Dep't of Pub. Health & Env't*, 837 F. Supp. 2d 1232, 1242 (D. Colo. 2011) ("Admittedly, a person with racial prejudices might very well be cold and stern with people of the disliked race. But this observation merely serves to highlight the highly ambiguous nature of Ms. Kenfield's proof, which in turn demonstrates why that evidence, without more, is insufficient. The intuitive leap from "unfriendly" to "prejudiced" is simply too large to be made unassisted."); *Arive v. Essilor Labs. of Am., Inc.*, No. 1:04-cv-0099-DFH-WTL, 2006 U.S. Dist. LEXIS 21770, at *31 (S.D. Ind. Mar. 30, 2006) (stating that "the unfriendly behavior of which Arive accuses Gavin and Miller is insufficient to infer discriminatory bias").  Moreover, Mr. Lanham was required by the single family house appraisal form to report on what homeowners association dues, if any, were paid by the homeowner.  *See* Exhibit 8 at 3 ("Subject" section at the top of the page).  Mr. Lanham asking a question of Plaintiffs to obtain information required by the appraisal form cannot under any

17

circumstances support an inference that he engage in racial discrimination during the preparation of the appraisal report.

Plaintiffs also allege that Mr. Lanham acted with discriminatory intent and motive because approximately six months after Defendants' appraisal, Plaintiffs obtained another appraisal and the amount of the second appraisal was significantly higher.  *See* ECF No. 25 at ¶¶116-128.  In other words, a second appraiser, six months after Mr. Lanham performed his appraisal, performed an appraisal with a different effective date and concluded that Plaintiffs' home had a higher appraised value six months after Defendants' appraisal.  That, however, does not create an inference of racial discrimination.  As the Seventh Circuit Court of Appeals acknowledged in *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998), "[r]eal estate appraisal is not an exact science" and the fact that one appraisal is "lower than someone else's does not create an inference of discrimination."  *See also Routen v. Citi*, 706 F. Supp. 2d 854, 860 (N.D. Ill. 2009).  Plaintiffs' prima facie case for racial discrimination fails for a lack of any alleged facts providing a comparison between how Mr. Lanham allegedly treats African-Americans and Caucasians.

Moreover, Defendants requested a copy of the second appraisal from Plaintiffs, but they have refused to produce it as of the date this Motion is being filed.  Thus, it is not currently known whether the second appraisal was defective for any reason,[4] and it is fundamentally unfair for Plaintiffs to cite to and rely on a document purporting to support an inference of racial

---

[4] For example, the property located immediately next to 209 Churchwardens Road is 206 E. Northern Parkway, and that property sold on August 20, 2021 for $465,000.  In other words, the obviously comparable home and property located immediately next to Plaintiffs' home and property sold for $465,000 two months after Defendants' appraisal of Plaintiffs' home for $472,000, and five months before Mr. Dodd's appraisal of Plaintiffs' home for $725,000.  Without production of the second appraisal, it is not possible to know whether the second appraisal included the sale of the adjacent property, but to suggest that Defendants' appraisal was recklessly based upon racial discrimination, when he valued Plaintiffs' property at an amount similar to what the neighboring property sold for two months later, demonstrates the problem with Plaintiffs' conclusory allegations.

discrimination without producing or attaching the document to the operative pleading.  *See infra* footnote 3.

Plaintiffs' First Amended Complaint also includes allegations relating to Defendants' "pattern and practice" of racial discrimination based upon an appraisal conducted in the O'Donnell Square Neighborhood of Baltimore, and a pending investigation with the Department of Housing and Urban Development.  See ECF No. 25 at ¶¶ 73-84.   As the Court of Appeals for the Fourth Circuit has concluded, however, "pattern and practice" claims are not available to private plaintiffs in non-class action contexts.  *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.3 (4th Cir. 2004) ("*Lowery* [*v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998)] merely held that an individual plaintiff (as opposed to a class action plaintiff) cannot pursue a cause of action based on a pattern or practice of discrimination or invoke the proof scheme described in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977)."); *Jarvis v. Wells Fargo Bank, N.A.*, No. DLB-21-687, 2022 U.S. Dist. LEXIS 93833, at *10 (D. Md. May 25, 2022).

