IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHAN CONNOLLY AND SHANI MOTT,

        Plaintiffs,

   v.

SHANE LANHAM, et al.,

        Defendants.

Case No. 1:22-cv-02048-SAG

**LOANDEPOT.COM LLC'S MEMORANDUM
IN SUPPORT OF ITS RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ALLEGATIONS OF FACT ................................................................................................ 2

ARGUMENT ....................................................................................................................... 7

    I.    Legal Standard .................................................................................................... 7

    II.    Plaintiffs Fail to State a Claim Against loanDepot Under the Fair Housing
        Act (Count I). ..................................................................................................... 8

        A.    Plaintiffs Fail to State a Claim Under Sections 3604(b) and (c) of
            the FHA .................................................................................................. 8

        B.    Plaintiffs Fail to State a Claim Under Section 3605 of the FHA .............. 9

            1.    Plaintiffs Fail to Allege loanDepot Acted with
                Discriminatory Intent. ................................................................. 10

                a.    Plaintiffs Fail to Allege Direct Evidence of
                    Discrimination ................................................................. 10

                b.    Plaintiffs Fail to Allege Facts Sufficient to Satisfy
                    the McDonnell Douglas Framework for
                    Establishing Disparate Treatment. ................................... 17

            2.    Plaintiffs Fail to Allege loanDepot's Policies Cause a
                 Discriminatory Impact. ............................................................... 21

                 a.    Plaintiffs Fail to Identify any loanDepot Policy. ............. 22

            3.    Plaintiffs Fail to Allege Statistical Evidence that Shows a
                 "Robust Causal Connection" Between the Policy and a
                 Discriminatory Impact. ............................................................... 24

        C.    Plaintiffs Fail to State a Claim Under Section 3617 of the FHA
            (Count I). .............................................................................................. 25

            1.    Plaintiffs' Do Not Allege a Predicate Violation of Section
                 3604 ............................................................................................ 25

            2.    Plaintiffs Fail to Plead a Retaliation Claim ................................. 26

                a.    The Loan Denial Fails to Meet the Elements of a
                  Retaliation Claim. .......................................................... 26

                 b.    The Failure to Order a Second Appraisal Fails to
                  Meet the Elements of a Retaliation Claim. ...................... 28

                c.    Jorgensen's Actions Fail to Meet the Elements of
                  Retaliation. ..................................................................... 28

    III.    Plaintiffs Fail To State A Claim Under the Equal Credit Opportunity Act
        (Count II). ......................................................................................................... 30

**TABLE OF CONTENTS**
**(Continued)**

Page

IV.   Plaintiffs Fail to State a Claim Under Section 1981 of the Civil Rights Act of 1866 (Count III)...................................................................................... 30

    A.   The Amended Complaint Fails to Allege Facts that Constitute "Direct Evidence of Discrimination" or Show loanDepot "Intended to Discriminate" Against Plaintiffs........................................................ 31

    B.   The Amended Complaint Fails to Allege Facts that Constitute Circumstantial Evidence of Discrimination.............................................. 32

    C.   The Amended Complaint Fails to Allege Facts Showing that "But for" loanDepot's Alleged Discrimination, Plaintiffs Would Have Been Approved for the Loan.................................................................... 32

    D.   Plaintiffs Fail to Plead a Retaliation Claim............................................. 32

V.   Plaintiffs Fail to State a Claim Under Section 1982 of the Civil Rights Act of 1866 (Count IV)...................................................................................... 33

    A.   loanDepot Did Not Deprive Plaintiffs of Services Available to Similarly Situated Persons Outside the Protected Class......................... 33

    B.   loanDepot was Not "Hostile" or "Objectively Unreasonable."............... 33

VI.   Plaintiffs Fail to State a Claim under Maryland Fair Housing Law (Count V) ................................................................................................................ 34

CONCLUSION............................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................2, 7, 20, 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................7

*Best Medical Int'l, Inc. v. Wells Fargo Bank, N.A.*,
   937 F. Supp. 2d 685 (E.D. Va. 2013) ...............................................................18, 31

*Billingsley v. Fed. Home Loan Mortg. Corp.*,
   2019 WL 5104748 (E.D. Va. Oct. 10, 2019), *aff'd*, 849 F. App'x 413 (4th Cir.
   2021) ......................................................................................................................31

*BNT Ad Agency, LLC v. City of Greensboro*,
   837 F. App'x 962 (4th Cir. 2020) ...................................................................31, 32

*Boardley v. Household Finance Corp. III*,
   39 F. Supp. 3d 689 (D. Md. 2014) ..............................................................9, 22, 23

*Brown v. Harford Bank*,
   2022 WL 657564 (D. Md. 2022) ...............................................................7, 31, 32

*CACI Int'l v. St. Paul Fire & Marine Ins. Co.*,
   566 F.3d 150 (4th Cir. 2009) ..................................................................................8

*CASA de Maryland, Inc. v Arbor Realty Trust, Inc.*,
   2022 WL 4080320 (D. Md. 2022) ......................................................21, 22, 24, 25

*Combs v. Bank of Am., N.A.*,
   2015 WL 5008754 (D. Md. 2015) .........................................................................30

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
   140 S. Ct. 1009, 206 L.Ed.2d 356 (2020) .............................................................31

*Deegan-Price v. Fajana*,
   2006 WL 8457079 (D. Md. May 30, 2006) .....................................................10, 14

*Deegan-Price v. Fajana*,
   2007 WL 9782568 (D. Md. 2007) .........................................................................19

*Doran v. Prince William Cnty.*,
   2009 WL 10687839 (E.D. Va. 2009) ...............................................................21, 23

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Eva v. Midwest Nat'l Mortg. Bank, Inc.*,
   143 F. Supp. 2d 862 (N.D. Ohio 2001)......................................................................9

*Flippings v. U.S. Home Mortg.*,
   2017 WL 728179 (D. Md. 2017) ...........................................................................18

*Frison v. Ryan Homes*,
   2004 WL 3327904 (D. Md. 2004), 2004 WL 3327904 .............................17, 18, 19

*Gibson v. Household Int'l, Inc.*,
   151 F. App'x 529 (9th Cir. 2005) ...........................................................................8

*Glenn v. Wells Fargo Bank, N.A.*,
   2016 WL 3570274 (D. Md. 2016) .....................................................................18, 19

*Glenn v. Wells Fargo Bank, N.A.*,
   2017 WL 371956 (D. Md. 2017) ....................................................................... *passim*

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) ..................................................................................8

*Hall v. Greystar Management Services, L.P.*,
   28 F.Supp.3d 490 (2014) ..................................................................................26, 29

*Hall v. Greystar Mgmt. Services, L.P.*,
   637 F. App'x. 93 (4th Cir. 2016) .......................................................................27, 28

*Hann v. Canyon Mobile Home Park*,
   2018 WL 5905869 (C.D. Cal. 2018)..................................................................27, 29

*Hardaway v. Equity Residential Servs., LLC*,
   2015 WL 858086 (D. Md. 2015) .......................................................................26, 28

*Holmes v. Toledo Gaming Ventures*,
   LLC 2017 WL 2418750 (N.D. Ohio 2017) ...........................................................34

*Hood v. Pope*,
   627 F. App'x 295 (5th Cir. 2015) .........................................................................26

*Hosack v. Utopian Wireless Corp.*,
   2011 WL 1743297 (D. Md. May 6, 2011)................................................................8

*Laing v. Federal Exp. Corp.*,
   703 F.3d 713 (4th Cir. 2013) ....................................................................10, 13, 16

## **TABLE OF AUTHORITIES**
### **(Continued)**

**Page(s)**

*Letke v. Wells Fargo Home Mortg., Inc.*,
   2015 WL 1438196 (D. Md. 2015) ................................................................. *passim*

*Maryland Minority Contractor Ass'n v. Lynch*,
   2000 WL 135103 (4th Cir. 2000) ........................................................................32

*McCauley v. City of Jacksonville*,
   1987 WL 44775 (4th Cir. 1987) .........................................................................25

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...................................................................................... *passim*

*Miller v. Freedom Waffles, Inc.*,
   2007 WL 628123 (W.D. Kentucky 2007) .............................................................34

*Moreno v. McHugh*,
   2011 WL 2791240 (D. Md. 2011) ......................................................................35

*Morgan v. Brittany Woods Homeowner's Ass'n, Inc.*
   2019 WL 2114255 (E.D. N.C. 2019)...........................................................27, 29

*Ofoche v. Apogee Med. Group, Virginia, P.C.*,
   815 F. App'x. 690 (4th Cir. 2020) ......................................................................31

*Ortiz v. Potter*,
   2008 WL 11441685 (E.D. Va. 2008)......................................................10, 13, 16

*Pacheco v. Sears, Roebuck & Co.*,
   2006 WL 1789140 (M.D.N.C. 2006)....................................................................34

*Painters Mille Grille, LLC v. Brown*,
   2012 WL 576640 (D. Md. 2012) ....................................................7, 32, 33, 34

*Radcliffe v. Avenel Homeowners Ass'n, Inc.*,
   2013 WL 556380 (E.D.N.C. 2013)........................................................10, 13, 16

*Ramos v. Bank of Am., N.A.*,
   2012 WL 5928732 (D. Md. 2012) ................................................................11, 12

*Tate-Austin v. Miller*,
   2022 WL 1105072 (N.D. Cal. 2022) ....................................................................9

*Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
   576 U.S. 519 (2015)..............................................................................21, 22, 23

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Thomas v. First Fed. Sav. Bank of Ind.*,
  653 F. Supp. 1330 (N.D. Ind. 1987) ................................................................. *passim*

*Williams v. Arora Hills Homeowners Ass'n Inc.*,
  2021 WL 2226199 (D. Md. 2021) ...........................................................................35

**Statutes**

15 U.S.C.
  § 1639.......................................................................................................................15, 17
  § 1691.........................................................................................................................7, 30

42 U.S.C.
  § 1981 .................................................................................................................... *passim*
  § 1982.................................................................................................................7, 33, 34
  § 3603...........................................................................................................................25
  § 3604.................................................................................................7, 8, 9, 25, 26
  § 3605 .................................................................................................................... *passim*
  § 3617 .................................................................................................................... *passim*

Md. Code, State Gov't
  § 20-705........................................................................................................................7
  § 20-707........................................................................................................................7
  § 20-708........................................................................................................................7
  § 20-1035 ....................................................................................................................35

**Other Authorities**

12 C.F.R. § 1026.42 ....................................................................................................15

Rule 12(b)(6).....................................................................................................................7

## INTRODUCTION

loanDepot.com, LLC ("loanDepot") takes its commitment to fair lending seriously. Mindful of the regulatory and reputational scrutiny any lender faces when allegations of racial discrimination arise, the First Amended Complaint ("Amended Complaint") works hard to create the impression that loanDepot discriminated against Plaintiffs. But when stripped of conclusory assertions and hyperbole, the facts alleged fail to state any cause of action against loanDepot.

