UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATHAN CONNOLLY AND SHANI MOTT**<br><br>        Plaintiffs<br><br>v.<br><br>**SHANE LANHAM, *et al.***<br><br>        Defendants | **Case No.:  1:22-cv-02048-SAG** |

## <u>ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM</u>

### <u>ANSWER</u>

Defendants Shane Lanham and 20/20 Valuations, LLC, by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 12 and 7, hereby submit this Answer to Plaintiffs' First Amended Complaint, and states:

1.      This Paragraph asserts no factual allegations which require a response.  To the extent a response is required, Defendants deny the allegations.

2.      Denied.

3.      Defendants admit that Homeland is a neighborhood in Baltimore.  Defendants admit that the Churchwardens Home is a fully detached single family house with four bedrooms. Defendants admit that Plaintiffs are Black and professors at Johns Hopkins University.  Defendants deny that the Churchwardens Home is 2,600 square feet.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

4.      Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

5.      Denied.

6.      Defendant Lanham admits that he conducted an appraisal of Plaintiffs' home. Defendants deny the remaining allegations in this Paragraph including but not limited to the allegation that the appraisal was inconsistent with professional appraisal standards.

7.      Defendant Lanham admits that he conducted an appraisal of Plaintiffs' home. The appraisal speaks for itself and Defendants deny all allegations inconsistent with the document. Defendants deny the remaining allegations in this Paragraph, or are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

8.      Denied.

9.      Defendants admit that Plaintiffs appealed the appraisal. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

10.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

11.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

12.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph in part because Plaintiffs have refused to provide Defendants with the 2022 appraisal, and therefore deny said allegations and demand strict proof thereof.

13.     Denied.

14.     Denied.

**PARTIES**

15.     Defendants admit that Plaintiffs are Black and own their home at 209 Churchwardens Road in the Homeland neighborhood of Baltimore.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

16.     Defendants admit that Plaintiffs are professors at Johns Hopkins University. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

17.     Defendants admit that Defendant Lanham is licensed as a Certified Residential Real Estate Appraiser by the State of Maryland, and that he is the Managing Member and Resident Agent of Defendant 20/20 Valuations, LLC. Defendant Lanham admits that he conducted an appraisal of Plaintiffs' home.  Defendants deny the remaining allegations in this Paragraph including but not limited to the allegation that the appraisal was inconsistent with professional appraisal standards.

18.     Admitted.

19.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

20.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

21.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

22.     This Paragraph asserts no factual allegations which require a response.  To the extent a response is required, Defendants deny the allegations.

23.     This Paragraph asserts no factual allegations which require a response.   To the extent a response is required, Defendants deny the allegations.

## JURISDICTION AND VENUE

24.     This Paragraph asserts no factual allegations which require a response.   To the extent a response is required, Defendant does not dispute subject matter jurisdiction at this time.

25.     This Paragraph asserts no factual allegations which require a response.   To the extent a response is required, Defendant does not dispute venue at this time.

## FACTUAL BACKGROUND

26.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

27.     Defendants admit that the Churchwardens Home is a fully detached single family house with four bedrooms, 2.1 bathrooms above grade, 1 bathroom below grade, and a partially finished basement, and located in the Homeland neighborhood. Defendants deny that the Churchwardens Home is 2,600 square feet.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

28.     Defendants admit that Homeland is a neighborhood in the northern part of Baltimore City bounded generally by Homeland Avenue on the south, Charles Street on the west, Melrose Avenue on the north, and Bellona Avenue on the east. Defendants deny that Homeland is a small neighborhood.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

29.     Denied.

30.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

31.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

32.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

33.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

34.     Defendants deny that the map shows the Homeland neighborhood. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

35.     Defendants admit that Plaintiffs purchased the Churchwardens Home in March 2017 for $450,000.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

36.     Defendants admit that Defendant Lanham appraised Plaintiffs' home in June 2021. Defendants deny that all of the described work increased the value of the Churchwardens Home above its pre-improvement value.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

37.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

38.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

39.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

40.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

41.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

42.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof. Defendants deny that average home sale prices in the Homeland neighborhood, and of homes comparable to Plaintiffs' home, increased by approximately 25% since 2017.

43.     Denied.

44.     Defendants admit that Defendant Lanham visited the Churchwardens Home for the appraisal on June 14, 2021, and that Plaintiffs were present during the visit. Defendants admit that Plaintiffs are Black. Defendants deny that it would have been obvious to anyone visiting that the home belonged to a Black family. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, in part because home decorations are irrelevant and not something that Defendant Lanham examines or considers during an appraisal, and therefore deny said allegations and demand strict proof thereof.

45.     Denied.

46.     Denied.

47.     Defendants admit that Defendant Lanham called Plaintiffs shortly after visiting the Churchwardens Home.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

48.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

49.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

50.     Defendant Lanham admits that he conducted an appraisal of Plaintiffs' home. Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

51.     Defendants deny that the appraisal was low, or that the valuation was impossibly low given the characteristics of the neighborhood and home.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

52.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

53.     Defendants deny that the use of the sales comparison approach presents significant fair lending risks, that appraisers have broad discretion in selecting comps and establishing neighborhood boundaries, and that the sales comparison approach opens the door for discrimination.  Defendants admit that Defendant Lanham used the sales comparison approach, a

common appraisal method, to assess the value of Plaintiffs' home.  Defendants admit that sales prices of comparable properties from the same area can be the best indicator of value.

54.    Denied.

55.    Denied.

56.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

57.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

58.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

63.    Denied.

64.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

65.    Denied.

66.    Admitted.

67.    Denied.

68.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

69.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

70.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

71.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Denied.

80.     Defendants  admit that a homeowner of property in Edgewood, Maryland filed a Complaint with the United States Department of Housing and Urban Development.   The Complaint has no merit whatsoever as found by the Maryland Commission of Real Estate Appraisers, Appraisal Management Companies and Home Inspectors.   Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

81.     Defendant Lanham admits that he conducted an appraisal on April 19, 2021. Defendants are without information sufficient to form a belief as to the truth of the allegation in this Paragraph that the home is located in a predominantly African-American area of Edgewood, Maryland. Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

86.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

87.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

88.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

89.     Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

90.      Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

91.      Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

92.      Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

93.      Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

94.      Defendants admit that Plaintiffs appealed the appraisal.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

95.      Defendants admit that Plaintiffs appealed the appraisal, and the appeal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

96.      Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

97.      Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

98.      Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny the remaining allegations in this Paragraph, and deny every allegation of wrongdoing.

99.      Denied.

100.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

101.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

102.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

103.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

104.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

105.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

106.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

107.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

108.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

109.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

110.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

111.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

112.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

113.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

114.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

115.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

116.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

117.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

118.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

119.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

120.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

121.    Denied.

122.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph in part because Plaintiffs have refused to provide Defendants with the 2022 appraisal, and therefore deny said allegations and demand strict proof thereof.

123.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph in part because Plaintiffs have refused to provide Defendants with the 2022 appraisal, and therefore deny said allegations and demand strict proof thereof.

124.    Defendants are without information sufficient to form a belief as to the truth of the allegation that Plaintiffs made no significant improvements in their home in the interim, and therefore deny said allegations and demand strict proof thereof.  Defendants deny the remaining allegations in this Paragraph.

125.    Denied.

126.    Defendants are without information sufficient to form a belief as to the truth of the allegations in this Paragraph in part because Plaintiffs have refused to provide Defendants with the 2022 appraisal, and therefore deny said allegations and demand strict proof thereof.

127.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny every allegation of wrongdoing.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph in part because Plaintiffs have refused to provide Defendants with the 2022 appraisal, and therefore deny said allegations and demand strict proof thereof.

128.    Defendant Lanham's appraisal speaks for itself and Defendants deny all allegations inconsistent with the document.  Defendants deny every allegation of wrongdoing.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in

this Paragraph in part because Plaintiffs have refused to provide Defendants with the 2022 appraisal, and therefore deny said allegations and demand strict proof thereof.

