### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| Nathan Connolly and Shani Mott, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:22-cv-02048-SAG |
| Shane Lanham, 20/20 Valuations, LLC, and loanDepot.com, LLC, | |
| Defendants. | |

## <u>STATEMENT OF INTEREST OF THE UNITED STATES</u>

## TABLE OF CONTENTS

I.   **Introduction** ................................................................................................................ 1

II.  **Argument** ...................................................................................................................... 2

    1.   For claims of disparate treatment under the FHA and ECOA, Plaintiffs need only plead facts that plausibly allege discriminatory intent. ................................................. 2

    2.   Under the FHA and ECOA, lenders can be held liable for relying upon discriminatory appraisals. ................................................................................................................... 7

    3.   Section 3617 does not require a "predicate violation" of the FHA. .......................... 13

III. **Conclusion** ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Ahsan v. Homebridge Fin. Servs., Inc.*, 405 F. Supp. 3d 208 (D. Mass. 2019) ............................ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 3

*Barkley v. Olympia Mortg. Co.*, No. 04 CV 875, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007).. 9

*Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685 (E.D. Va. 2013) ............... 6

*Binnifield v. Diamond*, No. 10-CV-5200, 2011 WL 2200654 (N.D. Ill. May 31, 2011) ............. 10

*Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (en banc) ....................................................... 14

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) .......................................................................... 6

*Broome v. Biondi*, 17 F. Supp. 2d 211 (S.D.N.Y. 1997) .............................................................. 14

*Brown v. Interbay Funding, LLC*, No. CIV-04-617, 2004 WL 2579596 (D. Del. Nov. 8, 2004).. 9

*CASA de Maryland, Inc. v. Arbor Realty Trust, Inc.*, No. CV DKC 21-1778, 2022 WL 4080320 (D. Md. Sept. 6, 2022) ................................................................................................................ 15

*Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Walker*, 719 F.3d 322 (4th Cir. 2013) ... 4

*E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005) ............................................ 14

*E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001) .................................................. 5

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ........................................................ 6

*Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360 (D. Md. 2011) ........................................ 10

*Fedynich v. Lozano*, No. 3:20CV260, 2021 WL 710368 (E.D. Va. Feb. 23, 2021) .................... 13

*Flippings v. U.S. Home Mortg.*, No. CV TDC-15-4021, 2017 WL 728179 (D. Md. Feb. 23, 2017) .................................................................................................................................. 6

*Frazier v. Rominger*, 27 F.3d 828 (2d Cir. 1994) ........................................................................ 14

*Glenn v. Vilsack*, No. 4:21-CV-137-AW-MAF, 2022 WL 3012744 (N.D. Fla. June 29, 2022) .... 4

*Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274 (D. Md. July 1, 2016) ........................................................................................................................................ 6

*Guess v. Adams*, No. CA 3:15-657-CMC-PJG, 2015 WL 1549062 (D.S.C. Mar. 23, 2015), *report and recommendation adopted in part,* 2015 WL 1538361 (Apr. 7, 2015) ................................. 5

*Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93 (4th Cir. 2016) (unpublished) .......... 13, 14

*Hardaway v. Equity Residential Mgmt., LLC*, No. CV DKC 13-0149, 2016 WL 3957648 (D. Md. July 22, 2016) ............................................................................................................................. 15

*Harris v. Vanderburg*, 584 F. Supp. 3d 82 (E.D.N.C. 2022) .................................................... 8, 10

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) .................................................... 6

*Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519 (6th Cir. 2013) ................................... 14

*Hood v. Pope*, 627 F. App'x 295 (5th Cir. 2015) (unpublished) ................................................. 15

*JM Adjustments Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2016 WL 3913712 (E.D. Mich. July 20, 2016) .......................................................................................... 4

*King v. Rumsfeld*, 328 F.3d 145 (4th Cir. 2003) ......................................................................... 13

*Kormoczy v. HUD*, 53 F.3d 821 (7th Cir. 1995) ............................................................................ 4

*Letke v. Wells Fargo Home Mortg., Inc.*, No. CIV.A. RDB-12-3799, 2013 WL 6207836 (D. Md. Nov. 27, 2013) ........................................................................................................................... 3

*M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538 (E.D.N.Y. 2010) .......................................... 5

*McCauley v. City of Jacksonville*, 829 F.2d 36, 1987 WL 44775 (4th Cir. 1987) (unpublished) 15

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015) ........................................................................................................................................... 5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................................................... 5

*Meyer v. Holley*, 537 U.S. 280 (2003) .......................................................................................... 8

*Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016) ............................ 10

*N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) .......................................... 8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) .................... 3

*Newell v. Heritage Senior Living, LLC*, No. 12-6094, 2016 WL 427371 (E.D. Pa. Feb. 3, 2016) ............................................................................................................................................. 14

*Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96 (3d Cir. 2017) .......................................... 14

*Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415 (4th Cir. 2018) ................... 3, 6, 8

*Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924 (8th Cir. 1993) ............................................. 6

*Rowe v. Union Planters Bank of Se. Mo.*, 289 F.3d 533 (8th Cir. 2008) ...................................... 7

*Smith v. Town of Clarkton*, 682 F.2d 1055 (4th Cir. 1982) ......................................................... 9

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 345 F. Supp. 3d 614 (E.D. Va. 2018), *vacated in part on other grounds*, 988 F.3d 690 (4th Cir. 2021) ............................................................................ 1

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) ..................................................... 3, 4, 9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .............................................................. 2, 5, 6

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981). ...................................................... 5

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ........................................................................................................................................... 3, 6

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972) ............................................................ 7

*United States v. City of Hayward*, 36 F.3d 832 (9th Cir. 1994) ................................................. 14

*United States v. Cochran*, No. 4:12-CV-000220-FL, 2013 WL 12158997 (E.D.N.C. May 10, 2013) ............................................................................................................................................. 3

*United States v. Koch*, 352 F. Supp. 2d 970 (D. Neb. 2004) ..................................................... 14

*Warren v. JPMorgan Chase Bank, N.A.*, No. CV-14-02329-PHX-SPL, 2015 WL 11120693 (D. Ariz. June 4, 2015) ..................................................................................................................... 11

*Williams v. New York City Hous. Auth.*, 458 F.3d 67 (2d Cir. 2006) .......................................... 6

*Wise v. Vilsack*, 496 F. App'x 283 (4th Cir. 2012) (unpublished) ............................................... 7

*Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017) ................................................... 3, 5

**Statutes**

12 U.S.C. § 5511(b)(2) ............................................................................................................... 12

15 U.S.C. § 1607(a)(6) ................................................................................................................. 1

15 U.S.C. § 1639e ......................................................................................................... 1, 10, 11

15 U.S.C. § 1691 ................................................................................................................. 2, 3, 8

15 U.S.C. § 1691b(a) ................................................................................................................... 1

15 U.S.C. § 1691c(a)(9) ..................................................................................... 1

28 U.S.C. § 517 ................................................................................................. 1

42 U.S.C. § 3601 .............................................................................................. 2

42 U.S.C. § 3605 .................................................................................... 2, 3, 8

42 U.S.C. § 3614 .............................................................................................. 1

42 U.S.C. § 3617 ............................................................................ 2, 13, 14, 15

## Other Authorities

86 Fed. Reg. 7487 (Jan. 29, 2021) ................................................................. 1

White House Fact-Sheet, available at https://perma.cc/CAE5-L6AL .......................... 1

## Regulations

12 C.F.R. § 1002.6 ------------------------------------------------------------------- 9

12 C.F.R. § 1026.42 -------------------------------------------------------------- 11, 12

12 C.F.R. § 128.11(a) --------------------------------------------------------------- 12

12 C.F.R. § 202.2(l) ----------------------------------------------------------------- 10

12 C.F.R. pt. 1002 ------------------------------------------------------------------- 1

24 C.F.R. § 100.135(d)(1) --------------------------------------------------------8, 12

24 C.F.R. § 100.400 ------------------------------------------------------------- 13, 14

24 C.F.R. § 100.7(a)(1)(iii) --------------------------------------------------------- 8

## I.      Introduction

The United States respectfully submits this Statement of Interest to assist the Court in interpreting the Fair Housing Act (FHA) and the Equal Credit Opportunity Act (ECOA).[1]  The Attorney General has enforcement authority under those statutes and therefore seeks to promote their proper construction.  *See* 15 U.S.C. § 1691e(h); 42 U.S.C. § 3614.  The Consumer Financial Protection Bureau (Bureau) has authority to interpret and issue rules under ECOA and to enforce the statute's requirements, and the Bureau has promulgated Regulation B to implement the statute.  *See* 15 U.S.C. §§ 1691b(a), 1691c(a)(9), 1691e(e); 12 C.F.R. pt. 1002.  The Bureau therefore seeks to assist the Court in its evaluation of the ECOA claims in this case.[2]  Furthermore, this case raises important legal questions regarding the issue of appraisal bias, which the President has identified as a priority for the federal government.  *See* 86 Fed. Reg. 7487 (Jan. 29, 2021); White House Fact-Sheet, available at https://perma.cc/CAE5-L6AL.