Moreover, while an individual plaintiff may use evidence of a pattern or practice of discrimination to help prove claims of individual discrimination, the allegations supporting a pattern or practice of discrimination must go beyond isolated, accidental, or sporadic acts of discrimination.  *See Teamsters*, 431 U.S. at 336. Instead, pattern or practice evidence typically consists of statistical evidence examining a large number of decisions reflecting that illegal discrimination is a "standard operating procedure -- the regular rather than unusual practice." *Id.* *See also Lowery*, 158 F.3d at 764 ("Although a plaintiff in a Title VII action may sometimes be able to use statistical evidence of a pattern or practice of discrimination to help establish pretext, this is not such a case. [The expert's] statistical analysis of promotions at Circuit City failed to

adequately control for factors other than race that could account for the disparity in promotions."). In this case, the allegations in the First Amended Complaint establish, accepted as true for purposes of this Motion only, that two homeowners have disagreed with Defendants' appraisal of their home, that they thought the appraisals were discriminatory, and that one of the homeowners filed a complaint with the Department of Housing and Urban Development.  Plaintiffs have not alleged that any government or administrative agency has concluded that either of the homeowners' accusations or disagreements with Defendants' appraisals were well-founded or supported.  These isolated disagreements or disputes by two homeowners does not amount to pattern and practice evidence upon which an inference of racial discrimination can be established. *See, e.g., Palma v. Montgomery Cty.*, Civil Action No. 8:21-cv-01090-PX, 2022 U.S. Dist. LEXIS 67390, at *13 (D. Md. Apr. 12, 2022) ("The County rightly points out that one or two isolated constitutional violations alone cannot constitute a policy or custom of unconstitutional conduct.").

Additionally, real estate appraisals are distinctly location-specific, and Plaintiffs admit that an appraisal using the "common" sales comparison approach "presents significant fair lending risks" and "opens the door for discrimination."  See ECF No. 25 at ¶ 53.  If the regularly used sales comparison approach gives rise to an inference of racial discrimination, then all such appraisals give rise to an inference of discrimination, and the exception would swallow the rule and a plaintiff in an appraisal discrimination case would always satisfy the requisite pleading burden.

In summary, Plaintiffs' allegations are that Mr. Lanham failed to follow appropriate appraisal standards.  The critical defect with Plaintiffs' First Amended Complaint, however, is that beyond allegations that would theoretically give rise to a negligence claim, there is no direct or circumstantial evidence to support an inference that Defendants treated Plaintiffs differently because of their race and courts have repeatedly held that allegations of incompetence does not

equate to allegations of racial discrimination. *See, e.g., Evarts v. Quinnipiac Univ.*, Civil Action No. 3:15-cv-1509 (CSH), 2018 U.S. Dist. LEXIS 172572, at *67 (D. Conn. Oct. 4, 2018) ("One cannot, therefore, simply make the conclusory allegation that one's employer must have taken an adverse action simply because of one's disabilities. There must be some evidentiary basis for the Court to make such an inference."); *Saunders v. Queensborough Cmty. Coll.*, No. 13 CV 5617 (PKC) (RML), 2015 U.S. Dist. LEXIS 128608, at *21 (E.D.N.Y. Sep. 24, 2015) ("At best, Plaintiff's allegations may suggest negligence or incompetence, but they are insufficient to plead an inference of discriminatory intent."); *Ramirez v. UPS*, Civil Action No. 06-1042, 2011 U.S. Dist. LEXIS 9608, at *29 (D.N.J. Jan. 31, 2011) (lack of familiarity resulting in low employment assessment "would only permit the inference of negligence, not an inference of racial discrimination"); *Byrd v. Merrill Lynch*, No. 10-0247, 2011 U.S. Dist. LEXIS 73686, at *29 (D.N.J. July 8, 2011) (failure to perform interview during investigation "hardly creates an inference of discrimination. At most, it would suggest mere negligence."); *Reynolds v. Port Auth.*, No. 8-268, 2009 U.S. Dist. LEXIS 54760, at *8 (W.D. Pa. June 26, 2009) ("Negligence, innocent error, or incompetence does not constitute discrimination."); *Save Our Sch.-Southeast & Ne. v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2006 U.S. Dist. LEXIS 45073, at *60-61 (D.D.C. July 3, 2006) ("Such allegations suggest negligence at most and negate any inference that defendants acted with a discriminatory purpose with regard to the entire school system.").

### B.    In the Alternative, Plaintiffs' Claims Based Upon Fair Housing Act Section 3604 Must be Dismissed Because Plaintiffs' Refinance Application Involved Neither the Sale nor Rental of their Home

Count I of Plaintiffs' First Amended Complaint asserts claims under Sections 3604, 3605, and 6317 of the Fair Housing Act.