The Amended Complaint alleges Plaintiffs, who are Black, applied for a refinance loan with loanDepot that was conditioned on an independent third-party appraiser—not loanDepot— appraising their home for at least $550,000. Plaintiffs did not qualify for the loan because the independent third-party appraisal was too low. Plaintiffs told loanDepot they thought the appraisal was racially discriminatory, but loanDepot did not perform the appraisal, and federal law prohibited loanDepot from influencing it. The Amended Complaint concedes that loanDepot told Plaintiffs they could appeal, which they did, and that loanDepot processed the appeal. The appraiser modified his report, but did not change his original valuation. As a result, Plaintiffs remained ineligible for the loan. That is the extent of Plaintiffs' business with loanDepot. None of it shows loanDepot engaging in racial discrimination.

None of the other facts alleged in the Amended Complaint alter this conclusion. Plaintiffs admit that—after they identified themselves as Black—their loanDepot loan officer was "friendly, responsive, and proactive." Indeed, once Plaintiffs claimed the appraisal was discriminatory, the loan officer suggested they appeal before their extremely favorable 2.25% interest-rate lock expired. The extraneous allegation that he did not volunteer information on how to write an appeal or on loanDepot's internal policies is of no moment in this case; Plaintiffs do not allege they asked for such information, nor have they alleged that it would have altered the outcome of their appeal. And it was nearly six months later—during a volatile real-estate market—that Plaintiffs sought

refinancing from a different lender using a different third-party independent appraiser, which resulted in a higher appraisal. Plaintiffs' conclusion that the earlier appraisal was due to racial discrimination based on their "whitewashing" experiment ignores that it was conducted at a substantially different time, under different market conditions.

Plaintiffs also try to find discrimination by comparing their experience with two other loanDepot applicants: (1) a "non-Black" customer who, like Plaintiffs, did not qualify for a loan because of a low appraisal and, like Plaintiffs, appealed it, and (2) a Black customer who did not qualify for a loan because of a low appraisal and claimed it was discriminatory.  These comparisons, too, fail to show discrimination.  The former shows loanDepot treated Plaintiffs the same as a non-Black customer, allowing both to appeal and deferring to the appraiser (as required by law); the latter is irrelevant because Plaintiffs never allege he appealed his appraisal.

In sum, and as explained in detail below, when the allegations against loanDepot are stripped of bare conclusions and speculation, the Amended Complaint alleges poor customer follow-up, at most[1]—not racial discrimination.  The claims against loanDepot should be dismissed.

## ALLEGATIONS OF FACT[2]

Plaintiffs are Black homeowners in the Homeland area of Baltimore.  Compl. ¶ 15.[3]  In May 2021, Plaintiffs "sought to refinance their loans to take advantage of historically low interest

---

[1] While loanDepot must accept the allegations of fact as true solely for this Motion, it notes the Amended Complaint inexplicably omits material customer follow-up contacts with Plaintiffs.

[2] This Motion accepts the facts alleged in the Amended Complaint, not its bare assertions, conclusory statements, or legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  loanDepot does not necessarily agree with the allegations in the Amended Complaint.

[3] loanDepot refers to the Amended Complaint by the abbreviation "Compl."

rates." *Id.* ¶ 37.  They submitted a loan application to loanDepot and indicated they are "Black or African American" on the application.  *Id.* ¶¶ 37-38.

Thereafter, Plaintiffs worked with Christian Jorgensen, one of loanDepot's licensed loan officers, who were their "main contact."  *Id.* ¶ 39.  Jorgensen "reviewed Plaintiffs' application materials" and submitted them to underwriting.  *Id.* ¶¶ 39-41.  During this time, and after Plaintiffs identified themselves as Black, Jorgensen was "friendly, responsive, and proactive in providing information related to Plaintiffs' loan application."  *Id.* ¶ 88.

Like every other lender, loanDepot "require[s] home appraisals before issuing a loan . . . as assurance that a property has sufficient value to serve as collateral."  *Id.* ¶ 40.  Thus, "loanDepot's final approval and the 2.25% interest rate were dependent on an appraisal of the home supporting [a $550,000] valuation."  *Id.*, ¶¶ 4, 41.  Accordingly, Jorgensen told Plaintiffs they would only qualify for a loan "pending appraisal" at a $550,000 value.  *Id.* ¶ 39.[4]

As part of loanDepot's conditional approval, it offered Plaintiffs a very favorable 2.25% interest rate (*id.* ¶ 41), which was "locked" until July 6, 2021.  *Exhibit A*.[5]  Thus, if Plaintiffs' loan was not approved by then, they risked losing that "historically low" interest rate.  *Compl.* ¶ 41.

On June 14, 2021, Defendants Shane Lanham and 20/20 Valuations, LLC performed an appraisal on Plaintiffs' home.  *Id.* ¶ 43.  Lanham appraised the home for $472,000.  *Id.* ¶ 7.

On June 19, 2021, Jorgensen informed Plaintiffs that "Lanham appraised their home for only $472,000, and that loanDepot would therefore not extend the loan."  *Id.* ¶ 50.  Plaintiffs

---

[4] Plaintiffs claim that Jorgensen opined to Plaintiffs that he thought that value was conservative. Compl. ¶ 41.  Federal law, however, prohibited him from communicating that to the appraiser, whose independent valuation governs the appraisal process.  *Infra*, pp. 15-16.

[5] Plaintiffs allege loanDepot offered Plaintiffs a "2.25% interest rate." Compl. ¶¶ 4, 39, 41.  *Exhibit A* constitutes that offer as alleged, and thus is incorporated into the Amended Complaint and properly considered on a motion to dismiss.  *Infra*, pp. 7-8.

immediately claimed "the appraisal was racially discriminatory." *Id.* ¶ 51.  Jorgensen told Plaintiffs they "could write a letter to loanDepot explaining why they believed the appraisal was flawed." *Id.* ¶ 52.  loanDepot's policy allegedly allowed Plaintiffs 60 days to appeal the appraisal, but Jorgensen told Plaintiffs to submit the letter by June 28—which was before their interest rate lock expired, so they would not lose their favorable interest rate.  *Id.* ¶¶ 52, 93; *Exhibit A*.[6]

Jorgensen did not volunteer "any guidelines for drafting the letter" or offer to explain "how loanDepot would use or consider it" or "in what circumstances loanDepot would order a new appraisal." *Id.* ¶¶ 52, 93.  Plaintiffs do not allege they asked Jorgensen to provide such information, however, or that Jorgensen refused any request to provide it.

On June 28, 2021, Plaintiffs submitted their letter appealing the valuation, which asserted it undervalued their home for three reasons, namely that it did not: (1) "accurately characterize the neighborhood," (2) "accurately report on updates and past valuations performed on the property," or (3) "reflect accurate current market conditions."  *Exhibit B*.[7]  The letter also identified five comparable homes Plaintiffs believed were "closer to the standards by which [their home] should be appraised."  *Id.*  The letter did not claim the low valuation was due to racial discrimination; it does not mention discrimination of any kind.  *Id.*

loanDepot accepted and processed Plaintiffs' letter as a formal appeal by submitting the information to Lanham and requiring him to respond.  Compl. ¶ 97.  Plaintiffs later received an updated appraisal in which Lanham amended his appraisal but disagreed with Plaintiffs'

---

[6] This would allow enough time for the appeal to be reviewed, and the appraisal potentially amended, prior to the expiration of the rate lock.

[7] Plaintiffs allege they "completed and submitted the letter" to loanDepot.  Compl. ¶ 94.  Thus, *Exhibit B* is incorporated into the Complaint and properly considered on a Motion to Dismiss.  *Infra*, pp. 7-8.

conclusions, providing explanations as to why. *Id.* ¶¶ 94-99; *Exhibit C*.[8]  Specifically, the amended appraisal includes a section titled "Appraisal Appeal 6/29/2021," in which Lanham responded to Plaintiffs' "appeal." *Exhibit C*.  He concluded "[t]his appraiser's opinion of value has not changed as a result of this reconsideration of value." *Id.*

As a result of the appraiser's conclusion in his updated appraisal, "loanDepot maintained its application denial" and did not "order a second appraisal." Compl. ¶¶ 10, 85, 100.

Thereafter, allegedly Jorgensen "began to avoid Plaintiffs' telephone calls." *Id.* ¶ 88.[9] Plaintiffs claim this "was in direct violation of loanDepot's express policies," which they claim are:

> loanDepot has stringent requirements for responding to clients: a loan officer must respond to any communication received from a client before 3:00 p.m. by the end of the same day and to any communication received after 3:00 p.m. by noon the following day.  The loan officer must use the same mode of communication utilized by the client.  This policy is communicated from the CEO to all loan officers and is taken very seriously.  Failure to adhere to the policy is considered a fireable offense.