129.    Denied.

130.    Defendants deny every allegation of wrongdoing.   Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore deny said allegations and demand strict proof thereof.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

## CAUSES OF ACTION

### COUNT I

139.    Defendants reallege and incorporate by reference all of the responses set forth in the preceding paragraphs.

140.    Denied.

141.    Denied.

### COUNT II

142.    Defendants reallege and incorporate by reference all of the responses set forth in the preceding paragraphs.

143.     This Count is not directed at Defendants, and thus does not require a response.  To the extent a response is required, Defendants deny the allegations.

144.     This Count is not directed at Defendants, and thus does not require a response.  To the extent a response is required, Defendants deny the allegations.

145.     This Count is not directed at Defendants, and thus does not require a response.  To the extent a response is required, Defendants deny the allegations.

## COUNT III

146.     Defendants reallege and incorporate by reference all of the responses set forth in the preceding paragraphs.

147.     Denied.

148.     Denied.

## COUNT IV

149.     Defendants reallege and incorporate by reference all of the responses set forth in the preceding paragraphs.

150.     Denied.

151.     Denied.

## COUNT V

152.     Defendants reallege and incorporate by reference all of the responses set forth in the preceding paragraphs.

153.     Denied.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs' claims are barred by the doctrine of estoppel.

2.     Plaintiffs' claims are barred by the doctrine of assumption of the risk.

3.      Plaintiffs' fraud precludes their recovery.

4.      Plaintiffs' claims are barred by the doctrine of payment.

5.      Plaintiffs' claims are barred by the doctrine of release.

6.      Plaintiffs' claims are barred by the doctrine of waiver.

7.      Plaintiffs' claims are barred by failure to mitigate damages.

8.      Plaintiffs' claims are barred by the statute of limitations.

9.      Plaintiffs' claims are barred by failure to exhaust administrative and/or statutory remedies.

10.     Plaintiffs' claims are barred because the alleged damages were caused by an intervening and/or superseding cause.

11.     Plaintiffs' alleged damages were caused by the acts and/or omissions of persons or entities over whom Defendants exercised no control and for whom Defendants have no liability.

12.     Plaintiffs' alleged damages were not proximately caused by any act or omission on the part of Defendants.

13.     Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

WHEREFORE, having answered, Defendants reserve the right to assert each and every additional defense, including affirmative defenses, that may become available during the course of discovery or trial.  Any allegation not specifically admitted herein is hereby denied. Defendants deny every allegation of wrongdoing, negligence, and liability and respectfully request that this Court dismiss Plaintiffs' First Amended Complaint in its entirety with prejudice, and grant such other and further relief as this Court may deem just and proper in the circumstances.

## COUNTERCLAIM

Defendants/Counter-Plaintiffs Shane Lanham and 20/20 Valuations, LLC, by and through undersigned counsel, hereby file this Counterclaim against Plaintiffs/Counter-Defendants Nathan Connolly and Shani Mott ("Dr. Connolly and Dr. Mott"), pursuant to Federal Rule of Civil Procedure 13, for defamation and false light invasion of privacy, and state:

### NATURE OF THE ACTION

1.      Falsely labeling someone a "racist" and falsely accusing someone of racism are among the most damaging, hurtful, and destructive attacks in today's society.

2.      Regardless of whether such a groundless attack is malicious, careless, or cavalier, calling someone a racist can have a devastating effect on a person's reputation, livelihood, and overall well-being.

3.      The purpose of this Counterclaim is to correct the record and hold Dr. Connolly and Dr. Mott accountable for the serious harm they have caused by falsely accusing Mr. Lanham and his business 20/20 Valuations of racism in their appraisal of Dr. Connolly and Dr. Mott's home.

4.      These highly damaging, false accusations were recklessly made to The New York Times and ABC News, among others, and were published and broadcast nationwide where they were seen by millions of people and then republished in various print and electronic media worldwide.

5.      Dr. Connolly and Dr. Mott—who are highly educated professors at Johns Hopkins University—knew at the time that they made their false and defamatory accusations of racism that they were false. They also purposely withheld "inconvenient" facts to create a false impression

about what happened and to support their false narrative that they had been victims of racism when, in fact, the appraisal in question reflected market conditions at the time that it was done.

6.      Dr. Connolly and Dr. Mott may not have liked Mr. Lanham and 20/20 Valuations' appraisal and the lack of significant appreciation in the value of their home purchased only four years earlier.

7.      But that appraisal was performed in a professional manner by an experienced appraiser based on market conditions that existed at the time.

8.      It had nothing to do with discrimination on account of Dr. Connolly and Dr. Mott's race.

9.      In making their baseless attack, Dr. Connolly and Dr. Mott failed to disclose the sale of the similar house next door to their home that sold only a month after Mr. Lanham and 20/20 Valuations' appraisal for $7,000 *less* than the amount of the appraisal, validating Mr. Lanham and 20/20 Valuations' appraisal.

10.     Dr. Connolly and Dr. Mott also conveniently ignored that their second appraisal occurred *seven months after* Mr. Lanham and 20/20 Valuations' appraisal and relied on home sales that had not even occurred at the time of Mr. Lanham and 20/20 Valuations' appraisal.

11.     Dr. Connolly and Dr. Mott's ill-conceived "experiment" involving different appraisers, a seven-month gap, and intervening changes in market conditions would not withstand even basic scrutiny in the serious academic environment in which they work.

12.     Moreover, as Ph.D.s at a leading national research university, Dr. Connolly and Dr. Mott know that their "experiment" was serious flawed in so many respects that a first-year undergraduate would immediately recognize.

13.     In addition, for unexplained reasons, Dr. Connolly and Dr. Mott have refused to provide Mr. Lanham and 20/20 Valuations with a copy of the second appraisal conducted seven months later that supposedly supports their contention that their house was undervalued during Mr. Lanham and 20/20 Valuations. Apparently, there is something about this second appraisal that Dr. Connolly and Dr. Mott know will not withstand closer scrutiny and that will undermine their claim of racial discrimination.

14.     These inconvenient facts seriously undercut their misguided theory and false and defamatory accusations leveled against Mr. Lanham, who was just trying to do his job using his professional judgment based on the facts as they appeared at the time.

15.     Dr. Connolly and Dr. Mott's malicious, widespread, and repeated attacks on Mr. Lanham, falsely accusing him of racism without any legitimate basis, have had a devastating impact on Mr. Lanham's reputation, business, livelihood, and well-being.

16.     As a result, Mr. Lanham and his business 20/20 Valuations were left with no choice but to initiate this Counterclaim for defamation and false light invasion of privacy against Dr. Connolly and Dr. Mott to try to restore their reputation, mitigate further harm, and seek redress from Dr. Connolly and Dr. Mott for the damage their malicious attacks have caused.

**PARTIES**

17.     Defendant/Counter-Plaintiff Shane Lanham ("Mr. Lanham") is licensed as a Certified Residential Real Estate Appraiser by the State of Maryland, and is a resident of Baltimore County, Maryland.

18.     Defendant/Counter-Plaintiff 20/20 Valuations, LLC ("20/20 Valuations") is a real estate appraisal limited liability company incorporated in the State of Maryland with its principal office in Baltimore County, Maryland.  Mr. Lanham is the managing member and sole owner of 20/20 Valuations.

19.     Plaintiffs/Counter-Defendants Nathan Connolly and Shani Mott are residents of Baltimore, Maryland.  They are professors at John Hopkins University.  Dr. Connolly is the Herbert Baxter Adams Associate Professor of History. He has a Ph.D. from the University of Michigan. Dr. Mott is a Lecturer in the Center for Africana Studies. She has a Ph.D. from the University of Michigan.

20.     On information and belief, Dr. Connolly's scholarship focuses primarily on issues of racism, capitalism, politics, cities, and migration in the late nineteenth and twentieth centuries. Dr. Mott's scholarship focuses primarily on twentieth century African-American and American literature and history.