Plaintiffs Dr. Nathan Connolly and Dr. Shani Mott, who are Black, live with their three children in Baltimore, Maryland.  1st Am. Compl. ¶ 15, ECF No. 25.  Plaintiffs allege that Defendant Shane Lanham undervalued their home by appraising it at only $472,000, which caused Defendant loanDepot.com, LLC ("loanDepot") to deny Plaintiffs' application for a refinance loan.  *Id.* ¶¶ 37, 50.  A different appraiser later valued the home at $750,000.  *Id.* ¶¶ 116–17, 122–23.  Plaintiffs allege that considerations of race motivated Defendants' actions,

---

[1]  Under 28 U.S.C. § 517, the Attorney General may direct any officer of the Department of Justice to attend to the interests of the United States in any pending federal case.  *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 345 F. Supp. 3d 614, 665 (E.D. Va. 2018), *vacated in part on other grounds*, 988 F.3d 690 (4th Cir. 2021).

[2]  The Bureau also has authority to issue rules and other guidance regarding appraisal independence under the Mortgage Reform and Anti-Predatory Lending Act and to enforce the Act's requirements.  15 U.S.C. §§ 1607(a)(6), 1639e(g).  The Bureau therefore has a substantial interest in responding to loanDepot's argument that the Act effectively requires it to rely on appraisals that it knows or should know are discriminatory.

in violation of the FHA, 42 U.S.C. § 3601, et seq., ECOA, 15 U.S.C. § 1691, et seq., and other laws.  Defendants have moved to dismiss Plaintiffs' First Amended Complaint, and Plaintiffs have moved to dismiss the counterclaims filed by Lanham.  ECF Nos. 31, 32, 44.

This Statement of Interest addresses three legal questions raised by loanDepot's motion. *First*, to state a claim of disparate treatment under the FHA and ECOA, Plaintiffs must plausibly allege that Defendants acted with discriminatory intent.  Plaintiffs need not, as loanDepot argues, allege facts that establish a prima facie case under *McDonnell Douglas*, which provides "an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  *Second*, lenders may be held liable for relying on appraisals that they know or should know to be discriminatory.  The assertion by loanDepot that federal law prevented it from remedying or disregarding the allegedly discriminatory appraisal is patently false.  *Third*, a claim under 42 U.S.C. § 3617 does not, as loanDepot argues, require an underlying FHA violation.

## II.    **Argument**

1.    <u>For claims of disparate treatment under the FHA and ECOA, Plaintiffs need only plead facts that plausibly allege discriminatory intent.</u>

loanDepot argues that, to state a claim of disparate treatment under the FHA or ECOA, the complaint must either (1) offer direct evidence of discriminatory intent or (2) plead a prima facie case under the *McDonnell Douglas* burden-shifting framework.  *See* loanDepot's Mem. in Supp. of Mot. to Dismiss ("loanDepot Mem.") 10, 17–18, 30, ECF No. 32-1.  This argument erroneously transposes a summary judgment standard to the pleading stage.  Contrary to loanDepot's assertions, a complaint must simply allege facts plausibly showing that the defendant acted because of race.

As noted by loanDepot, under 42 U.S.C. § 3605 of the FHA and ECOA, 15 U.S.C. § 1691, a plaintiff must allege (and later prove) that the defendant discriminated because of, or

on the basis of, a protected classification.[3]  One avenue for satisfying this requirement is the

theory of disparate treatment, which requires a defendant to have acted with discriminatory

intent.[4]  *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S.

519, 524–25 (2015) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).

At the pleading stage—unlike at summary judgment or trial—a plaintiff alleging

intentional discrimination in violation of the FHA or ECOA "must simply 'plead sufficient facts

to allow a court, drawing on judicial experience and common sense, to infer more than the mere

possibility of misconduct.'"  *United States v. Cochran*, No. 4:12-CV-000220-FL, 2013 WL

12158997, at *2 (E.D.N.C. May 10, 2013) (FHA) (quoting *Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009)); *accord Letke v. Wells Fargo

Home Mortg., Inc.*, No. CIV.A. RDB-12-3799, 2013 WL 6207836, at *2 (D. Md. Nov. 27, 2013)

(ECOA and FHA).  Put more simply, an allegation of discriminatory intent must be plausible.

*See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A complaint falls short of this mark if the

defendant's actions have an alternative explanation that "is so obviously an irrefutably sound and

unambiguously nondiscriminatory and non-pretextual explanation that it renders [the plaintiff's]

claim . . . implausible."  *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017).

For example, in *Swanson v. Citibank, N.A.*, the plaintiff alleged that an appraiser lowered

the valuation of her home because of her race, in violation of § 3605.  *See* 614 F.3d 400, 403 (7th

---

[3]  Section 3605 of the FHA prohibits an entity involved in "residential real estate-related transactions" from "discriminat[ing] against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race."  42 U.S.C. § 3605(a). ECOA prohibits a creditor from discriminating against an applicant on the basis of race with respect to any aspect of a credit transaction.  15 U.S.C. § 1691.

[4]  This statement does not address loanDepot's arguments regarding disparate impact.