Section 3604(a) of the Fair Housing Act makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ."  *See* 42 U.S.C. § 3604. Similarly, Section 3604(c) of the statute makes it unlawful "[t]o make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race . . . ." *Id.*

In this case, Plaintiffs cannot state a claim under either Section 3604(a) or (c) because the Plaintiffs' refinancing involved neither the sale nor rental of their home, nor did it make a dwelling "unavailable" to Plaintiffs.  Both the plain language of Section 3604, as well as related regulations promulgated by the Department of Housing and Urban Development ("HUD"), indicate that Section 3604 applies only to sale or rental transactions, or to transactions that have an effect of making housing "unavailable" such as when a sale is denied or a rental refused.  *See* 42 U.S.C. § 3604; 24 C.F.R. § 100.70(a) (interpreting § 3604(a) as applying to "word[s] or conduct" that "restrict or attempt to restrict the choices of a person . . . in connection with seeking, negotiating for, buying[,] or renting a dwelling").

Indeed, numerous courts have held that where the allegedly discriminatory conduct occurs in connection with the refinancing or extension of financing for the purpose of maintaining a home that a plaintiff already owns, Section 3604 does not give rise to a cognizable Fair Housing Act claim.  *See Gibson v. Household Int'l, Inc.*, 151 Fed. App'x 529, 531 (9th Cir. 2005) (describing "no authority that a Section 3604 claim may process in the case of a non-purchase money loan"); *Coche v. United Wholesale Mortg. LLC*, Case No. SACV 21-00372-CJC (JDEx), 2021 U.S. Dist. LEXIS 200529, 2021 WL 4815027, at *3 (C.D. Cal. June 3, 2021) (holding Section 3604 "does not apply to refinance transactions"); *Eva v. Midwest Nat'l Mort. Bank, Inc.*, 143 F. Supp. 2d 862,

886 (N.D. Ohio 2001); *Laufman v. Oakley Bldg. & Loan Co.*, 408 F. Supp. 489, 491, 493 (S.D. Ohio 1976); *Thomas v. First Fed. Sav. Bank of Ind.*, 653 F. Supp. 1330, 1337 (N.D. Ind. 1987) (finding Section 3604 inapplicable where "allegations concern[ed] the availability of additional financing, . . . not the availability of housing").

In this case, there is no allegation that any dwelling was made "unavailable" to the Plaintiffs who already owned and lived at the Churchwardens residence both before and after the anticipated refinance transaction. Accordingly, to the extent Plaintiffs rely on Section 3604, that FHA claim must be dismissed.

## II.   Counts III and IV of Plaintiffs' First Amended Complaint (Section 1981 and 1982) Should be Dismissed

The Civil Rights Act of 1866, 42 U.S.C. § 1981, states in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1982 states in relevant part:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

To state a claim for relief under Sections 1981 and 1982, a complaint must allege: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in Section 1981 or Section 1982. *See Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 470 (S.D.N.Y. 2006); *Baltimore-Clark v. Kinko's, Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003).

Thus, both claims require Plaintiffs to allege facts that the defendant intended to discriminate based upon race. *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990); *Selden Apartments v. United States Dep't of Housing and Urban Dev.*, 785 F.2d 152 at 159-160 (6th Cir. 1986); *Mobley v. Rosselle*, 297 F. Supp. 2d 835, 838 (D. Md. 2003). This pleading requirement demands more than conclusory allegations of discriminatory animus. *Fontell v. McGeo UFCW Local 1994*, Civil Action No. AW-09-2526, 2010 U.S. Dist. LEXIS 79826, at *21 (D. Md. Aug. 5, 2010) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001)). For the reasons stated above, Plaintiffs have not alleged facts to support a prima facie case of racial discrimination, and therefore, Plaintiffs' claims under the Civil Rights Act of 1866 should be dismissed. Plaintiffs cannot transform allegations of incompetence or a breach of appraisal industry standards into racial discrimination by baldly alleging that Mr. Lanham believed that Plaintiffs did not belong in their neighborhood and that their home was worth less than other homes because of their race. There are no facts alleged in the First Amended Complaint, and none can be alleged with good faith, that Mr. Lanham treated Plaintiffs any differently than homeowners of other races, and there are no facts alleged that Mr. Lanham knew that comparable properties that he selected were owned by African-Americans or were located on blocks with homes owned by African-Americans. Without such allegations, Plaintiffs' First Amended Complaint fails to allege facts to prove that Defendant intended to discriminate on the basis of race, and Plaintiffs' Section 1981 and 1982 claims must be dismissed.

Moreover, a claim under Section 1982 must arise from discrimination concerning one or more activities enumerated in the statutes. By its plain and unambiguous language, Section 1982 only applies to prohibit discrimination in connection with inheriting, purchasing, leasing, selling, holding, and conveying property. As stated above, Plaintiffs' mortgage refinancing transaction

did not interfere with or impact Plaintiffs' ability to inherit, purchase, lease, sell, hold, or convey property.  Plaintiffs already owned and lived at the Churchwardens residence both before and after the anticipated refinance transaction.  Accordingly, Plaintiffs cannot state a claim under Section 1981 or Section 1982.