*Id.* ¶ 89.

The following year, Plaintiffs applied to another lender for a refinance loan at a higher interest rate, removing from their home any evidence they are Black ("whitewashing" the home) prior to that appraisal. *Id.* ¶ 11.  In 2022, their home appraised for $750,000. *Id.* ¶ 12.

On August 15, 2022, Plaintiffs filed this lawsuit against Lanham, 20/20 Valuations, LLC, and loanDepot.  On October 28, Plaintiffs filed the Amended Complaint.

---

[8] Plaintiffs allege they received "another copy of Defendant Lanham's appraisal report" in which he responded to their appeal.  Compl. ¶ 97.  Thus, *Exhibit C* is incorporated into the Amended Complaint and properly considered on a motion to dismiss. *Infra*, pp. 7-8.

[9] Plaintiffs conclude this was inconsistent with Jorgensen's "practice for responding to clients," but they plead no facts showing what Jorgensen's "practice" was with which it was allegedly inconsistent. *Id.*, ¶ 10.

The Amended Complaint alleges Lanham's appraisal was "inconsistent with professional appraisal standards" and was low because of his "discriminatory beliefs." *Id.* ¶¶ 6, 54. Although they allege facts about their interactions with Lanham to support this view, Plaintiffs do not allege these details were communicated to loanDepot, nor were they included in their appeal.

With regard to loanDepot, Plaintiffs allege two anecdotes about other loanDepot customers. In one, Jorgensen worked with a non-Black homeowner in California who "told Jorgensen she believed her house had been under-appraised." *Id.* ¶ 104. As he did with Plaintiffs, Jorgensen "advised her" of the appeal process. *Id.* ¶ 105. He also allegedly suggested she collect alternative comparable sales to include in her appeal letter (which Plaintiffs also included in their appeal letter). *Id.*; *Exhibit B*. And, like Plaintiffs, loanDepot allowed this non-Black customer to appeal her appraisal. Compl. ¶¶ 105-06. Unlike Plaintiffs, however, the appraiser (not loanDepot) adjusted the valuation upward by $85,000. *Id.* ¶ 106. As alleged, loanDepot allowed both Plaintiffs and the non-Black homeowner in California to appeal their appraisals, and in both instances loanDepot relied (as it must) on the expertise of the independent third-party appraiser.

In the second anecdote, a Black homeowner in Ohio (who was not working with Jorgensen) received an appraisal that was "less than expected." *Id.* ¶ 109. He claimed the appraisal was discriminatory. *Id.* Plaintiffs do not allege the Black homeowner appealed the appraisal—only that loanDepot eventually stopped communicating with him. *Id.*

The Complaint does not allege that loanDepot had a legal obligation to order a second appraisal or that it could do so without violating independence obligations, nor has it alleged the circumstances under which loanDepot has ordered a second appraisal for anyone—whether Plaintiffs, the non-Black homeowner in California, or the Black homeowner in Ohio.

Count I of the Amended Complaint alleges violations of three sections of the Fair Housing Act ("FHA") (42 U.S.C. §§ 3604(b) and (c), 3605, and 3617).  Count II alleges violations of the Equal Credit Opportunity Act ("ECOA") (15 U.S.C. § 1691(a)(1)).  Counts III and IV allege violations of two sections of the Civil Rights Act of 1866 (42 U.S.C. §§ 1981, 1982).  And Count V alleges violations of four sections of Maryland's fair housing laws (Md. Code, State Gov't §§ 20-705(2), 20-705(3), 20-707, and 20-708).

## <u>ARGUMENT</u>

## I.      LEGAL STANDARD

Rule 12(b)(6) requires dismissal if a complaint "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  It must "raise a right to relief above the speculative level." *Id.*, at 555.  This requires more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," as well as legal conclusions couched as factual allegations, "do not suffice." *Id.*, at 556 U.S. at 678-79.  Similarly, "naked assertions of wrongdoing," "bald accusations," and "mere speculation" are insufficient. *Brown v. Harford Bank*, 2022 WL 657564, at *4, *12 (D. Md. 2022) (internal citations omitted).  And the Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Painters Mille Grille, LLC v. Brown*, 2012 WL 576640, at *3 (D. Md. 2012) (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the Court may consider the complaint, any documents that are attached to it, and any "document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not

challenge its authenticity." *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). "[W]hen the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). The Court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166; *see also Hosack v. Utopian Wireless Corp.*, 2011 WL 1743297, at *3 (D. Md. 2011).

## II.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST LOANDEPOT UNDER THE FAIR HOUSING ACT (COUNT I).

Plaintiffs assert claims against loanDepot in Count I under three sections of the FHA. The allegations in the Amended Complaint are insufficient as a matter of law to plead claims under any of these sections.

### A.     Plaintiffs Fail to State a Claim Under Sections 3604(b) and (c) of the FHA.

Plaintiffs allege loanDepot violated Sections 3604(b) and (c) of the FHA, which make it unlawful to discriminate against, or indicate a preference for, a person based on race concerning the "sale or rental of a dwelling." *See* 42 U.S.C. § 3604(b)-(c).[10] Because the plain language of those sections applies only to the "sale or rental of a dwelling," courts routinely dismiss Section 3604 claims where, as here, the transaction involved refinancing a home. *E.g.*, *Gibson v.*

---

[10] Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Section 3604(c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."

*Household Int'l, Inc.*, 151 F. App'x 529, 531 (9th Cir. 2005) ("Neither the plain language of the statute nor the case law supports the theory that a § 3604 claim may proceed in the case of a non-purchase money loan"); *Tate-Austin v. Miller*, 2022 WL 1105072, at *6 (N.D. Cal. 2022) (dismissing Section 3604 claim because it involved a mortgage refinancing, not the sale or rental of a dwelling); *Eva v. Midwest Nat'l Mortgage Bank, Inc.*, 143 F. Supp. 2d 862, 886 (N.D. Ohio 2001) (dismissing Section 3604(b) claim because the transaction involved "refinancing of homes," and it is "clear that § 3604 relates to acquiring a home"); *Thomas v. First Fed. Sav. Bank of Ind.*, 653 F. Supp. 1330, 1337 (N.D. Ind. 1987) (dismissing Section 3604 claim because plaintiffs "were not seeking to purchase or rent a home or an apartment; instead, they were attempting to obtain additional financing on their already-owned home").

Plaintiffs allege loanDepot denied them "a refinance loan."  Compl. ¶¶ 2, 37.  Because a "refinance loan" is not the "sale or rental of a dwelling," it is not within the scope of Section 3604(b) or (c) and the Court should dismiss those claims against loanDepot as a matter of law.

### B.     Plaintiffs Fail to State a Claim Under Section 3605 of the FHA.

Section 3605 makes it unlawful for an "entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race."  42 U.S.C. § 3605(a).  To state a claim under Section 3605, plaintiffs must allege they suffered discrimination under either a "discriminatory intent or discriminatory impact" theory.  *Glenn v. Wells Fargo Bank, N.A.*, 2017 WL 371956, at *13 (D. Md. 2017); *Boardley v. Household Finance Corp. III*, 39 F. Supp. 3d 689 (D. Md. 2014).  Here, the Amended Complaint fails to state a claim against loanDepot under either one.

### 1.      Plaintiffs Fail to Allege loanDepot Acted with Discriminatory Intent.

To plead discriminatory intent, the Plaintiffs must (1) offer direct evidence of discrimination, or (2) allege disparate treatment under a framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Glenn*, 2017 WL 371956 at *13.

### a.      Plaintiffs Fail to Allege Direct Evidence of Discrimination.

Direct evidence of discrimination "encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested housing decision."  *Letke v. Wells Fargo Home Mortg., Inc.*, 2015 WL 1438196, at *7 (D. Md. 2015).  If the plaintiff "alleges no facts indicating that [defendant's] conduct or statements pertaining to loan modification reflected a discriminatory attitude and bore directly on the loan modification," there is no direct evidence of discrimination.  *Id.*

Simply alleging defendant "displayed a discriminatory attitude" or acted rudely is insufficient to constitute direct evidence of discrimination.  *Laing v. Federal Exp. Corp.*, 703 F.3d 713, 718 (4th Cir. 2013); *Ortiz v. Potter*, 2008 WL 11441685, at *4 (E.D. Va. 2008) (holding "rude comments" alone are "not sufficient direct evidence" to constitute discrimination).  And admitting the defendant was initially friendly with the plaintiff belies the allegation that the defendant acted based on a "discriminatory attitude."  *E.g.*, *Deegan-Price v. Fajana,* 2006 WL 8457079, at *3 (D. Md. 2006) (dismissing FHA claim against one defendant given he had already interacted with plaintiffs and continued to act as their real estate agent after plaintiffs raised discrimination concerns);  *Radcliffe v. Avenel Homeowners Ass'n, Inc.*, 2013 WL 556380, at *6 (E.D.N.C. 2013) (holding fact that defendant acted friendly towards plaintiff "before any of the complained of behavior occurred . . . belie[s] the contention of Plaintiff that the actions of Defendants were motivated by illegal discrimination").

A plaintiff also fails to allege "discriminatory attitude" if there is an "obvious alternative explanation" for the defendant's conduct that is inconsistent with "invidious discrimination." *Glenn*, 2017 WL 371956 at *14.

Here, the Amended Complaint is devoid of allegations that loanDepot or Jorgensen's alleged conduct constitutes "direct evidence of discrimination" on the basis of race, and there is an obvious alternative explanation for the defendants' conduct.