21.     Dr. Connolly and Dr. Mott own property located at 209 Churchwardens Road, in Baltimore, Maryland.

**JURISDICTION AND VENUE**

22.     This Court has supplemental jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1367(a) because this Court has original jurisdiction over Dr. Connolly and Dr.

Mott's First Amended Complaint, and the claims set forth herein are so related to claims in the First Amended Complaint that they form part of the same case or controversy.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Dr. Connolly and Dr. Mott are residents of the District and a substantial part of the events giving rise to the claims set forth herein occurred with this District.

### APPRAISAL OF 209 CHURCHWARDENS ROAD

24.     209 Churchwardens Road is the address of a two-story home located in the Homeland neighborhood of Baltimore, Maryland.

25.     Based upon Maryland Department of Assessments and Taxation records, 209 Churchwardens Road is in the 27080132.03 neighborhood, which, upon information and belief, is Homeland.  The Maryland Department of Assessments and Taxation website describes the identified neighborhood in the tax records as the "geographic area that is used for valuing properties that share important locational characteristics."

26.     209 Churchwardens Road is located on the corner of Churchwardens Road and Northern Parkway, and its front door faces Northern Parkway.  The fact that 209 Churchwardens Road is located on Northern Parkway, a major roadway in Baltimore City, is a significant factor affecting the value of the property.

27.     Northern Parkway is a major road that runs west–east across the northern part of Baltimore City.  In most portions of Northern Parkway, it is at least six lanes wide and used by motorists for crosstown travel.  The near-constant noise generated by vehicular traffic, music from vehicles, and car horns, passing in front of 209 Churchwardens Road makes the property less attractive to potential buyers.

28.     Although 209 Churchwardens Road has some shrubbery and trees along the sidewalk adjacent to Northern Parkway, the location of the home at 209 Churchwardens Road, on Northern Parkway, makes the property less attractive to potential buyers who are concerned that it would be dangerous or less safe for children and pets to play in the front yard of the property as a result of, for example, the risk of vehicle accidents occurring on the 209 Churchwardens Road property or a child or pet running into the busy roadway.

29.     Additionally, the location of 209 Churchwardens Road adjacent to Northern Parkway makes the property less attractive to potential buyers because of air pollution from a busy street.  Poor air quality can cause eye, nose, and throat irritation among other health issues. Additionally, a study published in 2019 by the National Institutes of Health and the University of California, Merced, concluded that young children who live close to major roadways are at higher risk for developmental delays, including twice as likely to score lower on tests of communication skills, compared to those who live farther away from a major roadway.

30.     During all relevant time periods, the house located at 209 Churchwardens Road has had 2,575 square feet of above-grade living area, including four bedrooms, and two full bathrooms located above grade, one half-bathroom located above grade, and one full bathroom located below grade.

31.     Dr. Connolly and Dr. Mott purchased 209 Churchwardens Road on or about March 16, 2017 for $450,000. The following table reflects standard sales (*i.e.,* not foreclosure, short sale, or auctions), in the Homeland neighborhood from March 16, 2016 to March 20, 2017, of detached homes with two stories with a range of above-grade living area between 1,700 square feet and 3,300 square feet:

**Agent One Line**

| MLS # | Type | Status | Address | City | County | Beds | Baths | Structure Type | Date | List Office Name | Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1001156713 | RES | CLS | 12 Middleton Ct | Baltimore | Baltimore City, MD | 4 | 2/1 | Detached | 12/16/16 | Long & Foster Real Estate, Inc (LNG | $359,900 |
| 1001155987 | RES | CLS | 325 Taplow Rd | Baltimore | Baltimore City, MD | 3 | 2/1 | Detached | 11/28/16 | Long & Foster Real Estate, Inc (LNG | $370,000 |
| 1001146893 | RES | CLS | 114 Homeland Ave | Baltimore | Baltimore City, MD | 4 | 2/1 | Detached | 11/18/16 | Long & Foster Real Estate, Inc. (LNC | $370,000 |
| 1001143699 | RES | CLS | 2 Goodale Pl | Baltimore | Baltimore City, MD | 3 | 2/1 | Detached | 04/15/16 | Monument Sotheby's International F | $394,000 |
| 1001144547 | RES | CLS | 330 Saint Dunstans Rd | Baltimore | Baltimore City, MD | 4 | 2/1 | Detached | 07/22/16 | Coldwell Banker Realty (CBRB5) | $399,000 |
| 1001149181 | RES | CLS | 348 Broadmoor Rd | Baltimore | Baltimore City, MD | 3 | 3/0 | Detached | 07/21/16 | Coldwell Banker Realty (CBRB5) | $399,999 |
| 1001143049 | RES | CLS | 326 Broxton Rd | Baltimore | Baltimore City, MD | 4 | 2/1 | Detached | 06/01/16 | Berkshire Hathaway HomeServices I | $439,000 |
| 1001150997 | RES | CLS | 324 Taplow Rd | Baltimore | Baltimore City, MD | 3 | 2/1 | Detached | 08/29/16 | Keller Williams Metropolitan (KWR2 | $440,000 |
| 1001147165 | RES | CLS | 5012 Bellona Ave | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 07/22/16 | Coldwell Banker Realty (CBRB5) | $447,600 |
| 1003679331 | RES | CLS | 209 Churchwardens Rd | Baltimore | Baltimore City, MD | 4 | 3/1 | Detached | 03/16/17 | Coldwell Banker Realty (CBR844) | $450,000 |
| 1001141679 | RES | CLS | 5417 Springlake Way | Baltimore | Baltimore City, MD | 5 | 2/2 | Detached | 05/20/16 | Conway Real Estate (HCE1) | $460,000 |
| 1001144291 | RES | CLS | 312 Tunbridge Rd | Baltimore | Baltimore City, MD | 5 | 2/2 | Detached | 05/06/16 | Berkshire Hathaway HomeServices I | $465,000 |
| 1001146085 | RES | CLS | 304 Paddington Rd | Baltimore | Baltimore City, MD | 4 | 2/1 | Detached | 06/23/16 | Conway Real Estate (HCE1) | $470,000 |
| 1001143205 | RES | CLS | 210 Churchwardens Rd | Baltimore | Baltimore City, MD | 4 | 2/2 | Detached | 04/29/16 | Berkshire Hathaway HomeServices I | $474,900 |
| 1001144571 | RES | CLS | 5429 Springlake Way | Baltimore | Baltimore City, MD | 3 | 3/2 | Detached | 05/19/16 | RE/MAX Preferred (RXPR1) | $485,000 |
| 1001150343 | RES | CLS | 211 Witherspoon Rd | Baltimore | Baltimore City, MD | 4 | 3/2 | Detached | 09/20/16 | Gilbert D. Marsiglia & Co., Inc. (GDM | $485,000 |
| 1001144039 | RES | CLS | 5616 Saint Albans Way | Baltimore | Baltimore City, MD | 5 | 3/1 | Detached | 11/18/16 | Monument Sotheby's International F | $510,000 |
| 1001157237 | RES | CLS | 219 Paddington Rd | Baltimore | Baltimore City, MD | 4 | 2/2 | Detached | 11/30/16 | Long & Foster Real Estate, Inc (LNG | $514,000 |
| 1001159277 | RES | CLS | 116 Croydon Rd | Baltimore | Baltimore City, MD | 3 | 2/1 | Detached | 02/21/17 | Berkshire Hathaway HomeServices I | $519,900 |
| 1001135651 | RES | CLS | 5500 Saint Albans Way | Baltimore | Baltimore City, MD | 4 | 3/2 | Detached | 04/04/16 | Cummings & Co. Realtors (CCRL3) | $549,500 |
| 1001140589 | RES | CLS | 5408 Springlake Way | Baltimore | Baltimore City, MD | 4 | 3/2 | Detached | 05/27/16 | Monument Sotheby's International F | $555,000 |
| 1001149451 | RES | CLS | 5101 Springlake Way | Baltimore | Baltimore City, MD | 5 | 3/1 | Detached | 08/19/16 | Hill And Company (HILL1) | $560,000 |
| 1001150295 | RES | CLS | 5409 Saint Albans Way | Baltimore | Baltimore City, MD | 4 | 3/2 | Detached | 08/26/16 | Conway Real Estate (HCE1) | $565,000 |
| 1001156475 | RES | CLS | 5311 Saint Albans Way | Baltimore | Baltimore City, MD | 3 | 2/1 | Detached | 11/28/16 | Coldwell Banker Realty (CBRB5) | $570,000 |
| 1001151771 | RES | CLS | 5617 Saint Albans Way | Baltimore | Baltimore City, MD | 4 | 3/1 | Detached | 10/14/16 | Conway Real Estate (HCE1) | $575,000 |
| 1001148293 | RES | CLS | 5312 Saint Albans Way | Baltimore | Baltimore City, MD | 3 | 3/1 | Detached | 07/06/16 | Wilson Realty Group, Inc. (WLRG1) | $580,000 |
| 1001163483 | RES | CLS | 109 Croydon Rd | Baltimore | Baltimore City, MD | 3 | 2/1 | Detached | 03/15/17 | Monument Sotheby's International F | $580,125 |
| 1001148141 | RES | CLS | 5410 Springlake Way | Baltimore | Baltimore City, MD | 4 | 3/2 | Detached | 08/30/16 | Conway Real Estate (HCE1) | $582,000 |
| 1001144853 | RES | CLS | 209 Paddington Rd | Baltimore | Baltimore City, MD | 4 | 3/0 | Detached | 06/29/16 | Hill And Company (HILL1) | $600,000 |
| 1001144795 | RES | CLS | 2 Goodale Rd | Baltimore | Baltimore City, MD | 5 | 3/1 | Detached | 07/26/16 | RE/MAX Preferred (RXPR1) | $600,000 |
| 1001143219 | RES | CLS | 5608 Purlington Way | Baltimore | Baltimore City, MD | 4 | 3/1 | Detached | 04/15/16 | Keller Williams Legacy (KWR2S) | $604,325 |
| 1001159895 | RES | CLS | 5220 Tilbury Way | Baltimore | Baltimore City, MD | 5 | 3/1 | Detached | 02/07/17 | Monument Sotheby's International F | $640,000 |
| 1001144697 | RES | CLS | 106 Taplow Rd | Baltimore | Baltimore City, MD | 5 | 3/1 | Detached | 06/13/16 | Long & Foster Real Estate, Inc. (LNC | $655,000 |
| 1001153975 | RES | CLS | 213 Paddington Rd | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 11/04/16 | Long & Foster Real Estate, Inc. (LNC | $675,000 |
| 1001155143 | RES | CLS | 225 Tunbridge Rd | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 10/31/16 | RE/MAX Platinum Realty (RXPF1) | $700,000 |
| 1001158823 | RES | CLS | 214 Paddington Rd | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 01/04/17 | RE/MAX Preferred (RXPR1) | $714,999 |
| 1001144171 | RES | CLS | 5412 Purlington Way | Baltimore | Baltimore City, MD | 5 | 3/1 | Detached | 04/29/16 | Long & Foster Real Estate, Inc. (LNC | $740,000 |
| 1001150021 | RES | CLS | 209 Upnor Rd | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 10/12/16 | Cummings & Co Realtors (CCRL4) | $760,000 |
| 1001146755 | RES | CLS | 5612 Enderly Rd | Baltimore | Baltimore City, MD | 4 | 2/2 | Detached | 07/01/16 | Long & Foster Real Estate, Inc (LNG | $775,000 |
| 1001158561 | RES | CLS | 5107 Springlake Way | Baltimore | Baltimore City, MD | 6 | 3/2 | Detached | 12/16/16 | Conway Real Estate (HCE1) | $820,000 |
| 1001155331 | RES | CLS | 202 Upnor Rd | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 11/09/16 | Monument Sotheby's International F | $825,000 |
| 1001161815 | RES | CLS | 112 Tunbridge Rd | Baltimore | Baltimore City, MD | 5 | 4/1 | Detached | 02/08/17 | Long & Foster Real Estate, Inc. (LNC | $902,500 |
| 1001145415 | RES | CLS | 5218 Springlake Way | Baltimore | Baltimore City, MD | 6 | 4/1 | Detached | 04/08/16 | Coldwell Banker Realty (CBRB5) | $995,000 |
| 1001146395 | RES | CLS | 5203 Purlington Way | Baltimore | Baltimore City, MD | 6 | 4/2 | Detached | 09/01/16 | Monument Sotheby's International F | $1,090,000 |