Cir. 2010).  The court noted that the plausibility standard "does not imply that the district court should decide whose version to believe, or which version is more likely than not."  *Id.* at 404. Accordingly, the court held that the plaintiff "pleaded enough to survive a motion under Rule 12(b)(6)" because she alleged that "[t]he appraisal defendants knew her race" and that they "discriminat[ed] against her" regarding her home valuation.  *Id.* at 406; *see also id.* at 405 (holding plaintiff stated claim against lender, for similar reasons); *JM Adjustments Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2016 WL 3913712, at *4–6 (E.D. Mich. July 20, 2016) (denying dismissal of ECOA claim based on allegations that defendant, who was aware of plaintiff's ethnicity, terminated the credit relationship without a legitimate reason, and that others of same ethnicity made similar complaints).

Despite these clear pleading standards, loanDepot contends that Plaintiffs must either provide direct evidence of discrimination or establish a prima facie case under a burden-shifting framework.  Although meeting these evidentiary standards may be necessary to survive a motion for summary judgment, *see Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013), they are not required at the pleading stage.

As an initial matter, a plaintiff need not offer direct evidence of discriminatory intent at *any* stage of a lawsuit.  Rather, a plaintiff may prove an FHA or ECOA violation "by showing 'that a defendant had a discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test.'"  *Corey*, 719 F.3d at 325 (FHA) (quoting *Kormoczy v. HUD*, 53 F.3d 821, 823–24 (7th Cir. 1995)); *see also Glenn v. Vilsack*, No. 4:21-CV-137-AW-MAF, 2022 WL 3012744, at *4 (N.D. Fla. June 29, 2022) ("A plaintiff can demonstrate discriminatory intent [under ECOA] through direct [evidence,] the *McDonnell Douglas* framework[,] or . . . a convincing mosaic of

circumstantial evidence . . . ." (citation and internal quotation marks omitted)).  Accordingly, a complaint does not need to contain allegations that, if proven, would constitute direct evidence.

Furthermore, the prima facie case under *McDonnell Douglas* is a "flexible evidentiary standard[,]" "not a pleading requirement."[5]  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 512 (2002).  The "requirements of a prima facie case can vary depending on the context[,]" and "it may be difficult to define the precise formulation" prior to discovery.  *Id.* at 512; *see, e.g.*, *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 575 (E.D.N.Y. 2010) (tailoring the prima facie requirements to fit the FHA and ECOA claims at issue).  "[R]equiring a plaintiff to plead a prima facie case would amount to a 'heightened pleading standard' that would conflict with Federal Rule of Civil Procedure 8(a)(2)" and could "require demonstrating more elements than are otherwise required to state a claim for relief."[6]  *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (quoting *Swierkiewicz*, 534 U.S. at 512).  Therefore, a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss."  *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017).

---

[5]  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court created a three-part, burden-shifting test through which a plaintiff alleging employment discrimination under Title VII can prove discriminatory intent.  The plaintiff must first establish a prima facie case of disparate treatment, which creates a presumption of unlawful intent.  *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–54 (1981).  Next, the employer has the burden of producing evidence of a nondiscriminatory reason for its actions.  *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001).  Finally, the plaintiff has the opportunity to prove that the employer's justification is pretextual.  *See id*. at 852–57.

[6]  To the extent that the prima facie case is properly referenced at the pleading stage, it is merely to "provide a useful backdrop . . . [for] determining whether a plaintiff has included enough facts . . . to indicate that he or she could plausibly eventually establish a claim for relief."  *Guess v. Adams*, No. CA 3:15-657-CMC-PJG, 2015 WL 1549062, at *2 n.3 (D.S.C. Mar. 23, 2015), *report and recommendation adopted in part,* 2015 WL 1538361 (Apr. 7, 2015).

Although *Swierkiewicz* addressed claims under Title VII, its "holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006); *see also Swierkiewicz*, 534 U.S. at 512 (citing *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 927 (8th Cir. 1993), an ECOA case, for proposition that *McDonnell Douglas* does not apply to the pleading stage); *Reyes*, 903 F.3d at 427 ("[C]ases interpreting Title VII . . . provide essential background and instruction" regarding the FHA. (quoting *Inclusive Communities*, 576 U.S. at 533)); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004) (applying the *Swierkiewicz* holding to the FHA); *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (same); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (same).

loanDepot cites three district court cases for the proposition that Plaintiffs must satisfy, at the motion to dismiss stage, a four-element prima facie standard, *see* loanDepot Mem. 18, but two of these cases clearly do not support loanDepot's position. One is directly contrary, stating that "[a]t the motion to dismiss stage, . . . a complaint need not establish a prima facie case of discrimination." *Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274, at *4 (D. Md. July 1, 2016). Another is a summary judgment decision and therefore inapplicable. *See Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685, 695–97 (E.D. Va. 2013). While in the third case, *Flippings v. U.S. Home Mortg.*, No. CV TDC-15-4021, 2017 WL 728179, at *2 (D. Md. Feb. 23, 2017), the court did apply a prima facie standard on a motion to dismiss, the cases on which the *Flippings* court relies do not provide persuasive support for loanDepot's position. *See Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (Sotomayor, J.) (vacating dismissal of FHA claims and stating that "*Swierkiewicz* does not require [a plaintiff] to plead facts sufficient to establish a prima facie disparate treatment claim"); *Rowe v. Union*