**III.   Count V of Plaintiffs' First Amended Complaint (Maryland Fair Housing Laws) Should be Dismissed**

Count V of Plaintiffs' First Amended Complaint asserts claims under Sections 20-705, 20-707, and 20-708 of the Statement Government Article of the Maryland Code, i.e., the Maryland Fair Housing Law.  The Maryland Fair Housing Law prohibits certain discriminatory housing practices, as set forth in the statutory sections.  *See* Md. Code. Ann. State Gov't  § 20-1020 (defining "Aggrieved person" as "any person that claims to have been injured by a discriminatory housing practice" and defining "Discriminatory housing practice" as "an act that is prohibited under §  20-705, §  20-706, §  20-707, or §  20-708 of this title").

Plaintiffs' claim under the Maryland Fair Housing Laws should be dismissed because Plaintiffs failed to exhaust their administrative remedies as required by Md. Code Ann. State Gov't § 20-1035(b)(3) which states that "an aggrieved person may commence a civil action under this section not sooner than 130 days after a complaint has been filed under § 20-1021 of this subtitle").  Section 20-1021 of the Maryland Fair Housing Law requires a person that claims to have been injured by a discriminatory housing practice, including the statutory violations alleged in the First Amended Complaint, to file a complaint with the Maryland Commission on Civil Rights.  Only thereafter, and not sooner than 130 days after filing, may a person then file a civil lawsuit seeking damages. Because Plaintiffs have never filed an administrative charge against Defendants, and have not alleged that they have filed an administrative charge with the Commission on Civil

Rights, Plaintiffs failed to exhaust the administrative remedy requirement and their claims under the Maryland Fair Housing Laws must be dismissed.

Moreover, even if Plaintiffs had satisfied and exhausted their administrative remedies, to assert a claim for violation of Maryland's statute against discriminatory housing practices, a plaintiff must present proof of a prima facie case of intentional discrimination. *Mobley*, 297 F. Supp. 2d at 838. For the reasons stated above, Plaintiffs have not alleged facts to support that prima facie case of discrimination, and therefore, Plaintiffs' claims under the Maryland Fair Housing Laws should be dismissed. There are no facts in the First Amended Complaint that Mr. Lanham treated Plaintiffs any differently than home owners of other races, and no facts that Mr. Lanham knew that comparable properties that he selected were owned by African-Americans or were located on blocks with homes owned by African-Americans.

In the alternative, Section 20-705 parrots the language of Section 3604(a) of the FHA, and for the reasons stated above regarding that FHA claim, Plaintiffs have not alleged facts to support that claim. Section 20-705, entitled "Discriminatory housing practices - Sale or rental of dwelling," provides in pertinent part:

[A] person may not:

* * *

(2) discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with the sale or rental of a dwelling, because of race, color, religion, sex, disability, marital status, familial status, sexual orientation, gender identity, national origin, or source of income;

(3) make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, disability, marital status, familial status, sexual orientation, gender identity, national origin, or source of income, or an intention to make any preference, limitation, or discrimination;

26

Md. Code Ann., State Gov't § 20-705.  In other words, just like Section 3604(a) of the Fair Housing Act, Section 20-705 applies to discrimination "in connection with the sale or rental of a dwelling," meaning when discrimination renders a property unavailable to a plaintiff.  In this case, Both the plain language of the statute, coupled with the support of the analogous federal statute, makes clear that Plaintiffs cannot state a claim under Section 20-705 because the Plaintiffs' refinancing involved neither the sale nor rental of their home, nor did it make a dwelling unavailable to Plaintiffs.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, and in the accompanying Memorandum of Law, which is expressly incorporated by reference, Defendants Shane Lanham and 20/20 Valuations, LLC requests that the Court issue an Order dismissing the claims and causes of action against Defendants set forth in Counts I, III, IV, and V of Plaintiffs' First Amended Complaint with prejudice, and the Court issue any and all other relief it deems just and appropriate.


Respectfully submitted,

*/s/Gregg E. Viola*
Gregg E. Viola (25737)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: viola@ewmd.com
*Attorney for  Defendants*

*/s/Mark P. Johnson*
Mark P. Johnson (29091)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474
(410) 752-0611 (fax)
E-mail: johnson@ewmd.com
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th  day of December 2022, copies of the foregoing were served via the Court's ECF system to all counsel of record.

*/s/Mark P. Johnson*
Mark P. Johnson (Bar # 29091)