**The Low Valuation and loanDepot's Denial of the Loan.**  Plaintiffs concede they could only qualify for the loan if the appraisal was at least $550,000 and loanDepot denied the loan "because of the low valuation."  Compl. ¶¶ 7, 39-41.  Plaintiffs do *not* (and could not) allege loanDepot determined (or even influenced) the value used in the independent appraisal, or that loanDepot denied the loan because of their race, and thus neither the low valuation nor the denial of the loan can constitute evidence of discrimination by loanDepot.  Even if Plaintiffs alleged the denial was based on race, the fact that the independent appraisal was below the minimum needed to qualify for the loan is an "obvious alternative explanation" for the denial, and therefore would be insufficient to state a claim against loanDepot.  *Glenn*, 2017 WL 371956 at *14.

**loanDepot Did Not "Ignore" Plaintiffs Complaints.** Plaintiffs allege loanDepot "ignored" evidence that Lanham undervalued their home.  Compl. ¶ 85.  That fails out of the gate because the Amended Complaint alleges loanDepot did *not* "ignore" Plaintiffs' complaints about the valuation.  Rather, after Plaintiffs alleged their home was undervalued, loanDepot (1) told Plaintiffs to submit a letter explaining why it was undervalued, (2) processed Plaintiffs' appeal of the appraisal, and (3) asked Lanham to respond to it.  *Id.* ¶¶ 94-99.  Thus, the theory that loanDepot "ignored" Plaintiffs' complaints is contradicted by Plaintiffs' own allegations.  *See Ramos v. Bank*

*of Am., N.A.*, 2012 WL 5928732, at *4 (D. Md. 2012) (dismissing claims with prejudice where complaint made self-contradictory statements).

**Plaintiffs Used loanDepot's Reconsideration Process**.  Plaintiffs conclude that Black customers who object to appraisals based on discrimination are not given "access to loanDepot's reconsideration process."  Compl. ¶ 112.  But this does not state a claim for at least two reasons.

*First*, it is a barebones conclusory allegation, not a factual allegation, and the Court may not consider it on a motion to dismiss.  *Supra*, p. 7.

*Second*, that conclusion is contradicted by the clear allegations in the Amended Complaint. Plaintiffs allege they *were* afforded access to loanDepot's reconsideration process.  After receiving the low appraisal, Plaintiffs submitted a letter that pointed out deficiencies in the appraisal, loanDepot processed the appeal, and Lanham amended his appraisal to respond to Plaintiffs' letter. Compl. ¶¶ 94-99.  Thus, the allegation that Black customers—and Plaintiffs in particular—are not given the opportunity to have their appraisal "reconsidered" is expressly contradicted by Plaintiffs' allegation that they *did* have their appraisal reconsidered and cannot undermine dismissal.  *See Ramos,* 2012 WL 5928732 at *4.

**loanDepot's "Failure" to Order a Second Appraisal**.  Plaintiffs attempt to create evidence of discrimination by alleging loanDepot "failed to order a second appraisal."  Compl. ¶ 85.[11]  But there is no logical connection between (1) loanDepot failing to order a new appraisal after an independent appraiser reconsidered and stood by his original appraisal, and (2) a discriminatory attitude.  Indeed, Plaintiffs do not (and could not) allege, for example, a legal obligation to order such an appraisal, or that loanDepot routinely ordered second appraisals when first appraisals came back low but failed to do so here because Plaintiffs are Black.  The Amended

---

[11] loanDepot is prohibited by law from influencing appraisals. *See infra*, pp. 15-16.

Complaint does not allege (let alone identify) any other customers for whom loanDepot ordered a second appraisal (whether Black, non-Black, or whether they complained about discrimination or not) or circumstances under which loanDepot routinely ordered second appraisals.[12]

Materially, Plaintiffs also do not allege a second appraisal would have led to their loan being approved.  Thus, they fail to allege, as they must, that loanDepot not ordering a second appraisal was an action that "bear[s] directly on" the loan denial.  *Letke*, 2014 WL 1438196.[13]

**Jorgensen Was Helpful and Continued to Help Plaintiffs after They Complained**. Plaintiffs accuse Jorgensen of being "unhelpful" after they complained the appraisal was discriminatory.  Compl. ¶ 88.  This conclusion is inconsistent with other allegations in the Amended Complaint and is insufficient as a matter of law.  As an initial matter, merely alleging Jorgensen had an attitude, was unhelpful, or was rude is not enough.  *See Laing*, 703 F.3d at 718; *Ortiz*, 2008 WL 11441685 at *4; *Radcliffe*, 2013 WL 556380 at *6.  Even putting that aside, however, Plaintiffs admit that, from the outset when they identified themselves as Black, Jorgensen was initially "friendly, responsive, and proactive."  Compl. ¶¶ 39-41, 88.  This "belie[s] the contention of Plaintiff[s] that the actions of [loanDepot] were motivated by illegal discrimination." *Radcliffe*, 2013 WL 556380 at *6.

Moreover, according to the Amended Complaint, even *after* Plaintiffs claimed the appraisal was discriminatory, Jorgensen *was* helpful and continued to give them advice.  Jorgensen told

---

[12] Plaintiffs do not (and could not) argue the law imposes an obligation to provide a second appraisal based solely on an allegation that a first appraisal was discriminatory.  Indeed, any such requirement would mandate second, third, or even more appraisals whenever discrimination is alleged, essentially establishing a presumption of discrimination if additional appraisals are not conducted unless and until homeowners are satisfied with an appraisal that qualifies for the loan. That would conflict with independence requirements and is not the law.

[13] This is not surprising, because the appraisal they used to ultimately obtain a loan did not occur until more than 6 months later.  Compl. ¶ 122.

Plaintiffs they could appeal the appraisal.  Compl. ¶¶ 93, 97.  He even suggested they do so quickly (*i.e.*, by June 28), before their historically low interest rate lock expired.  *Supra*, p. 4.

Nor can it matter that Jorgensen did not volunteer to Plaintiffs that they could have waited 60 days to file an appeal.  Leaving aside the fact that Plaintiffs would have lost the low interest rate lock had they waited 60 days, Jorgensen's alleged failure to highlight that option cannot constitute racial discrimination for several reasons.  *First*, Plaintiffs never alleged they asked about any deadline.  *See, e.g.*, *Deegan-Price*, 2006 WL 8547079 at *3 (dismissing FHA claim where "the complaint only alleges that [plaintiffs] 'attempt[ed] to schedule a meeting' with [defendant] and that they were not shown any other homes by [defendant]. The complaint does not allege that they requested such a service or that [defendant] refused any such request.")  *Second*, Plaintiffs did timely file their appeal, and loanDepot timely processed it.  *And third*, Plaintiffs do not and cannot allege their appraisal was low because their appeal was late (it was not late), or that the appraisal would have been higher if they had more time to write their letter.  Rather, they allege it was low because *Lanham* discriminated against them based on their race.  Thus, the theory that *Jorgensen* was "unhelpful" or "refused" to tell them about the 60-day deadline is (1) insufficient on its face to constitute a "discriminatory attitude," (2) contradicted by the allegations in the Amended Complaint, and (3) has an "obvious alternative explanation" that is inconsistent with a discriminatory attitude.  *Glenn*, 2017 WL 371956 at *14.

**The Failure to Tell Plaintiffs Exactly What to Write in Their Appeal**.  Plaintiffs allege Jorgensen was not helpful *enough* because he did not advise them *how* to draft the letter.  Compl. ¶ 52.  That argument fails for at least three reasons.

*First*, Plaintiffs do not allege they asked for "guidelines for drafting the letter."  *Id*.  So Jorgensen's failure to volunteer such advice, without being asked, cannot be the basis of a

"discriminatory attitude." *Deegan-Price,* 2006 WL 8547079 at *3. This is especially true because he was friendly and continued to help after Plaintiffs complained by advising them to appeal before their rate lock expired. *Supra*, p. 4.

*Second*, Plaintiffs fail to allege what Jorgensen might have advised them (other than the helpful suggestion to appeal quickly to preserve the rate lock) that Plaintiffs did not already know and include in their letter. The information Plaintiffs included in their letter was sufficient to establish an appeal, and Plaintiffs do not indicate any information that Jorgensen could have suggested be added that Plaintiffs failed to include in their letter. Indeed, Plaintiffs' appeal was fully considered, and resulted in the appraiser modifying his report, albeit not his valuation.

*Third*, Plaintiffs' argument is contrary to established federal law, which bars loanDepot from even *indirectly* influencing or attempting to influence an appraisal. *See* 15 U.S.C. § 1639e(a) ("It shall be unlawful, in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer, to engage in any act or practice that violates appraisal independence."); 12 C.F.R. § 1026.42(c)(1) (prohibiting "attempting to directly or indirectly cause the value assigned to the consumer's principal dwelling to be based on any factor other than the independent judgment of a person that prepares the valuations"). Specifically, lenders are prohibited from any act that:

> [C]ompensates, coerces, extorts, colludes, instructs, induces, bribes, or intimidates a person, appraisal management company, firm, or other entity conducting or involved in an appraisal, or attempts [to do so] for the purpose of causing the appraised value assigned, under the appraisal, to the property to be based on any factor other than the independent judgment of the appraiser . . . . [or] seeking to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction.

15 U.S.C. § 1639e(b)(1).[14]

Plainly, even as alleged in the Amended Complaint, Jorgensen's conduct was appropriate—both helpful and lawful—and certainly does not constitute a discriminatory attitude.

**Plaintiffs Not Speaking to Jorgensen for "Months."**  Plaintiffs complain they did not speak to Jorgensen for "months" after their loan was denied.  Compl. ¶ 88.  This claim fails for multiple reasons even as alleged (selectively) in the Amended Complaint.[15]

*First*, this is no more than an allegation that Jorgensen provided poor customer service, which is not a "discriminatory attitude"—especially where, as here, he initially was "friendly, responsive, and proactive" after Plaintiffs disclosed their race.  *Laing*, 703 F.3d at 718; *Ortiz*, 2008 WL 11441685 at *4-5; *Radcliffe*, 2013 WL 556380 at *6.