© BRIGHT MLS - Information, although reliable, is not guaranteed and should be independently verified. Measurements may not be exact and should not be relied upon. School service boundaries are intended to be used as a reference
only, to verify school information contact the school and/or school district directly. Copyright 2022. Created: 11/08/2022 08:09 AM

32.     Based upon the sales data reflected above, 209 Churchwardens Road was on the lower end of the value of potentially similar homes in the Homeland neighborhood when Dr. Connolly and Dr. Mott purchased the property in March 2017.  Dr. Connolly and Dr. Mott knew that 209 Churchwardens Road was on the lower end of the value of potentially similar homes in the Homeland neighborhood in March 2017.

33.     In 2021, Dr. Connolly and Dr. Mott submitted an application to refinance their mortgage debt on their home with loanDepot.com, LLC.

34.     In connection with that application, Mr. Lanham and 20/20 Valuations were engaged to conduct an appraisal of Dr. Connolly and Dr. Mott's home with an effective date of June 14, 2021.

35.     On June 14, 2021, Mr. Lanham visited 209 Churchwardens Road as part of the appraisal process.  During the visit, Mr. Lanham took photographs of the property.

36.     The following is a photograph representative of the road one would see from the front door of 209 Churchwardens Road on June 14, 2021:



37.     The following are two photographs representative of the condition of the kitchen of 209 Churchwardens Road on June 14, 2021:





38.     The following are photographs representative of the condition of the bathrooms of

209 Churchwardens Road on June 14, 2021:









39.     The following are photographs representative of the condition of the basement

recreation room of 209 Churchwardens Road on June 14, 2021:





40.     After visiting 209 Churchwardens Road, Mr. Lanham evaluated the real estate market in the Homeland neighborhood for the two years prior to the effective date of the appraisal. Mr. Lanham's research through Multiple Listing Service ("MLS") revealed that the median sales price for detached homes with standard sales (*i.e.,* not foreclosure, short sale, or auctions) in the Homeland neighborhood from June 14, 2019 to June 14, 2020 was $585,000.  Mr. Lanham's research revealed that the median sales price for detached homes with standard sales (*i.e.,* not foreclosure, short sale, or auctions) in the Homeland neighborhood from June 15, 2020 to December 14, 2020 was $545,000.  Mr. Lanham's research revealed that the median sales price for detached homes with standard sales (*i.e.,* not foreclosure, short sale, or auctions) in the Homeland neighborhood from December 15, 2020 to June 14, 2021 was $590,000.  Because the median sales price has fluctuated down and up, and was within approximately seven percent (7%), Mr. Lanham concluded that the real estate market in the Homeland neighborhood was stable.

41.     As part of his appraisal process, Mr. Lanham reviewed recent sales transaction data from MLS to evaluate potential comparable properties, and selected three comparable properties to use for the sales comparison approach.