*Planters Bank of Se. Mo.*, 289 F.3d 533, 535 (8th Cir. 2008) (ruling on summary judgment);

*Wise v. Vilsack*, 496 F. App'x 283, 286 (4th Cir. 2012) (unpublished) (noting that the court had

never opined on whether an ECOA disparate treatment claim could be sustained based on

"pattern-or-practice evidence" rather than the usual prima facie formulation).[7]

In sum, loanDepot's attempt to engraft the elements of a prima facie case onto the motion

to dismiss stage contravenes well-established pleading principles.  Plaintiffs need only plead

facts that plausibly show that Defendants acted with discriminatory intent.

2.    <u>Under the FHA and ECOA, lenders can be held liable for relying upon discriminatory appraisals.[8]</u>

loanDepot repeatedly implies that its liability must be analyzed without reference to

Lanham's actions, and that it can be liable only if it took discriminatory actions that were

entirely separate from Lanham's.  *See, e.g.*, loanDepot Mem. 10–17, 20.  This is incorrect.  A

lender violates both the FHA and ECOA if it relies on an appraisal that it knows or should know

to be discriminatory.

"The language of the [FHA] is broad and inclusive[,]" and a "generous construction" is

required to carry out its objectives.  *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 212

(1972).  For example, § 3605(a) of the FHA makes it unlawful for "any . . . entity whose

business includes engaging in residential real estate-related transactions to discriminate against

any person in making available such a transaction, or in the terms or conditions of such a

---

[7]  Plaintiffs here allege that Defendants have engaged in a "pattern and practice" of discrimination.  *See* 1st Am. Compl. ¶¶ 8, 10, 73–84, 86–87, 103–112, 114.

[8]  Plaintiffs allege that loanDepot is liable both for relying on the allegedly discriminatory appraisal and for its independent actions.  While loanDepot can of course be held liable for committing any independent discriminatory actions, this Statement of Interest only addresses the legal question of whether loanDepot can separately be held directly liable for relying on Lanham's allegedly discriminatory appraisal.  This Statement of Interest does not address the issue of vicarious liability.

transaction, because of [a protected classification]."  42 U.S.C. § 3605(a).  Moreover, the FHA's prohibitions are written "in the passive voice—banning an outcome while not saying who the actor is, or how such actors bring about the forbidden consequence."  *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (noting that FHA "focuses on prohibited acts").  Here, to effectively ban the unlawful outcome—the denial of refinancing based on a discriminatory appraisal—the FHA places liability on at least two actors:  (i) the appraiser who provides the valuation, and (ii) the lender who denies refinancing, thus giving force to the appraisal.

To this end, the FHA's implementing regulations state that "[a] person is directly liable for . . . [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it."  24 C.F.R. § 100.7(a)(1)(iii);[9] *accord Harris v. Vanderburg*, 584 F. Supp. 3d 82, 93 (E.D.N.C. 2022).  Similarly, under § 3605, a person is prohibited from "[u]sing an appraisal of residential real property in connection with the sale, rental, or financing of any dwelling where the person knows or reasonably should know that the appraisal improperly takes into consideration race" or another protected classification.  24 C.F.R. § 100.135(d)(1).

ECOA bars creditors from discriminating on a prohibited basis "against any applicant, with respect to *any aspect* of a credit transaction."  15 U.S.C. § 1691 (emphasis added); *see also* Suppl. I to 12 C.F.R. § 1002.2(z) (prohibiting discrimination "because of the race of other residents in the neighborhood"); Suppl. I to 12 C.F.R. § 1002.4(a) ("Disparate treatment on a

---

[9] Because these regulations were promulgated by the agency responsible for interpreting the FHA, courts afford them deference.  *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 432 & n.10 (4th Cir. 2018).  The same is true for the Bureau's regulations under ECOA and the Mortgage Reform and Anti-Predatory Lending Act, as discussed below.

prohibited basis is illegal whether or not it results from a conscious intent to discriminate."). Specifically, when assessing applications for credit, "a creditor shall not take a prohibited basis into account in any system of evaluating the creditworthiness of applicants."  12 C.F.R. § 1002.6(b)(1); *see also id.* § 1002.6(a) (indicating that creditors evaluating an application may not consider information that is "used to discriminate against an applicant on a prohibited basis").  If a lender relies on a discriminatory appraisal to deny a loan (based on the inference that the insufficiency of the collateral makes the applicant uncreditworthy), the lender has taken a prohibited basis into account in its evaluation of the applicant's creditworthiness.