*Second*, there is no logical connection between the alleged failure to respond to Plaintiffs *after the loan was finally denied* and any possible discrimination by loanDepot in the denial of the loan.  Indeed, as shown below, none of Jorgensen's conduct bore directly on the loan denial.

*Third*, there is an "obvious alternative explanation" for the lack of communication between loanDepot and Plaintiffs that is inconsistent with "invidious discrimination." *See Glenn*, 2017 WL 371956 at *14.  Namely, Jorgensen had been helping to facilitate a loan and stopped communicating with the applicants because the loan was denied and no longer in process.  There is no factual basis to claim discrimination whenever a lender ceases communication with a former potential customer who did not qualify for a loan.

---

[14] The Amended Complaint acknowledges loanDepot is subject to these laws.  *See* Compl. ¶ 21 ("loanDepot, Inc. acknowledges in SEC filings that its business is subject to laws that 'regulate the method by which appraisals are ordered and reviewed and [its] interaction with appraisers.'").

[15] While loanDepot is required by law to accept the facts as alleged for purposes of this motion, loanDepot does not otherwise concede these facts.

**None of Jorgensen's Actions Bear Directly on the Loan Denial**.  Plaintiffs also fail to allege, as they must, that *any* of Jorgensen's conduct "bear[s] directly on the contested housing decision" (*i.e.*, the denial of Plaintiffs' loan).  *Letke*, 2015 WL 1438196 at *7.  In fact, Plaintiffs do not allege loanDepot denied the loan because of anything Jorgensen did or did not do.  Rather, they allege it was because of the low appraisal by an independent third party.  Compl. ¶ 7 ("loanDepot denied Plaintiffs' loan application because *of* the low valuation.") (emphasis added).

And, importantly, Plaintiffs do *not* attribute the low appraisal to loanDepot—nor could they.  *See Frison v. Ryan Homes*, 2004 WL 3327904, at *5 (D. Md. 2004) ("Plaintiffs seem to blame [the lender] for Mr. Frison's low credit score and his problems in obtaining a loan, but such accusations are irrelevant to the FHA inquiry.").  Plaintiffs concede loanDepot did not appraise their home, and when Plaintiffs complained about the valuation, loanDepot facilitated their appeal to the appraiser.  Compl. ¶¶ 36, 93, 97.  Federal law prohibited loanDepot from doing anything more that might influence Lanham's appraisal.  *Supra*, pp. 15-16.  The law permitted loanDepot only to request that the appraiser re-consider his valuation and provide an explanation.  *See* 15 U.S.C. § 1639e(c).  That is precisely what loanDepot did here.  *See* Compl. ¶¶ 93-97.  Thus, to the extent Plaintiffs allege loanDepot should have changed, influenced, or otherwise modified Lanham's appraisal, their argument contradicts federal law and cannot stand.

In short, there are no facts that constitute "direct evidence" loanDepot had a discriminatory attitude based on Plaintiffs' race that bears directly on the loan denial.  Thus, Plaintiffs fail to allege a Section 3605 violation against loanDepot based on direct evidence of discrimination.

> **b.     Plaintiffs Fail to Allege Facts Sufficient to Satisfy the *McDonnell Douglas* Framework for Establishing Disparate Treatment.**

At the pleading stage, a plausible claim of discrimination must allege facts to satisfy the elements of a cause of action created by [the FHA]."  *Glenn*, 2017 WL 371956 at *13.  This

requires Plaintiffs to plead (1) they are members of a protected class, (2) they applied for and were qualified for a loan, (3) the loan was rejected despite their qualifications, and (4) the lender continued to approve loans for applicants with similar qualifications. *Flippings v. U.S. Home Mortg.*, 2017 WL 728179, at *2 (D. Md. 2017); *Glenn*, 2016 WL 3570274 at *5; *cf. Best Medical Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685 (E.D. Va. 2013).

Plaintiffs must also show "discriminatory animus" was "a motivating factor" in loanDepot's decision to deny their loan. *Letke*, 2015 WL 1438196 at *7. The failure to do so is fatal. *E.g.*, *id.* ("There are no facts alleged in the Amended Complaint that lay the foundation for a plausible claim that Plaintiff's status as a female owner of a business had any bearing on Wells Fargo's loan modification."); *Glenn v. Wells Fargo Bank, N.A.*, 2016 WL 3570274, at *6 (D. Md. 2016) (granting motion to dismiss where plaintiff "does not plausibly allege 'that discriminatory animus was a motivating factor in [Defendant's] decision to deny' his loan-related applications").

Applied here, Plaintiffs fail to meet the *McDonnell Douglas* test.

**Plaintiffs Admit They Did Not Qualify for the Loan.** Plaintiffs fail to meet the second and third elements of the *McDonnell Douglas* test because they do not allege they qualified for the loan. *Frison*, 2004 WL 3327904, at *5 (dismissing FHA claim because plaintiff "fails to show that he was qualified for a loan"); *Flippings*, 2017 WL 728179 at *3 (dismissing complaint for failure to allege plaintiff "was independently qualified for a loan").

The Amended Complaint acknowledges a $550,00 appraisal was required to qualify for the loan: "loanDepot's final approval and the 2.25% interest rate were dependent on an appraisal of the home supporting [a $550,000] valuation." Compl. ¶ 41. It also acknowledges the appraisal did not meet this threshold. *Id.*, ¶ 50. And Plaintiffs also fail to allege any contemporaneous appraisal that would support such a valuation. Their whitewashing artifice several months later is

plainly insufficient to allege they qualified at the time they applied for the loan. Moreover, loanDepot was not responsible for, nor could it influence, the appraisal. *Supra*, pp. 15-16. Thus, Plaintiffs admit they did not satisfy the requirements for the loan, due to no fault of loanDepot, and therefore fail to meet the second and third elements of the *McDonnell Douglas* analysis.

**Plaintiffs' Do Not Allege loanDepot Approved Loans for non-Black Customers Whose Appraiser Rejected the Appeal.** Plaintiffs fail to meet the fourth element of the *McDonnell Douglas* test because they do not allege loanDepot approved loans or ordered second appraisals for non-Black applicants with the same qualifications—*i.e.*, non-Black applicants with a low appraisal that did not qualify for a loan. *Glenn*, 2016 WL 3570274 at *6 ("Plaintiff also fails to allege that Defendant gave preferential treatment to applicants outside of the protected class with qualifications similar to his."); *Frison*, 2004 WL 3327904 at *5 (dismissing FHA claim because plaintiff failed to allege "Defendants provided loans to others possessing his qualifications"); *Deegan-Price v. Fajana*, 2007 WL 9782568, at *2 (D. Md. 2007) (granting motion to dismiss because plaintiff did not allege defendant "engaged in the act of securing loans for other applicants with qualifications similar to those of Plaintiffs").

The Amended Complaint is silent on this point. It does not cite a single instance where loanDepot approved a loan or ordered a second appraisal for a non-Black customer who had had a disqualifying low appraisal. The only effort the Amended Complaint makes on this point is to include an anecdote about a non-Black loanDepot customer in California. *See* Compl. ¶¶ 103-07. But rather than support their claim, that anecdote eviscerates it, because it shows loanDepot treated Plaintiffs *the same* as the non-Black customer.

Plaintiffs allege a non-Black homeowner complained about an undervalued appraisal, appealed it with loanDepot, and the appraiser later adjusted the appraisal upwards. *Id*. ¶¶ 103-06.

loanDepot did *the exact same thing* for Plaintiffs.  Like the non-Black homeowner, the Plaintiffs had a low appraisal.  And like the non-Black homeowner, Plaintiffs appealed it.  The only difference between Plaintiffs' experience and the non-Black homeowner's experience is not what *loanDepot* did.  It's what the *appraisers* did in response to each appeal.  In the case of the non-Black homeowner, the appraiser adjusted the value.  In the case of the Plaintiffs, the appraiser did not.  In both cases, loanDepot relied on the independence of the appraiser, as required.  loanDepot does not, and cannot, adjust or influence an appraisal as a matter of law.  *Supra*, pp. 15-16.  Thus, this anecdote shows loanDepot treated Plaintiffs and non-Black customers the same, and Plaintiffs' claim cannot satisfy this element of the *McDonnell Douglas* analysis as a matter of law.

   **Plaintiffs Fail to Show "Discriminatory Animus" by loanDepot was a "Motivating Factor" in the Loan Denial.**  Plaintiffs also fail to allege "discriminatory animus" by loanDepot was "a motivating factor" in loanDepot's denial of their loan.  In fact, Plaintiffs plead precisely the opposite.  They do not allege loanDepot denied their loan because of discriminatory animus towards Black people whatsoever.  They allege repeatedly that loanDepot "den[ied] the loan *because of the appraisal*."  Compl. ¶ 101 (emphasis added); *see also* Compl. ¶ 7 ("Defendant loanDepot denied Plaintiffs' loan application because of the low valuation.").  While Plaintiffs claim the *appraiser* acted with discriminatory intent, they do not allege discriminatory animus on the part of *loanDepot* in denying the loan.  Indeed, "[t]he cause that [Plaintiffs ask] the Court to infer (*i.e.,* invidious discrimination) is not plausible in light of the "'obvious alternative explanation'" that [loanDepot] simply found [Plaintiffs] unqualified for the credit [they] sought." *Glenn*, 2017 WL 371956 at *14 (citing *Iqbal*, 556 U.S. at 682).