42.     The first comparable property, 102 E. Northern Parkway, had recently sold on December 3, 2020 for $435,000.

    a.   102 E. Northern Parkway is 0.3 miles from 209 Churchwardens Road and located on the same busy street.

    b.   102 E. Northern Parkway is located in the Homeland neighborhood. Based upon tax records, it is in the 27080132.03 neighborhood, which upon information and belief, is Homeland.

    c.   At the time of its sale, 102 E. Northern Parkway had four bedrooms, two full bathrooms all located above grade, and two half-bathrooms.

    d.   Based upon tax records, 102 E. Northern Parkway had 27% more above-grade living area square footage (3,272 square feet) than 209 Churchwardens Road (2,575 square feet).

    e.   Based upon photographs from the sales listing, the kitchen in 102 E. Northern Parkway was of similar condition to the kitchen in 209 Churchwardens Road. The following is a photograph reflecting the condition of the kitchen in 102 E. Northern Parkway:



    f.   Based upon photographs from the sales listing, the bathrooms in 102 E. Northern Parkway were of similar condition to the bathrooms of 209 Churchwardens Road.   The following is a photograph reflecting the condition of a bathroom of 102 E. Northern Parkway:



g. Based upon photographs from the sales listing, the basement recreation room of 102 E. Northern Parkway was finished but was of a lesser condition than the basement of 209 Churchwardens Road. The following is a photograph reflecting the condition of the basement of 102 E. Northern Parkway:



43. The second comparable property, 5606 Purlington Way, had recently sold on April 28, 2021 for $530,000.

a. 5606 Purlington Way is 0.13 miles from 209 Churchwardens Road but, unlike 209 Churchwardens Road, is not located on a busy street.

b. 5606 Purlington Way was advertised for sale as being "a sensational brick beauty in desirable Homeland." Based upon tax records, it is in the 27080132.03 neighborhood, which upon information and belief, is Homeland.

c.  At the time of sale, 5606 Purlington Way had four bedrooms, four full
bathrooms including three located above grade, and one half-bathroom.

d.  Based upon tax records, 5606 Purlington Way had 10% more above grade
living area square footage (2,834 square feet) than 209 Churchwardens
Road (2,575 square feet).

e.  Based upon photographs from the sales listing, the kitchen in 5606
Purlington Way had greater improvements compared to the kitchen in 209
Churchwardens Road.   The following are photographs reflecting the
condition of the kitchen of 5606 Purlington Way:





f.  Based upon photographs from the sales listing, many of the bathrooms in 5606 Purlington Way were of similar condition to the bathrooms of 209 Churchwardens Road.  However, the extra bathroom in 5606 Purlington Way was an improvement over that of 209 Churchwardens Road.  The following are photographs reflecting the condition of that bathroom of 5606 Purlington Way:





g. Based upon photographs from the sales listing, the basement recreation room of 5606 Purlington Way was finished and of similar condition to the basement of 209 Churchwardens Road. The following is a photograph reflecting the condition of the basement of 5606 Purlington Way:



44.     The third comparable property, 5604 Saint Albans Way, had recently sold on June 30, 2020 for $545,000.

       a.   5604 Saint Albans Way is 0.20 miles from 209 Churchwardens Road but, unlike 209 Churchwardens Road, is not located on a busy street.

       b.   5604 Saint Albans Way is located in the Homeland neighborhood.  Based upon tax records, it is in the 27080132.03 neighborhood, which upon information and belief, is Homeland.

       c.   At the time of sale, 5604 Saint Albans Way had four bedrooms, three full bathrooms all located above grade, and one half-bathroom.

       d.   Based upon tax records, 5604 Saint Albans Way had 3% more above grade living area square footage (2,650 square feet) than 209 Churchwardens Road (2,575 square feet).

       e.   Based upon photographs from the sales listing, the kitchen in 5604 Saint Albans Way had improvements that made its kitchen more desirable than

the kitchen of 209 Churchwardens Road.  The following are photographs

reflecting the condition of the kitchen of 5604 Saint Albans Way:





    f.   Based upon photographs from the sales listing, the primary bathroom in

       5604 Saint Albans Way had improvements that made it more desirable than

the bathrooms of 209 Churchwardens Road.  The following is a photograph

reflecting the condition of the primary bathroom of 5604 Saint Albans Way:



g.  Based upon photographs from the sales listing, the basement recreation

room of 5604 Saint Albans Way was finished, but was not of the same

condition as the basement of 209 Churchwardens Road.  The following is a

photograph reflecting the condition of the basement of 5604 Saint Albans Way:



h.  Based upon photographs from the sales listing, 5604 Saint Albans Way had an improved sunroom that was not present at 209 Churchwardens Road. The following are photographs reflecting the condition of the sunroom of 5604 Saint Albans Way:





45.     On information and belief, Dr. Connolly and Dr. Mott knew about each of these comparable properties, as well as other comparable properties such as the property located immediately next to their home that was listed for sale, 206 E. Northern Parkway as discussed below, at the time they were seeking to refinance 209 Churchwardens Road because they are

educated consumers and knowledgeable about recent sales transactions in the Homeland neighborhood.

46.     After making value adjustments for size, condition, living area, etc., Mr. Lanham appraised the value of 209 Churchwardens Road as of June 14, 2021 as $472,000.

47.     The following table reflects standard sales (*i.e.,* not foreclosure, short sale, or auctions) in the Homeland neighborhood from June 14, 2020 to June 14, 2021 of detached homes with two stories with a comparable above-grade living area:

**Agent One Line**

| MLS # | Type | Status | Address | City | County | Beds | Baths | Structure Type | Date | List Office Name | Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MDBA502552 | RES | CLS | 334 Saint Dunstans Rd | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 08/31/20 | Long & Foster Real Estate, Inc (I | $369,000 |
| MDBA501230 | RES | CLS | 5914 Brackenridge Ave | Baltimore | Baltimore City, | 4 | 2/1 | Detached | 02/25/21 | Century 21 Downtown (CDWN1) | $385,000 |
| MDBA530896 | RES | CLS | 338 Rosebank Ave | Baltimore | Baltimore City, | 4 | 2/1 | Detached | 01/05/21 | Berkshire Hathaway HomeServic | $406,000 |
| MDBA28962 | RES | CLS | 102 E Nothern Pkwy | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 12/03/20 | Berkshire Hathaway HomeServic | $435,000 |
| MDBA503406 | RES | CLS | 306 Broxton Rd | Baltimore | Baltimore City, | 4 | | | 06/16/20 | Berkshire Hathaway HomeServic | $460,000 |
| MDBA542808 | RES | CLS | 324 Taplow Rd | Baltimore | Baltimore City, | 4 | 2/1 | Detached | 05/07/21 | Cummings & Co. Realtors (CCR | $474,000 |
| MDBA507968 | RES | CLS | 5415 Springlake Way | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 08/11/20 | Conway Real Estate (HCE1) | $485,000 |
| MDBA500814 | RES | CLS | 115 Enfield Rd | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 07/31/20 | RE/MAX Advantage Realty (RMA: | $486,000 |
| MDBA532278 | RES | CLS | 5603 Purlington Way | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 12/18/20 | Berkshire Hathaway HomeServic | $515,000 |
| MDBA519348 | RES | CLS | 311 Saint Dunstans Rd | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 10/09/20 | Cummings & Co Realtors (CCRI | $525,000 |
| MDBA542308 | RES | CLS | 5606 Purlington Way | Baltimore | Baltimore City, | 4 | 4/1 | Detached | 04/28/21 | Keller Williams Lucido Agency (K | $530,000 |
| MDBA503908 | RES | CLS | 312 Saint Dunstans Rd | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 04/30/21 | Long & Foster Real Estate, Inc ( | $540,000 |
| MDBA532630 | RES | CLS | 301 Thornhill Rd | Baltimore | Baltimore City, | 5 | 2/2 | Detached | 02/18/21 | Long & Foster Real Estate, Inc (I | $545,000 |
| MDBA491866 | RES | CLS | 5604 Saint Albans Way | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 06/30/20 | Coldwell Banker Residential Brol | $545,000 |
| MDBA528958 | RES | CLS | 111 Saint Dunstans Rd | Baltimore | Baltimore City, | 3 | 2/2 | Detached | 06/11/20 | Cummings & Co Realtors (CCRL | $550,000 |
| MDBA537176 | RES | CLS | 306 Saint Dunstans Rd | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 03/26/21 | Long & Foster Real Estate, Inc (I | $555,500 |
| MDBA547696 | RES | CLS | 5221 Putney Way | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 05/28/21 | Cummings & Co. Realtors (CCRI | $565,965 |
| MDBA526130 | RES | CLS | 313 Tunbridge Rd | Baltimore | Baltimore City, | 4 | 2/1 | Detached | 11/18/20 | Cummings & Co Realtors (CCRL | $569,000 |
| MDBA521196 | RES | CLS | 333 Tunbridge Rd | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 11/11/20 | Berkshire Hathaway HomeServic | $570,000 |
| MDBA529256 | RES | CLS | 307 Thornhill Rd | Baltimore | Baltimore City, | 5 | 3/1 | Detached | 04/08/21 | Berkshire Hathaway HomeServic | $580,000 |
| MDBA537104 | RES | CLS | 5202 Tilbury Way | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 03/05/21 | Cummings & Co Realtors (CCRL | $590,000 |
| MDBA507902 | RES | CLS | 5220 Tilbury Way | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 08/24/20 | Long & Foster Real Estate, Inc ( | $610,000 |
| MDBA523002 | RES | CLS | 203 Tunbridge Rd | Baltimore | Baltimore City, | 5 | 3/3 | Detached | 11/23/20 | Cummings & Co Realtors (CCRI | $631,000 |
| MDBA533752 | RES | CLS | 202 Witherspoon Rd | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 01/20/21 | Cummings & Co Realtors (CCRL | $650,000 |
| MDBA531082 | RES | CLS | 5414 Purlington Way | Baltimore | Baltimore City, | 4 | 2/2 | Detached | 02/10/21 | Century 21 Redwood Realty (RD | $655,000 |
| MDBA507592 | RES | CLS | 5423 Purlington Way | Baltimore | Baltimore City, | 4 | 4/1 | Detached | 06/22/20 | Coldwell Banker Residential Brol | $673,000 |
| MDBA514272 | RES | CLS | 323 Tunbridge Rd | Baltimore | Baltimore City, | 5 | 3/1 | Detached | 09/11/20 | Coldwell Banker Residential Brol | $675,000 |
| MDBA526546 | RES | CLS | 209 Paddington Rd | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 12/07/20 | Cummings & Co Realtors (CCRL | $710,000 |
| MDBA506154 | RES | CLS | 5419 Purlington Way | Baltimore | Baltimore City, | 5 | 3/1 | Detached | 06/26/20 | Monument Sotheby's Internatior | $710,000 |
| MDBA540836 | RES | CLS | 5400 Springlake Way | Baltimore | Baltimore City, | 5 | 2/1 | Detached | 04/13/21 | Compass (COMPSIS) | $710,000 |
| MDBA512030 | RES | CLS | 5408 Purlington Way | Baltimore | Baltimore City, | 5 | 3/1 | Detached | 09/30/20 | Monument Sotheby's Internatior | $710,000 |
| MDBA546776 | RES | CLS | 209 Saint Dunstans Rd | Baltimore | Baltimore City, | 5 | 3/1 | Detached | 05/28/21 | Redfin Corp (REFC2) | $725,000 |
| MDBA436178 | RES | CLS | 5305 Purlington Way | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 06/14/21 | Non Subscribing Office (NON1) | $725,000 |
| MDBA500814 | RES | CLS | 114 Croyton Rd | Baltimore | Baltimore City, | 5 | 3/1 | Detached | 06/25/21 | Non Subscribing Office (NON1) | $725,000 |
| MDBA538490 | RES | CLS | 206 Saint Dunstans Rd | Baltimore | Baltimore City, | 4 | 4/1 | Detached | 04/02/21 | Compass (COMPS10) | $755,000 |
| MDBA500486 | RES | CLS | 114 Upnor Rd | Baltimore | Baltimore City, | 4 | 3/1 | Detached | 05/07/21 | Non Subscribing Office (NON1) | $755,000 |
| MDBA454568 | RES | CLS | 5611 Enderly Rd | Baltimore | Baltimore City, | 5 | 2/2 | Detached | 05/25/21 | Berkshire Hathaway HomeServic | $785,000 |
| MDBA554400 | RES | CLS | 5302 Purlington Way | Baltimore | Baltimore City, | 5 | 2/2 | Detached | 06/01/21 | Non Subscribing Office (NON1) | $842,000 |

© BRIGHT MLS - All information, regardless of source, should be verified by personal inspection by and/or with the appropriate professional(s). The information is not guaranteed. Measurements are solely for the purpose of marketing, may not be exact, and should not be relied upon for loan, valuation, or other purposes. Copyright 2021. Created: 06/17/2021 04:40 PM

48.     Based upon the sales data reflected above, the appraised value of 209 Churchwardens Road as of June 14, 2021 was on the lower end of the value of potentially similar homes in the Homeland neighborhood, just as the value of 209 Churchwardens Road was when Dr. Connolly and Dr. Mott purchased the property in March 2017.

49.     Mr. Lanham did not consider Dr. Connolly and Dr. Mott's race during the performance of his appraisal.

50.     Mr. Lanham did not know the race of any of the owners of the comparable properties listed in his appraisal report, and did not consider the race of any of the owners of any potentially comparable properties during the performance of his appraisal.

51.     On or about June 29, 2021, Dr. Connolly and Dr. Mott were informed of the results of the appraisal by loanDepot.com, LLC. The appraisal reflected a 5% increase in the value of their home over the four years since they had purchased it (from $450,000 to $472,000).   On information and belief, Dr. Connolly and Dr. Mott were disappointed with the appraised value of their home. Rather than accepting the fact that the slight appreciation could have been due to the short passage of time since they had purchased the property and market conditions, they instead sought to blame the appraiser. In doing so, without knowing anything about Mr. Lanham, his skill as an appraiser, or his background, and without engaging in any further investigation as one might otherwise expect from well-educated, academic professionals at a top research university, they immediately and reflexively assumed that the only possible explanation had to have been that Mr. Lanham must have appraised their property at a lower value due to racism because Mr. Lanham is white and Dr. Connolly and Dr. Mott are African American.

52.     Dr. Connolly and Dr. Mott appealed the appraisal decision, and provided three potential, comparable properties.   The properties that Dr. Connolly and Dr. Mott provided, however, were not comparable.

53.     Dr. Connolly and Dr. Mott identified 5305 Purlington Avenue as a potential comparable property, but that property was sold with zero days on the market, meaning that its sale was without any market exposure.  According to Fannie Mae, reasonable market time to allow full market participation is a prerequisite to a fair market sale. Thus, a property sold with zero days on the market does not provide valid or reliable data for the value of the property in a fair market

sale. Additionally, 5305 Purlington Avenue, unlike 209 Churchwardens Road, had an "updated open concept kitchen," "renovated bathrooms," an extra bathroom, and a "spacious sunroom." Also unlike 209 Churchwardens Road, 5305 Purlington Avenue was not on a busy street.

54.    Dr. Connolly and Dr. Mott also identified 107 Witherspoon Road as a potential, comparable property, but that property, unlike 209 Churchwardens Road, had a "wonderfully renovated" kitchen, and a "sunporch." Unlike 209 Churchwardens Road, 107 Witherspoon Road was not on a busy street. The property listing provided for 107 Witherspoon Road also did not have any photographs to verify the condition of the interior so that it could be fairly compared with that of 209 Churchwardens Road.

55.    Dr. Connolly and Dr. Mott also identified 114 Croyden Road as a potential, comparable property, but that property was sold with zero days on the market, meaning that its sale was without any market exposure and thus not a valid or reliable data source for the value of property in a fair market sale. Additionally, 114 Croyden Road, unlike 209 Churchwardens Road, was "renovated," had an extra bedroom and an extra bathroom, and was not on a busy street. The property listing provided for 114 Croyden Road also did not have any photographs to verify the condition of the interior so that it could be fairly compared with that of 209 Churchwardens Road.

56.    loanDepot.com, LLC denied Dr. Connolly and Dr. Mott's refinance application.