Consistent with these requirements, courts have held that lenders can be liable under both the FHA and ECOA for relying on discriminatory appraisals.  *See Swanson*, 614 F.3d at 403–06 (holding that plaintiffs stated FHA claim against lender, in part because plaintiffs alleged that lender denied home-equity loan based on discriminatory valuation); *Brown v. Interbay Funding, LLC*, No. CIV-04-617, 2004 WL 2579596, at *3 (D. Del. Nov. 8, 2004) (denying lender's motion for summary judgment with regard to claim that it was directly liable under FHA and ECOA for relying on discriminatory appraisal); *Barkley v. Olympia Mortg. Co.*, No. 04 CV 875, 2007 WL 2437810, at *1–2, 15 (E.D.N.Y. Aug. 22, 2007) (denying lender's motion to dismiss FHA claims, in part because plaintiffs alleged that their mortgages were "based on a grossly inflated [and racially discriminatory] appraisal").

Indeed, even beyond the appraisal context, an entity violates the FHA and ECOA if it enables, gives force to, or participates in a course of conduct that it knows or should know to be discriminatory.  *See Smith v. Town of Clarkton*, 682 F.2d 1055, 1058–59, 1065–67 (4th Cir. 1982) (affirming finding that town acted with discriminatory intent by blocking construction of public housing, reasoning that "defendants knew that a significant portion of the public

opposition was racially inspired, and their public acts were a direct response to that opposition");

*Harris*, 584 F. Supp. 3d at 93–99 (denying summary judgment for landlord under § 3604(a) and

(b) because of factual dispute regarding whether landlord "knew or should have known . . . about

[tenant's] racial harassment" of plaintiffs (citing 24 C.F.R. § 100.7(a)(1)(iii))); *Fahnbulleh v.*

*GFZ Realty, LLC*, 795 F. Supp. 2d 360, 364 (D. Md. 2011) ("[C]onduct is imputable to a

landlord [under the FHA], if the landlord knew or should have known of the harassment, and

took no effectual action to correct the situation." (citation and internal quotation marks omitted));

*Binnifield v. Diamond*, No. 10-CV-5200, 2011 WL 2200654, at *4 (N.D. Ill. May 31, 2011) ("An

assignee may be found liable [under ECOA] for acts committed by another creditor . . . if it

'knew or had reasonable notice of the act, policy, or practice that constituted the violation before

becoming involved in the credit transaction.'" (quoting 12 C.F.R. § 202.2(l))).

   For example, in *Mhany Management, Inc. v. County of Nassau*, a village had supported

the construction of multi-family housing, but when residents mounted an opposition campaign,

seemingly based on race, the village reversed course.  *See* 819 F.3d 581, 589–597 (2d Cir. 2016).

Though there was no evidence that the village had race-based preferences, it was held liable

because it "acted with knowledge of [its] constituents' discriminatory animus."  *Id.* at 612.  The

same is true where a lender knowingly gives force to an appraiser's discriminatory valuation.

   Despite this clear authority, loanDepot wrongly insists that it could not comply with the

FHA and ECOA's requirements because its hands were tied by other federal laws concerning

appraisal independence.  According to loanDepot, under the Mortgage Reform and Anti-

Predatory Lending Act ("Mortgage Reform Act") and accompanying regulation, it could do

nothing about Lanham's alleged discrimination except "request that [he] re-consider his

valuation and provide an explanation."  loanDepot Mem. 17 (citing 15 U.S.C. § 1639e(c)); *see*

*also* loanDepot Mem. 12 n.11, 15–16 (citing 15 U.S.C. § 1639e (a), (b); 12 C.F.R.

§ 1026.42(c)(1)).  The appraisal independence provisions cited by loanDepot, however, directly

controvert this argument.

The Mortgage Reform Act was enacted in the wake of the 2007–2008 financial crisis as

part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act").

As relevant here, the Mortgage Reform Act prohibits a creditor from engaging in any act or

practice that "compensates, coerces, extorts, colludes, instructs, induces, bribes, or intimidates"

an appraiser "for the purpose of causing the appraised value . . . to be based on any factor other

than the independent judgment of the appraiser" or that "seek[s] to influence an appraiser or

otherwise to encourage a targeted value in order to facilitate the making or pricing of the

transaction."  15 U.S.C. § 1639e (b)(1), (3); *see also Warren v. JPMorgan Chase Bank, N.A.*,

No. CV-14-02329-PHX-SPL, 2015 WL 11120693, at *2 (D. Ariz. June 4, 2015) ("15 U.S.C. §

1639e . . . deter[s] [persons] from incentivizing or coercing an appraiser to misrepresent property

value.").  Actions that seek to avoid race discrimination, however, are not taken "for the

purpose" of causing the appraised value to be based on a factor other than independent appraiser

judgment.  *See* 15 U.S.C. § 1639e(b)(1).  Nor are they taken "to encourage a targeted value in

order to facilitate . . . the transaction."  *See id.* § 1639e(b)(3).  Rather, such actions are

undertaken to comply with anti-discrimination laws, including the FHA and ECOA.