**2.      Plaintiffs Fail to Allege loanDepot's Policies Cause a Discriminatory Impact.**

To plead discriminatory impact under the FHA, Plaintiffs must allege (1) a specific policy that (2) caused a significant disparate effect on a protected group. *Letke*, 2015 WL 1438196 at *8; *CASA de Maryland, Inc. v Arbor Realty Trust, Inc*., 2022 WL 4080320, at *8 (D. Md. 2022).

To meet this standard, "[t]he plaintiff must begin by identifying the specific practice that is challenged." *CASA de Maryland*, 2022 WL 4080320 at *8.  The policy cannot be a "one-time" decision or affect only the Plaintiffs. *Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015); *Doran v. Prince William Cnty*., 2009 WL 10687839, at *4 (E.D. Va. 2009) ("[D]iscriminatory impact cannot be established when you have just one isolated decision.").

The Plaintiffs must also "cite statistical evidence demonstrating the discriminatory impact caused by the practice." *Glenn*, 2017 WL 371956 at *13; *Letke*, 2015 WL 1438196 at *8; *CASA de Maryland*, 2022 WL 4080320 at *11 (dismissing plaintiff's FHA claims where plaintiff's "comparator allegations and statistical analysis allegations are insufficient to create an inference of discriminatory intent" and statistical analysis had not been subjected to regression analysis to isolate non-racial explanations); *see also Inclusive Cmtys.*, 576 U.S. at 543 ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.").  This requires the plaintiff to "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused" the discriminatory impact. *CASA de Maryland*, 2022 WL 4080320 at *8 ("[S]tatistical disparities must be sufficiently substantial that they raise such an inference of causation."). "Pointing to a handful" of examples to show a "disproportionate impact on minorities" is not sufficient to survive a motion to dismiss.  *Id*.  And merely alleging that a policy "'had a significant

and pervasive adverse impact on black homeowners,' . . . is not tantamount to 'show[ing] that [the] policy caused a significant disparate effect on a protected group'" because they are "conclusory allegations that do not suffice to state a claim." *Boardley*, 39 F. Supp. 3d at 712.

Instead, the statistics must demonstrate "a robust causal connection" between the policy and the discriminatory impact. *CASA de Maryland*, 2022 WL 4080320 at *8. It is especially difficult to demonstrate this connection when the law "substantially limit[ed] the [defendant's] discretion" in creating the policy. *Inclusive Cmtys*., 576 U.S. at 543. This high standard exists because "[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact," and without a robust causal connection, a defendant could be liable for "the myriad of innocent causes that may lead to statistical imbalances." *Id.* at 542.

Plaintiffs identify three types of conduct by loanDepot, but fail to allege (1) any of them is loanDepot's "policy" (in fact, Plaintiffs allege they are *contrary* to loanDepot's policy), or (2) any statistics demonstrating they cause a robust discriminatory impact on a protected group.

### a.      Plaintiffs Fail to Identify any loanDepot Policy.

Plaintiffs do not even allege many of Jorgensen's actions were taken pursuant to loanDepot policies. For example, Plaintiffs never allege it is loanDepot's policy to inform, or to refuse to inform, customers about appeal deadlines.[16] In fact, Plaintiffs repeatedly allege Jorgensen's conduct was "*inconsistent with*" and a "*deviation*" from loanDepot's policies. Compl. ¶ 10 (emphasis added), ¶ 89 (alleging that when Jorgensen allegedly "cut off contact with Plaintiffs," it was "in *direct violation* of loanDepot's express policies." (emphasis added)), ¶ 92 ("Jorgensen's *deviation from Defendant loanDepot's strict policy* for responding to client communications was

---

[16] Jorgensen's alleged failure to advise Plaintiffs of the 60-day appeal deadline also could not have "caused" any discriminatory impact, as is required. *Supra*, p. 21 ("[P]laintiff must show that a specific policy caused a significant disparate effect on a protected group."). This is because Plaintiffs' concede they *did* appeal their appraisal. Compl. ¶¶ 94-99.

in retaliation for Plaintiffs' complaint that they had been discriminated against." (emphasis added)); ¶ 101 (alleging loanDepot's failure to communicate was "a *clear departure* from loanDepot's own policies" (emphasis added)).  Plaintiffs cannot have it both ways: an employee's actions are deviations when arguing for improper conduct but not deviations when arguing for policies that have a disparate impact on minorities.  Here, Plaintiffs allege Jorgensen's conduct was *not* a "policy" of loanDepot, and therefore it cannot form the basis for a discriminatory impact claim against loanDepot under Section 3605.  *Supra*, pp. 21-22.

Plaintiffs also claim loanDepot has a "pattern and practice" of (1) "refusing to assist customers who object to appraisals on grounds of discrimination, while providing substantial assistance to customers who do so on other grounds," and (2) "retaliating and discriminating against customers who object to discriminatory appraisals by disregarding their complaints, while assisting customers who object to appraisals on other grounds."  Compl. ¶¶ 86, 103.  These fall well short of the standard for multiple reasons.

*First*, these statements are nothing more than conclusory allegations, devoid of facts, which the Court will not consider.  *Supra*, pp. 7, 22; *e.g.*, *Boardley*, 39 F. Supp. 3d at 712 (dismissing Section 3605 claim because allegations that a policy "had a significant and pervasive adverse impact on black homeowners" are "conclusory allegations that do not suffice to state a claim").

*Second*, to the extent these allegations are based on the facts in this case, they allege the type of "one-time" decision that affected only Plaintiffs, which is legally insufficient.  *Inclusive Cmtys.*, 576 U.S. at 543; *Doran*, 2009 WL 10687839 at *4.

*Third*, these conclusory statements are contradicted by Plaintiffs' admissions in the Amended Complaint that loanDepot (1) did not "disregard" Plaintiffs' complaints, but instead told them they could appeal the appraisal and processed their appeal (*supra*, pp. 4, 11, 12, 14), and (2)

treated Plaintiffs the same as the non-Black customer in California.  *Supra*, pp. 6, 19.

*Fourth*, Plaintiffs claim loanDepot's policies impact people, not based on their race, but based on their conduct—*i.e.*, complaining about an allegedly discriminatory appraisal.  Nowhere do Plaintiffs cite any facts that such an alleged policy somehow impacts a protected class, and they fail to provide any statistics to demonstrate such an impact.  *See infra*, pp. 24-25.

> **3.      Plaintiffs Fail to Allege Statistical Evidence that Shows a "Robust Causal Connection" Between the Policy and a Discriminatory Impact.**

Plaintiffs also fail to cite *any* "statistical evidence" of a discriminatory impact allegedly caused by any of loanDepot's practices, let alone statistics that show a "robust causal connection" between loanDepot's policies and a discriminatory impact.

The Amended Complaint mentions *two* anecdotes about other homeowners, but "[p]ointing to a handful" of examples is insufficient "statistical evidence" and cannot defeat a motion to dismiss.  *CASA de Maryland*, 2022 WL 4080320 at *8.  Thus, even if the two anecdotes supported Plaintiffs' theory, they would be insufficient to state a Section 3605 claim.

But the anecdotes do *not* support Plaintiffs' theory and, thus, could not meet the "robust causal connection" requirement.  *Id*.  The anecdote about the non-Black homeowner in California shows loanDepot's policies *do not* have an impact on a particular race, because loanDepot treated Plaintiffs *the same* as the non-Black homeowner in California.  *Supra*, pp. 6, 23-24.[17]  The anecdote about the Black customer in Ohio is the only other instance where Plaintiffs allege a customer complained about a discriminatory appraisal, but it has no relevance here.  In that instance, Plaintiffs allege loanDepot did not consider the customer's explanation, but loanDepot is prohibited from altering or even influencing appeals no matter how convincing an explanation may

---

[17] And, regardless, the California homeowner allegedly worked with Jorgensen, who Plaintiffs' repeatedly allege did not follow loanDepot's policies.  *Supra*, pp. 5-6.

be (*supra*, pp. 15-16), and Plaintiffs do not even allege that the Black customer in Ohio appealed

that appraisal.  In addition, federal law "substantially limit[s]" loanDepot's discretion with regard

to appraisals, which makes any possible causal connection even less likely.  *See Inclusive Cmtys.*,

576 U.S. at 543-44; *supra*, pp. 15-16.

The Amended Complaint simply fails to include statistical evidence that shows a "robust

causal connection" between any policies associated with loanDepot and a discriminatory impact

on a protected class of people.  *CASA de Maryland*, 2022 WL 4080320 at *8.

**C.    Plaintiffs Fail to State a Claim Under Section 3617 of the FHA (Count I).**

Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any

person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on

account of his having aided or encouraged any other person in the exercise or enjoyment of, any

right granted or protected by section . . . 3604."[18]  The Complaint fails to allege facts that constitute

a violation of this statute by loanDepot.

**1.    Plaintiffs' Do Not Allege a Predicate Violation of Section 3604.**

Because Section 3617 makes it unlawful to interfere with a "right granted or protected by

section . . . 3604," several courts—including this Court in a decision issued just months ago—have

held a Section 3617 violation requires "a predicate violation of [Section] 3604."  *CASA de

Maryland,* 2002 WL 4080320 at *12 n.9; *see McCauley v. City of Jacksonville*, 1987 WL 44775,

at *2 (4th Cir. 1987) (holding plaintiff adequately pled a Section 3617 violation when he also

adequately pled a violation of Section 3604); *see also Hood v. Pope*, 627 F. App'x 295 (5th Cir.

---

[18] Section 3617 applies to "any right granted or protected by section 3603, 3604, 3605, or 3606" of the FHA, but Plaintiffs allege a Section 3617 violation only based on their "rights under Section 3604."  Compl. ¶ 140(iv).

2015) (holding Section 3617 claim failed because plaintiffs failed to state a claim under Section 3604).