57.    Shortly after the denial of Dr. Connolly and Dr. Mott's refinance application, the property immediately next to Dr. Connolly and Dr. Mott's home was sold. That property, 206 E. Northern Parkway, had been listed for sale on May 13, 2021 for $500,000. It was described as "in the heart of Homeland," but did not sell for $500,000 because it was overpriced. Over a month later, on June 24, 2021 (*i.e.,* only 10 days after Mr. Lanham's appraisal of 209 Churchwardens Road), the list price for 206 E. Northern Parkway was lowered to $475,000. Approximately one

month later, on July 22, 2021, 206 E. Northern Parkway was under contract for sale.  On August

20, 2021, the sale closed with the property selling for $465,000, or $7,000 less than the appraised

value determined by Mr. Lanham for 209 Churchwardens Road two months earlier.

   a.  206 E. Northern Parkway was 0.02 miles from and immediately next to 209
       Churchwardens Road, and located on the same busy street.

   b.  206 E. Northern Parkway is located in the Homeland neighborhood.  Based
       upon tax records, it is in the 27080132.03 neighborhood, which upon
       information and belief, is Homeland.

   c.  At the time of sale, 206 E. Northern Parkway had three bedrooms, two full
       bathrooms located above grade, and one half-bathroom located above
       grade.

   d.  Based upon tax records, 209 Churchwardens Road had more above grade
       living area square footage than 206 E. Northern Parkway (which has 1,750
       square feet according to tax records).

   e.  Based upon photographs from the sales listing, the kitchen in 206 E.
       Northern Parkway had improvements that made it more desirable than the
       kitchen of 209 Churchwardens Road.   The following are photographs
       reflecting the condition of the kitchen of 206 E. Northern Parkway:





f.  Based upon photographs from the sales listing, the bathrooms in 206 E. Northern Parkway were of similar condition to the bathrooms of 209 Churchwardens Road.   The following is a photograph reflecting the condition of a bathroom of 206 E. Northern Parkway:



g. Based upon photographs from the sales listing, the basement recreation room of 206 E. Northern Parkway was finished and of the same condition as the basement of 209 Churchwardens Road. The following is a photograph reflecting the condition of the basement of 206 E. Northern Parkway:



h. Based upon photographs from the sales listing, 206 E. Northern Parkway had an improved sunroom that was not present at 209 Churchwardens Road. The following is a photograph reflecting the condition of the sunroom of 206 E. Northern Parkway:



58.     Some value adjustments to 206 E. Northern Parkway would be necessary to compare it to 209 Churchwardens Road, but the location of 206 E. Northern Parkway, on the same busy road as 209 Churchwardens Road, makes 206 E. Northern Parkway a good comparable property and the fact that 206 E. Northern Parkway sold for $465,000 shortly after the effective date of Mr. Lanham's appraisal supports and validates the amount of Mr. Lanham's appraisal.

59.     On information and belief, Dr. Connolly and Dr. Mott knew about the listing and sale of 206 E. Northern Parkway because they are educated consumers and knowledgeable about recent sales transactions in the Homeland neighborhood.

60.    Upon information and belief, about seven months after Mr. Lanham's appraisal, Dr. Connolly and Dr. Mott, in early January 2022, submitted an application to refinance their mortgage debt on their home with Swift Home Loans, partnering with Rocket Mortgage.

61.    In connection with that application, Daniel Ray Dodd of Associate Appraisers was hired to conduct an appraisal of Dr. Connolly and Dr. Mott's home.  Upon information and belief, Mr. Dodd conducted the appraisal on January 18, 2022.

62.    Prior to Mr. Dodd's visiting 209 Churchwardens Road for his appraisal, Dr. Connolly and Dr. Mott claim that they engaged in an "experiment" to misrepresent who owned the home.  Dr. Connolly and Dr. Mott say that they removed family photographs from the home and replaced the family photographs with family photographs of Caucasian friends and colleagues. According to Dr. Connolly and Dr. Mott, they removed other markers of African-American identity from the home and placed artwork with items that they contend signify "whiteness."

63.    According to Dr. Connolly and Dr. Mott, following the adjustments to their home that they claim to have made, Mr. Dodd appraised the value of their home at $750,000.

64.    In connection with this lawsuit, Mr. Lanham requested a copy of Mr. Dodd's appraisal from Dr. Connolly and Dr. Mott, but they have refused to provide a copy as of the date this Counterclaim is being filed and no copy was included with their Amended Complaint.  Thus, it is not currently known whether Mr. Dodd identified the sale of 206 E. Northern Parkway— immediately next door to Dr. Connolly and Dr. Mott's home—as a comparable property for his appraisal, or what comparable properties Mr. Dodd included in his appraisal report.  Without examining Mr. Dodd's appraisal report (which Dr. Connolly and Dr. Mott have refused to provide even though they claim it supports their belief that they were victims of racism), it is not possible to know whether the appraisal was reasonable and complied with all applicable standards.

However, the fact that 206 E. Northern Parkway, the property literally next door to 209 Churchwardens Road, sold for $465,000 shortly after the effective date of Mr. Lanham's appraisal does not in any way support an appraisal of 209 Churchwardens Road for $750,000.

65.     Additionally, shortly after Mr. Dodd's appraisal, 118 E. Northern Parkway was listed for sale for $605,000.  The location of 118 E. Northern Parkway, on the same busy road as 209 Churchwardens Road, makes 118 E. Northern Parkway a good comparable property to 209 Churchwardens Road at the time of Mr. Dodd's appraisal.

66.     118 E. Northern Parkway was described as "a meticulously maintained all brick colonial home [] nestled in the desired community of Homeland"; however, it did not sell for $605,000 because it was overpriced.  Approximately a month later, on June 24, 2022, the list price for 118 E. Northern Parkway was lowered to $550,000.  More than two months later, the list price was lowered again, to $510,000, before going under contract.  While some value adjustments to 118 E. Northern Parkway would be necessary to compare the property to 209 Churchwardens Road, the fact that 118 E. Northern Parkway had multiple price cuts before going under contract at a time when the list price was $510,000 does not in any way support an appraisal of 209 Churchwardens Road for $750,000.

67.     On information and belief, Dr. Connolly and Dr. Mott knew about the listing and pending sale of 118 E. Northern Parkway because they are educated consumers and knowledgeable about recent sales transactions in the Homeland neighborhood.

**PLAINTIFFS FALSELY ACCUSE DEFENDANTS OF RACISM**

68.     Nevertheless, Dr. Connolly and Dr. Mott, on information and belief, were angry about the appraisal that they had received in June 2021 from Mr. Lanham and 20/20 Valuations.

As a result, they launched a self-serving media campaign in retaliation against Mr. Lanham and 20/20 Valuations and in support of their lawsuit against Mr. Lanham and 20/20 Valuations.

69.     Unlike Dr. Connolly and Dr. Mott's focus on Mr. Lanham's race at the time of the appraisal, Mr. Lanham did not consider Dr. Connolly and Dr. Mott's race during the performance of his appraisal.  Mr. Lanham did not know the race of any of the owners of the comparable properties listed in his appraisal report, and did not consider the race of any of the owners of any potential comparable properties during the performance of his appraisal.  As set forth above, Mr. Lanham's appraisal was supported by the comparable properties most locationally similar to 209 Churchwardens Road, all of which, on information and belief, were known to Dr. Connolly and Dr. Mott as educated consumers.

70.     As part of media campaign against Mr. Lanham and 20/20 Valuations, on information and belief, in or about August 2022, Dr. Connolly and Dr. Mott sat for an interview with a reporter with The New York Times.

71.     During this interview, Dr. Connolly and Dr. Mott falsely accused Mr. Lanham and 20/20 Valuations of undervaluing their home based on their race.

72.     On or about August 23, 2022, Dr. Connolly and Dr. Mott gave an interview to ABC News that was broadcast on ABC News Live in which they falsely accused Mr. Lanham and 20/20 Valuations of having discriminated against them on the basis of their race during the appraisal and that their home was undervalued simply because they are black.