Further, loanDepot ignores provisions that specifically permit a creditor to act in the ways

that Plaintiffs allege loanDepot should have.  For example, the Mortgage Reform Act

specifically authorizes a creditor to "ask[] an appraiser to . . . [c]onsider additional, appropriate

property information, including the consideration of additional comparable properties to make or

support an appraisal[,]" or "[c]orrect errors in the appraisal report."  15 U.S.C. § 1639e(c);

11

*accord Ahsan v. Homebridge Fin. Servs., Inc.*, 405 F. Supp. 3d 208, 216–17 (D. Mass. 2019).  A creditor may also "[o]btain[] multiple valuations for the consumer's principal dwelling to select the most reliable valuation."  12 C.F.R. § 1026.42(c)(3)(iv).  And as a general matter, a creditor may take "action permitted or required by applicable Federal or state statute, regulation, or agency guidance[,]" *id.* § 1026.42(c)(3)(vi), such as not relying on an appraisal that is inaccurate or violates the law.  Thus, loanDepot's assertion that it could do nothing other than ask Lanham, an appraiser against whom Plaintiffs had already provided evidence of race discrimination, to reconsider his valuation is demonstrably false.

loanDepot's position—which maintains that an appraiser's independent judgment, even if racially discriminatory, is sacrosanct—would run roughshod over federal civil rights laws, including the FHA and ECOA, and regulations promulgated to effectuate them.  *See, e.g.*, 24 C.F.R. § 100.135(d)(1) (providing that FHA is violated where entity uses appraisal that it "knows or reasonably should know" is discriminatory); 15 U.S.C. § 1639e(e) (requiring lenders who believe an appraiser is violating applicable laws to report appraiser to applicable licensing agency); 12 C.F.R. § 128.11(a) ("No savings association may use or rely upon an appraisal of a dwelling which the savings association knows, or reasonably should know, . . . is discriminatory per se or in effect under the [FHA or ECOA].").  This backward outcome would directly conflict with a central goal of the Mortgage Reform Act's parent legislation, the Dodd-Frank Act: "ensuring that . . . consumers are protected . . . from discrimination."  12 U.S.C. § 5511(b)(2).  It is therefore unsurprising that loanDepot's novel argument regarding appraisal independence is unsupported by any case law.

It is well-established that a lender is liable if it relies on an appraisal that it knows or should know to be discriminatory, and Defendant's arguments to the contrary are ill-founded.

3.      Section 3617 does not require a "predicate violation" of the FHA.

Under § 3617 of the FHA, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section 3603, 3604, 3605, or 3606."  42 U.S.C. § 3617. Encompassed by this provision is a prohibition against retaliating in response to the exercise of fair housing rights.  24 C.F.R. § 100.400(c)(5), (6).  To state a § 3617 retaliation claim, a plaintiff must allege that "(1) she was engaged in protected activity; (2) [the defendant] was aware of that activity; (3) [the defendant] took adverse action against her; and (4) a causal connection existed between the protected activity and the asserted adverse action."  *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (unpublished) (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)).  Protected activities include a wide variety of actions taken to protest perceived housing discrimination or advocate fair housing rights.  *See Harris*, 584 F. Supp. 3d at 100 (holding tenants' report to property manager that other tenant racially harassed them could be protected activity); *Fedynich v. Lozano*, No. 3:20CV260, 2021 WL 710368, at *14 (E.D. Va. Feb. 23, 2021) (holding that letter from plaintiffs to other tenants, informing them of their rights, could be protected activity).

loanDepot argues that, in order for Plaintiffs to state a claim for a violation of § 3617, they must also state a claim for an underlying FHA violation.  *See* loanDepot Mem. 25–26.  In other words, loanDepot contends that § 3617 applies only where (a) a defendant violates another provision of the FHA, (b) the plaintiff seeks to vindicate her rights with regard to that violation, and (c) the defendant retaliates in response to the plaintiff's efforts.  This formulation is supported neither by the statute nor its implementing regulations.

Starting with the statutory text, § 3617 makes no reference to an underlying violation. Rather, it makes it unlawful, inter alia, to take certain actions "on account of [a person's] having

exercised or enjoyed" FHA rights.  *See* 42 U.S.C. § 3617.  This language explicitly contemplates that a defendant might act unlawfully in response to the exercise or enjoyment of a right that has not been violated.  Similarly, the implementing regulation provides that a wide variety of actions (including retaliation) can violate § 3617, regardless of whether there was an underlying violation.  *See* 24 C.F.R. § 100.400(c).  Indeed, § 3617 would be largely superfluous were it to cover only those situations where the FHA had already been violated.  *See United States v. Koch*, 352 F. Supp. 2d 970, 978 (D. Neb. 2004) ("[S]uch a construction renders § 3617 a redundant section." (citation omitted)).