As detailed above, Plaintiffs fail as a matter of law to state a violation of Section 3604 because this case involves a refinancing loan, not the "sale or rental of a dwelling." *Supra*, pp. 8-9. Thus, the Section 3604 claim cannot serve as a "predicate violation" upon which to base a Section 3617 claim. That ends the analysis, and Plaintiffs' Section 3617 claim must be dismissed.

### 2. Plaintiffs Fail to Plead a Retaliation Claim.

Even if Plaintiff's Section 3617 claim could survive without an underlying Section 3604 violation (it cannot), Plaintiffs nevertheless fail to plead a Section 3617 violation.

To state a claim under Section 3617, Plaintiffs must allege: (1) they were engaged in protected activity; (2) loanDepot was aware of that activity; (3) loanDepot took adverse action against them; and (4) a causal connection exists between the protected activity and the adverse action. *Hall v. Greystar Mgmt. Servs., L.P.,* 28 F.Supp.3d 490, 495 (D. Md. 2014). Also, "[t]o survive a motion to dismiss an FHA retaliation claim, a plaintiff must sufficiently allege a discriminatory intent on the part of Defendants." *Hardaway v. Equity Residential Servs., LLC*, 2015 WL 858086 (D. Md. 2015). The Amended Complaint fails to satisfy several of these elements.

### a. The Loan Denial Fails to Meet the Elements of a Retaliation Claim.

To the extent Plaintiffs contend loanDepot's denial of their loan was retaliation in violation of Section 3617, that argument fails to satisfy at least two elements of the retaliation test.

Denial of the loan fails to meet the third element—*i.e.*, that loanDepot took adverse action. Plaintiffs allege that once they complained, loanDepot did not change its initial decision to deny the loan. *See* Compl. ¶ 10 ("loanDepot maintained its application denial."). But failing to take an

action, or "non-responsiveness," is not "adverse action" under the FHA.  *E.g.*, *Morgan v. Brittany Woods Homeowner's Ass'n, Inc*. 2019 WL 2114255, at *5 (E.D. N.C. 2019) (holding allegation that "defendants failed to act" insufficient to state an FHA violation); *Hann v. Canyon Mobile Home Park*, 2018 WL 5905869, at *3 (C.D. Cal. 2018) (holding plaintiff failed to plead a violation of Section 3617 by alleging "Defendants refused to communicate with [plaintiff] in any way" and "stonewalled" plaintiff).

Denial of the loan also fails to meet the fourth element—*i.e.*, that Plaintiffs' complaint about discrimination caused the loan denial, for multiple reasons.

*First*, Plaintiffs concede loanDepot denied their loan because of the low appraisal, not because they complained.  *See* Compl. ¶ 7 ("loanDepot denied Plaintiffs' loan application because of the low valuation.").

*Second*, loanDepot denied the loan *before* Plaintiffs complained, which means the denial could not have been retaliation for the discrimination complaint.  *Hall v. Greystar Mgmt. Servs., L.P.,* 637 F. App'x. 93, 98 (4th Cir. 2016) ("[W]e cannot, as [plaintiff] asks, infer causation based on facts that occurred before [plaintiff's] protected activity.").  "Retaliatory conduct, by its very nature, must come *after* the protected activity." *Id.* (emphasis added).  Thus, there can be no causation between Plaintiffs' complaint and the loan denial.  *Id*. (holding the defendant must have acted "*because of* [plaintiff's] protected activity."  (emphasis added)).

*Third*, where there is an "obvious alternative explanation" that makes retaliation an implausible basis for defendant's action, the causation element fails.  *Id.* ("[Plaintiff's] amended complaint leaves open to speculation the cause for GMS's decision to destroy her property, and the cause that she asks us to infer—retaliation–is not plausible in light of the "'obvious alternative explanation[.]'") (citing *Iqbal*, 556 U.S. at 567).  Here, the fact that Plaintiffs' appraisal failed to

meet the valuation necessary for the loan is an "obvious alternative explanation" for loanDepot's denial of the loan, which defeats Plaintiffs' claim against loanDepot under this statute. *Id*.

Plaintiffs also fail to allege loanDepot denied the loan with discriminatory intent, which is also is fatal to its retaliation claim. *Hardaway*, 2015 WL 858086 at *6-7.

> **b.  The Failure to Order a Second Appraisal Fails to Meet the Elements of a Retaliation Claim.**

The failure to order a second appraisal also cannot constitute retaliation, and cannot withstand a motion to dismiss, for two reasons.

*First*, as explained above, it does not satisfy the third element of retaliation (adverse action) because failing to take action is not an "adverse action" under the FHA. *Supra*, pp. 12-13.

*Second*, it does not satisfy the fourth element (causation) because Plaintiffs fail to plead any causal connection between their complaint about the appraisal and loanDepot's failure to order a second appraisal. The Amended Complaint simply does not allege, for example, that loanDepot routinely ordered second appraisals where an appraiser considered but rejected an applicant's appeal, or that any decision not to order a second appraisal was in any way discriminatory. There are simply no allegations making a connection between Plaintiffs' complaint and loanDepot's inaction in not ordering a second appraisal.

*Third*, Plaintiffs fail to plead any facts that loanDepot had discriminatory intent when not ordering a second appraisal, which defeats a retaliation claim. *Hardaway*, 2015 WL 858086 at *6-7.

> **c.  Jorgensen's Actions Fail to Meet the Elements of Retaliation.**

Finally, Plaintiffs toss a grab bag of customer service issues into the Amended Complaint as possible retaliatory conduct—the alleged non-communication with Plaintiffs after their loan was denied, Jorgensen not telling Plaintiffs they had 60 days to appeal, and Jorgensen not telling them what to include in the appeal—but none of these claims survive scrutiny.

*First*, these allegations fail to meet the third element because, as shown above, inaction and non-responsiveness do not constitute "adverse actions." *Morgan*, 2019 WL 2114255 at *5; *Hann*, 2018 WL 5905869, at *3.  Thus, loanDepot's alleged non-communication and Jorgensen's failure to volunteer information to Plaintiffs are not actionable bases for a retaliation claim.

*Second*, Plaintiffs fail to meet the fourth element because they do not allege any causal connection between Jorgensen's actions (or even his inaction) and the alleged discrimination. *Hall*, 28 F. Supp. 3d. at 495. And there are "obvious alternative explanations" for the issues Plaintiffs cite that make retaliation implausible.  *Hall*, 637 F. App'x at 98.  As for loanDepot's alleged failure to communicate with Plaintiffs for "months" after their loan was denied, there was no call for Jorgensen to continue to engage with Plaintiffs once their loan was finally denied, but regardless, poor follow-up is far more likely than some sort of unexplained retaliation.  Similarly, the obvious explanation for Jorgensen's alleged failure to inform Plaintiffs about a 60-day deadline to appeal, Compl. ¶¶ 52, 93, is that he was helpfully suggesting Plaintiffs appeal before their rate lock would expire and they might lose their favorable interest rate guarantee.  *Exhibit A*.  Had Plaintiffs waited 60 days to appeal, their rate lock would have expired, and they would have faced potentially higher interest rates.  Indeed, Plaintiffs admit they wanted the "historically low interest rates" available at the time, and interest rates later increased.  Compl. ¶¶ 4, 12, 37.

*Third*, the theory that Jorgensen immediately stopped communicating with Plaintiffs after they complained about discrimination is contradicted by the Amended Complaint, which alleges that after Plaintiffs complained, Jorgensen assisted them by suggesting they appeal the appraisal quickly to avoid losing their historically low interest rate lock (plainly very helpful advice) and when Plaintiffs sent him their appeal letter he processed it.  *Supra*, pp. 13-16.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE EQUAL CREDIT OPPORTUNITY ACT (COUNT II).

In Count II, Plaintiffs allege loanDepot violated ECOA, 15 U.S.C. § 1691(a)(1), which provides "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race."  A plaintiff may make an ECOA discrimination claim by alleging facts that show either: (1) direct evidence of discrimination; (2) disparate treatment under the *McDonnell Douglas* framework, or (3) discriminatory impact. *Combs v. Bank of Am., N.A.*, 2015 WL 5008754, at *3 (D. Md. 2015).   In other words, ECOA uses the same tests as Section 3605.

Plaintiffs' ECOA claim fails for the same reasons their Section 3605 claim fails: they fail to allege direct evidence of discrimination (*supra*, pp. 10-17), disparate treatment under *McDonnell Douglas* (*supra*, pp. 17-20), or discriminatory impact (*supra*, pp. 21-25).

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866 (COUNT III)

In Count III, Plaintiffs allege loanDepot "injured Plaintiffs by impairing their right to make and enforce contracts and to the full and equal benefit of the laws for security of property as is enjoyed by white citizens" in violation of 42 U.S.C. § 1981.  Compl. ¶ 147.[19]

"[A] plaintiff alleging discrimination in lending may prove a § 1981 violation by either direct or circumstantial evidence."  *BNT Ad Agency, LLC v. City of Greensboro*, 837 F. App'x 962, 970–71 (4th Cir. 2020).   Under either theory, however, a plaintiff must show (1) "the defendant intended to discriminate on the basis of race," and (2) "the discrimination interfered

---

[19] 42 U.S.C. § 1981(a) provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

with a contractual interest," in other words, that "but for race, [she] would not have suffered the loss of a legally protected right." *Brown*, 2022 WL 657564, at *8 (citations omitted).