73.     During the interview, Dr. Connolly and Dr. Mott falsely accused Mr. Lanham and 20/20 Valuations of engaging in "racism" in the appraisal process.

74.     The New York Times article and the ABC News broadcast that contained Dr. Connolly and Dr. Mott's false and defamatory attacks on Mr. Lanham and 20/20 Valuations were

republished and repeated by numerous other media outlets, nationwide and worldwide, which was reasonably foreseeable to Dr. Connolly and Dr. Mott when they sat for interviews with the reporters from The New York Times and ABC News.

## COUNT I

## DEFAMATION

75.    Defendants/Counter-Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 74 as if set forth in this Count.

76.    During interviews with The New York Times and ABC News that were disseminated to millions of members of the public, Dr. Connolly and Dr. Mott made false and defamatory statements about Mr. Lanham and 20/20 Valuations that they had racially discriminated against Dr. Connolly and Dr. Mott, that they had undervalued Dr. Connolly and Dr. Mott's home because they were black, and that Mr. Lanham and 20/20 Valuations had engaged in racism, among other similar false and defamatory statements.

77.    Dr. Connolly and Dr. Mott's false and defamatory statements about Mr. Lanham and 20/20 Valuations were defamatory because, among other things, they exposed Mr. Lanham and 20/20 Valuations to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, Mr. Lanham and 20/20 Valuations.

78.    Dr. Connolly and Dr. Mott's false and defamatory statements about Mr. Lanham and 20/20 Valuations were defamatory *per se.*

79.    Dr. Connolly and Dr. Mott's false and defamatory statements about Mr. Lanham and 20/20 Valuations injured Mr. Lanham and 20/20 Valuations in their profession, employment, and business.

80.     Dr. Connolly and Dr. Mott's false and defamatory statements about Mr. Lanham and 20/20 Valuations caused their standing in the community to suffer and their reputation to be harmed.

81.     Dr. Connolly and Dr. Mott's false and defamatory statements about Mr. Lanham and 20/20 Valuations implied the existence of undisclosed defamatory facts.

82.     In making their false and defamatory statements about Mr. Lanham and 20/20 Valuations, Dr. Connolly and Dr. Mott failed to disclose material facts that would have cast doubt on the veracity of Dr. Connolly and Dr. Mott's statements, including that the house next door to their home sold for less money than the amount of Mr. Lanham and 20/20 Valuations' appraisal only a month after Mr. Lanham and 20/20 Valuations' appraisal.

83.     Dr. Connolly and Dr. Mott made their false and defamatory statements about Mr. Lanham and 20/20 Valuations with actual malice—that is, with knowledge of their falsity or with reckless disregard for the truth or falsity of those statements.

84.     In the alternative, Dr. Connolly and Dr. Mott made their false and defamatory statements about Mr. Lanham and 20/20 Valuations with negligence and lack of reasonable care as to the truth or falsity of these statements.

85.     As professors at a prestigious academic research institution, Dr. Connolly and Dr. Mott knew that their "experiment" was fatally flawed in numerous respects that they failed to mention during their interviews with The New York Times and ABC News.

86.     Dr. Connolly and Dr. Mott published their false and defamatory statements about Mr. Lanham and 20/20 Valuations to The New York Times and ABC News and the public with common-law malice, and an intent to harm Mr. Lanham and 20/20 Valuations, their business, ability to earn an income, and ability to act as a Certified Residential Real Estate Appraiser licensed

by the State of Maryland because, among other reasons, they were angry that Mr. Lanham and 20/20 Valuations' appraisal was lower than they had hoped and that the lower appraisal made it more difficult for them to get the loan that they were seeking.

87.     As a result of the false and defamatory statements widely disseminated by Dr. Connolly and Dr. Mott, the character and reputation of Mr. Lanham and 20/20 Valuations were substantially harmed and their standing and reputation within the appraisal community and the community at large were substantially impaired.

88.     Dr. Connolly and Dr. Mott's false and defamatory statements about Mr. Lanham and 20/20 Valuations have caused Mr. Lanham to suffer severe emotional distress, mental anguish, and personal humiliation.

89.     As a direct and proximate result of the false and defamatory statements published by Dr. Connolly and Dr. Mott, Mr. Lanham and 20/20 Valuations have suffered a loss of income and have not received as much business and work as a Certified Residential Real Estate Appraiser licensed by the State of Maryland. In fact, Mr. Lanham has been told that he has not received appraisal work because of the false and defamatory statements by Dr. Connolly and Dr. Mott.

90.     As a direct and proximate result of the false and defamatory statements published by Dr. Connolly and Dr. Mott, Mr. Lanham and 20/20 Valuations have been the recipients of malicious and threatening voicemail messages and social media postings.

91.     As a direct and proximate result of the false and defamatory statements published by Dr. Connolly and Dr. Mott, Mr. Lanham has suffered mental anguish and emotional distress including experiencing depression symptoms, anxiety, headaches, difficulty sleeping, irritability, upset stomach, and trouble with social and family relationships.

<u>**COUNT II**</u>

**FALSE LIGHT INVASION OF PRIVACY**

92.     Defendants/Counter-Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 91 as if set forth in this Count.

93.     By making the false and defamatory statements about Mr. Lanham and 20/20 Valuations during interviews with The New York Times, ABC News, and others, Dr. Connolly and Dr. Mott gave publicity to matters concerning Mr. Lanham and 20/20 Valuations that placed them in a false light to millions of readers and viewers.

94.     Dr. Connolly and Dr. Mott's actions in placing Mr. Lanham and 20/20 Valuations in a false light would be highly offensive to a reasonable person.

95.     Dr. Connolly and Dr. Mott knew that the statements about Mr. Lanham and 20/20 Valuations were false or acted with reckless disregard as to the statements' truth or falsity and the false light in which Mr. Lanham and 20/20 Valuations were placed.

96.     As a result of Dr. Connolly and Dr. Mott's actions, Mr. Lanham and 20/20 Valuations have suffered damages, including injury to their reputation, financial loss, and, in the case of Mr. Lanham, severe emotional distress, mental anguish, and harm to his overall well-being.

WHEREFORE, Defendants/Counter-Plaintiffs Shane Lanham and 20/20 Valuations, LLC demand judgment against Plaintiffs/Counter-Defendants Nathan Connolly and Shani Mott, jointly and severally, in an amount to be determined at trial as follows:

1.     compensatory damages in excess of Two Hundred Fifty Thousand Dollars ($250,000);

2.     punitive damages in excess of Two Hundred Fifty Thousand Dollars ($250,000);

3.      together with interest and costs, and such other relief as may be appropriate under

the circumstances.

Dated: January 24, 2023

Respectfully submitted,


<u>/s/Gregg E. Viola</u>                              <u>/s/Mark P. Johnson</u>

Gregg E. Viola (25737)                    Mark P. Johnson (29091)
ECCLESTON & WOLF, P.C.              ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center     Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor          7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378                   Hanover, MD 21076-1378
(410) 752-7474 (phone)                     (410) 752-7474
(410) 752-0611 (fax)                          (410) 752-0611 (fax)
E-mail: viola@ewmd.com                   E-mail: johnson@ewmd.com
*Attorney for Counter-Plaintiffs*           *Attorney for Counter-Plaintiffs*


<u>/s/David S. Wachen</u>

David S. Wachen (Bar # 12790)
WACHEN LLC
11605 Montague Court
Potomac, MD 20854
(240) 292-9121 (phone)
(301) 259-3846 (fax)
E-mail: david@wachenlaw.com
*Attorney for Counter-Plaintiffs*


## <u>DEMAND FOR JURY TRIAL</u>

Defendants/Counter-Plaintiffs demand a trial by jury.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of January, 2023, copies of the foregoing were

served via the Court's ECF system to all counsel of record.


<u>/s/Mark P. Johnson</u>
Mark P. Johnson (Bar # 29091)