Thus, courts have widely held that claims under § 3617 are not dependent on the existence of another FHA violation.  *See Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112 (3d Cir. 2017); *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009) (en banc); *Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519, 528 (6th Cir. 2013); *United States v. City of Hayward*, 36 F.3d 832, 836 (9th Cir. 1994).  Even where a plaintiff acts in opposition to conduct that she mistakenly believes to be discriminatory, her activity is protected if she has "a good faith, reasonable belief that the underlying actions of the [defendants] violated the law." *Broome v. Biondi*, 17 F. Supp. 2d 211, 219 (S.D.N.Y. 1997) (citation and internal quotation omitted); *accord Newell v. Heritage Senior Living, LLC*, No. 12-6094, 2016 WL 427371, at *7 (E.D. Pa. Feb. 3, 2016); *but cf. Frazier v. Rominger*, 27 F.3d 828, 834 (2d Cir. 1994).  Although the Fourth Circuit has not addressed these precise questions, it has described the elements of a § 3617 retaliation claim without a requirement of an underlying violation.  *See Hall*, 637 F. App'x at 98; *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (holding that Title VII retaliation claims do not require underlying violations).

The cases cited by loanDepot in support of its argument to the contrary are each inapplicable or unpersuasive.  *See* loanDepot Mem. 25.  In *CASA de Maryland, Inc. v. Arbor Realty Trust, Inc.*, the court dismissed the plaintiff's § 3617 claim because the allegations of discriminatory intent were insufficient.  *See* No. CV DKC 21-1778, 2022 WL 4080320, at *12 n.9 (D. Md. Sept. 6, 2022).  That decision contained a single, footnoted reference to a "predicate violation," *see id.*, and, tellingly, the only decision cited in that footnote turned on an analysis of discriminatory intent, saying nothing about an underlying-violation requirement, *see Hardaway v. Equity Residential Mgmt., LLC*, No. CV DKC 13-0149, 2016 WL 3957648, at *6 (D. Md. July 22, 2016).  The next case cited by loanDepot is *McCauley v. City of Jacksonville*, where the court upheld a plaintiff's claims under § 3604(b) and § 3617 without stating *or implying* that one was dependent on the other.  *See* 829 F.2d 36, 1987 WL 44775, at *2 (4th Cir. 1987) (unpublished).  Lastly, loanDepot cites *Hood v. Pope*, which hinged not on the absence of an underlying violation, but rather on the absence of protected activity with a causal link to the plaintiffs' allegations of harassment.  *See* 627 F. App'x 295, 300 (5th Cir. 2015) (unpublished).

This Court should follow the statutory language, the regulatory authority, and the great weight of the case law by holding that Plaintiffs need not allege an underlying FHA violation in order to state a claim under § 3617.

## III.    Conclusion

To the extent that the Court reaches these three legal questions, it should hold as follows: First, to show discriminatory intent under the FHA and ECOA, Plaintiffs need only plausibly allege that Defendants acted with discriminatory intent.  Second, a lender may be held liable for relying on an appraisal that it knows or should know to be discriminatory.  Third, Plaintiffs need not allege an underlying FHA violation in order to state a claim under § 3617.

Dated:  March 13, 2023

Respectfully submitted,

EREK L. BARRON                          KRISTEN CLARKE
United States Attorney                   Assistant Attorney General
                                         Civil Rights Division

_s/ Kimberly S. Phillips_                _s/ Nathan Shulock_
KIMBERLY S. PHILLIPS                     SAMEENA SHINA MAJEED
Assistant United States Attorney         Chief
Bar No. 811611                           CARRIE PAGNUCCO
36 S. Charles St., Fourth Floor          Acting Deputy Chief
Baltimore, MD 21201                      VARDA HUSSAIN
Tel: (410) 209-4800                      Special Litigation Counsel
Kimberly.Phillips@usdoj.gov              NATHAN SHULOCK
                                         Trial Attorney
                                         United States Department of Justice
                                         Housing and Civil Enforcement Section
                                         Civil Rights Division
                                         950 Pennsylvania Avenue NW—4CON
                                         Washington, DC 20530
                                         Tel: (202) 598-3254
                                         Nathan.Berla-Shulock@usdoj.gov


                                         SETH FROTMAN
                                         General Counsel
                                         STEVEN Y. BRESSLER
                                         Deputy General Counsel
                                         KRISTIN BATEMAN
                                         Assistant General Counsel
                                         LAUREN GORODETSKY
                                         Counsel
                                         Consumer Financial Protection Bureau
                                         1700 G Street, NW
                                         Washington, D.C. 20552
                                         Tel: (202) 435-7560
                                         lauren.gorodetsky@cfpb.gov