To the extent that Plaintiffs allege retaliation under 42 U.S.C. § 1981, they must allege (1) that they engaged in a protected activity, (2) that defendant took adverse action against them, and (3) a causal relationship existed between the two events. *Ofoche v. Apogee Med. Group, Virginia, P.C.*, 815 F. App'x 690, 693 (4th Cir. 2020); *see also Billingsley v. Fed. Home Loan Mortg. Corp.*, 2019 WL 5104748, at *5 (E.D. Va. 2019), *aff'd*, 849 F. App'x 413 (4th Cir. 2021); *Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.,* 937 F. Supp. 2d 685, 703 (E.D. Va. 2013).  If Plaintiffs claims are based on alleged circumstantial evidence, the *McDonnell Douglas* framework also applies. *Billingsley*, 2019 WL 5104748, at *5; *BNT Ad Agency*, 837 F. App'x at 970 (applying *McDonnell Douglas* framework to a Section 1981 discrimination claim).

### A.   The Amended Complaint Fails to Allege Facts that Constitute "Direct Evidence of Discrimination" or that loanDepot "Intended to Discriminate."

To establish discrimination, "a plaintiff must produce direct evidence of a stated purpose to discriminate." *BNT Ad Agency*, 837 F. App'x at 970-71.  This requires a plaintiff to allege a "specific action or statement from which a factfinder could infer that a racially discriminatory attitude was the 'but-for' cause of the [defendant's] decision." *Id.* at 970 n.7.

For the same reasons Plaintiffs fail to allege a discriminatory attitude or intent for their FHA claims (*see supra*, pp. 9-17, 26-30), Plaintiffs fail to allege any specific actions or statements by loanDepot or Jorgensen that constitute discriminatory intent for their Section 1981 claim.  The fact that Plaintiffs concede loanDepot denied their loan because the appraisal was low rather than because of any discrimination by loanDepot is, itself, sufficient to show there is no direct evidence of discriminatory intent by loanDepot.  *See supra*, pp. 11, 17; *see also Maryland Minority*

*Contractor Ass'n v. Lynch*, 2000 WL 135103 (4th Cir. 2000) (affirming dismissal of Section 1981 claim where there were "race-neutral facts that would explain" the alleged discrimination).

**B.      The Amended Complaint Fails to Allege Facts that Constitute Circumstantial Evidence of Discrimination.**

To allege circumstantial evidence of discrimination, a Plaintiff must allege facts that satisfy the *McDonnell Douglas* framework. *BNT Ad Agency*, 837 F. App'x at 970; *Painters Mill Grill*, 2012 WL 576640, at *5-6. As explained above, Plaintiffs fail to allege facts sufficient to constitute discrimination by loanDepot under the *McDonnell Douglas* framework. *See supra*, pp. 17, 20.

**C.      The Amended Complaint Fails to Allege Facts Showing that "But for" loanDepot's Alleged Discrimination, Plaintiffs Would Have Been Approved for the Loan.**

The "but for" causation standard used in Section 1981 cases is more stringent than the "motivating factor" test used in FHA claims. *Brown*, 2022 WL 657564 at *8. To meet it, a plaintiff must allege "but for race, [she] would not have suffered the loss of a legally protected right." *Id.*

Plaintiffs cannot meet this standard for the same reasons they cannot meet the lower, "motivating factor" test required for their FHA claim. *See supra*, pp. 17-20. In short, no alleged facts show that "but for" loanDepot's actions, Plaintiffs would have been approved for the loan. This is a simple analysis because, among other reasons, it is undisputed that Plaintiffs did not qualify for the loan because loanDepot relied on the appraisal by an independent appraiser. Compl. ¶ 7; *see Lynch*, 2000 WL 135103 at *3 (affirming dismissal of Section 1981 claim where there were "race-neutral facts that would explain" the alleged discrimination).

**D.      Plaintiffs Fail to Plead a Retaliation Claim.**

The elements of retaliation under Section 1981 are also encompassed by retaliation under Section 3617. *Supra*, pp. 26-30. Thus, because Plaintiffs fail to plead the elements of retaliation under Section 3617, they also fail to plead retaliation under Section 1981. *Id.*

## V.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1982 OF THE CIVIL RIGHTS ACT OF 1866 (COUNT IV)

In Count IV, Plaintiffs allege loanDepot "injured Plaintiffs by depriving them of their right to purchase, lease, sell, hold, and convey real property," in violation of 42 U.S.C. § 1982.  *See* Compl. ¶ 150.  A Section 1982 claim requires Plaintiff to allege they either (1) were "deprived of services while similarly situated persons outside the protected class were not deprived of those services," or (2) "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Painter's Mill Grille*, 2012 WL 576640, at *7.  Plaintiffs fail to allege a violation by loanDepot under either standard.

### A.     loanDepot Did Not Deprive Plaintiffs of Services Available to Similarly Situated Persons Outside the Protected Class.

Plaintiffs do not allege any facts that show loanDepot deprived them of services while providing those same services to non-Black customers, let alone to non-Black customers who are "similarly situated"—*i.e.*, customers who had a low appraisal and complained it was racially discriminatory. *Supra*, pp. 6, 19, 23-24.  Plaintiffs allege loanDepot denied Plaintiffs' loan because their appraisal had a low valuation, not because of their race.  *Supra*, pp. 11, 17, 27.  Indeed, Plaintiffs allege loanDepot allowed them to appeal the appraisal just as it allowed non-Black customers to appeal appraisals.  *Supra*, pp. 6, 19, 23-24.  All the services loanDepot offered to non-Black customers were offered to Plaintiffs, and Plaintiffs do not allege facts to the contrary.

### B.     loanDepot was Not "Hostile" or "Objectively Unreasonable."

Plaintiffs do not allege a reasonable person would find loanDepot's services to Plaintiffs objectively unreasonable—which alone is fatal to their Section 1982 claim.  *See, e.g.*, *Painter's Mill Grille*, 2012 WL 576640, at *7 (holding plaintiff failed to allege Section 1982 claim because "although Plaintiffs assert that they were treated in a hostile manner, they do not allege that reasonable persons would find that treatment unreasonable").  Indeed, Plaintiffs could not make

such an allegation.  loanDepot denied their loan based on objective factor (an independent appraisal) and did not treat Plaintiffs differently than anyone else.  *Supra*, pp. 6, 19, 23-24.

Plaintiffs also fail to allege they received services in a "hostile manner."  It is well established that "rude," "nasty," or "poor customer service" that does not explicitly concern a plaintiff's race falls "well short of the standard" to show a "markedly hostile manner."  *E.g.*, *Holmes v. Toledo Gaming Ventures, LLC*, 2017 WL 2418750, at *3 (N.D. Ohio 2017) (holding that defendant's statement to plaintiff that "since you're going to make it racial, get out," as plaintiff was being asked to leave premises was insufficient); *Miller v. Freedom Waffles, Inc*., 2007 WL 628123, at *4 (W.D. Ky. 2007) (holding use of profanity towards plaintiffs insufficient to be "markedly hostile"); *Pacheco v. Sears, Roebuck & Co*., 2006 WL 1789140, at *7 (M.D.N.C. 2006) (holding that "Plaintiff may have been frustrated by this encounter, but Plaintiff has not offered any evidence that [defendant's employee] behaved any differently toward other customers").

There is no allegation loanDepot and Jorgensen's actions (or inaction) came anywhere close to hostile.  Jorgensen was friendly and courteous with Plaintiffs, and even after they complained about the appraisal, he continued to help by suggesting they appeal it quickly to avoid losing their favorable interest rate.  *Supra*, pp. 4, 13-14, 29.  And loanDepot's alleged failure to continue to communicate with them for "months" after their loan was denied, even if true, might be considered poor follow-up, but certainly does not rise to the level of "markedly hostile" especially in light of the fact that Plaintiffs were no longer prospective loanDepot customers.

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER MARYLAND FAIR HOUSING LAW (COUNT V)

In Count V, Plaintiffs allege loanDepot violated various sections of the Maryland fair housing laws.  *See* Compl. ¶¶ 152-53.  The Court should dismiss those claims for two reasons.

*First*, Plaintiffs failed to exhaust their administrative remedies, which deprives the Court of subject matter jurisdiction. "A plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over a plaintiff's claim." *Moreno v. McHugh*, 2011 WL 2791240, at *6 (D. Md. 2011). "When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of proving that subject matter jurisdiction is proper." *Id*. at *7. Here, the Maryland fair housing laws that Plaintiffs invoke dictate that Plaintiffs may not file a civil action for "an alleged discriminatory housing practice" any "sooner than 130 days after a complaint has been filed" with the Maryland Commission on Civil Rights. Md. Code, State Gov't, §§ 20-1035(a), (b)(3). Plaintiffs do not allege they have satisfied this prerequisite, or filed any complaint with the Maryland Commission on Civil Rights. Thus, Plaintiff have failed to exhaust (or even invoke) their administrative remedies and the prerequisites to filing a civil action, and the Court should dismiss Count V as a matter of law.

*Second,* each of those sections mirrors the parallel provisions of the FHA that Plaintiffs allege loanDepot violated in Count I. Because Maryland's fair housing laws "are nearly identical" to and are "analogs" of the federal Fair Housing Act, "the same analysis applies." *See, e.g*., *Williams v. Arora Hills Homeowners Ass'n Inc.*, 2021 WL 2226199, at *5 n.8 (D. Md. 2021). Plaintiffs fail to state a claim under Maryland fair housing law in Count V for the same reasons they fail to state a claim under the FHA in Count I. *See supra*, pp. 8-30.

## <u>CONCLUSION</u>

For the foregoing reasons, loanDepot respectfully moves the Court to dismiss the Amended Complaint against loanDepot with prejudice.

Dated: December 12, 2022

COOLEY LLP

By: */s/ David E. Mills*

David E. Mills
dmills@cooley.com
Michelle L. Rogers *(admitted pro hac vice)*
mrogers@cooley.com
Jorge L. Sarmiento *(admitted pro hac vice)*
jsarmiento@cooley.com

1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004-2400
Telephone:   +1 202 842 7800
Facsimile:   +1 202 842 7899

Attorneys for Defendant loanDepot.com, LLC