### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

Nathan Connolly and Shani Mott,

        Plaintiffs,

    v.

Shane Lanham, 20/20 Valuations, LLC, and loanDepot.com, LLC,

        Defendants.

Civil Action No. 1:22-cv-02048-SAG

**PLAINTIFFS NATHAN CONNOLLY AND SHANI MOTT'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS SHANE LANHAM AND 20/20 VALUATIONS, LLC'S COUNTERCLAIM**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

A.    Lanham Errs By Ignoring the Context of the Allegedly Defamatory Statements ............. 1

B.    Lanham's Claims Rest on Conclusory Allegations and Unwarranted Inferences ............. 2

C.    Lanham Fails to Demonstrate Fault Because He Does Not Plausibly Allege That
      Plaintiffs Knew or Should Have Known His Appraisal Was Accurate ............................ 4

D.    Plaintiffs' Statements are Constitutionally Protected Statements of Opinion ................... 8

      1.   Lanham Errs by Asserting That a Statement May Only Qualify
           As Protected Opinion if It Is Incapable of Falsification or Verification ...................... 9

      2.   Lanham Errs by Asserting That Plaintiffs Did Not
           Disclose the Non-Defamatory Bases for Their Opinion ............................................ 10

      3.   Lanham's Mere Disagreement with Some Allegations
           In Plaintiffs' Complaint Cannot Render Their Opinion Defamatory ........................ 11

      4.   Lanham's Cases About Defamation Claims Involving Racism
           Do Not Support His Position ..................................................................................... 12

E.    Lanham Does Not Plausibly Allege that Plaintiffs Abused
      the Fair Comment Privilege by Making Statements with Actual Malice ....................... 13

F.    Lanham's Counterclaims Are Barred by
      the Fair Reporting Privilege .......................................................................................... 14

      1.   Lanham's Discussion of the Judicial Proceedings Privilege
           Is Irrelevant Because It Is Not at Issue ...................................................................... 14

      2.   Lanham's Reliance on the "Self-Conferral" Exception to
           the Fair Reporting Privilege Is Inconsistent with Binding Precedent ....................... 15

      3.   Lanham Does Not Plausibly Allege Abuse of the Fair Reporting
           Privilege by Merely Disagreeing with Some Facts in Plaintiffs' Complaint ............. 17

G.    Lanham Cannot Insulate the Counterclaim from Dismissal
      as a SLAPP Suit by Merely Alleging an Injury ............................................................ 18

CONCLUSION ................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Agora, Inc. v. Axxess, Inc.*,
  90 F. Supp. 2d. 697 (D. Md. 2000) ...................................................................9, 10

*Batson v. Shiflett*,
  602 A.2d 1191 (1992) ...................................................................................2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. (2007) ..................................................................................3, 4, 8

*Biospherics, Inc. v. Forbes, Inc.*,
  151 F.3d 180 (4th Cir. 1998) ...........................................................................2

*Bridge C.A.T. Scan Associates v. Ohio Nuclear, Inc.*,
  608 F. Supp. 1187 (S.D.N.Y. 1985) ....................................................................16

*Brown v. Bd. of Educ. of Prince George's Cnty., Maryland*,
  2022 WL 888424 (D. Md. Mar. 25, 2022) ...........................................................6, 7

*Candy v. People for the Ethical Treatment of Animals, Inc.*,
  C-01-CV-18-000253, 2021 WL 1346611 (Md. Ct. Spec. App. Apr. 12, 2021) ......................16

*Como v. Riley*,
  287 A.D.2d 416 (N.Y. App. Div. 2001) ...........................................................12, 13

*Custer v. Sweeney*,
  89 F.3d 1156 (4th Cir. 1996) ...........................................................................3

*Duncan v. Kavanagh*,
  439 F. Supp. 3d 576 (D. Md. 2020) .....................................................................3

*Fayetteville Invs. v. Com. Builders, Inc.*,
  936 F.2d 1462 (4th Cir. 1991) .......................................................................3, 5

*Gibson Bros., Inc. v. Oberlin College*,
  187 N.E.3d 629 (Ct. App. Ohio 2022) ................................................................12

*Harvey v. Cable News Network*,
  48 F.4th 257 ............................................................................................14

*Hawks v. Ruby*,
  2019 WL 4860760 (Md. Ct. Spec. App. 2019) ...............................................4, 6, 7, 11

*Knox v. Mayor & City Council Baltimore City*,
  2017 WL 5903709 (D. Md. Nov. 30, 2017) ...........................................................19

*MacElree v. Philadelphia Newspapers, Inc.*,
  674 A.2d 1050 (Pa. 1996) ....................................................................................13

*MCB Woodberry Developer, LLC v. Council of Owners of Millrace*
  *Condominium, Inc.*,
  265 A.3d 1140 (Md. Ct. Spec. App. 2021) .............................................18, 19, 20

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
  780 F.3d 582 (4th Cir. 2015) ..............................................................................3, 7

*McGowens v. Bank of Am.*,
  2015 WL 1137749 (D. Md. Mar. 12, 2015)...........................................................2

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) .................................................................................................10

*Myers v. D.C. Hous. Auth.*,
  1:20-CV-00700, 2021 WL 1167032 (D.D.C. Mar. 26, 2021) ..............................16

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) .................................................................................8

*Norman v. Borison*,
  17 A.3d 697 (Md. 2011) .......................................................................................14

*Peroutka v. Streng*,
  695 A.2d 1287 (Md. Ct. Spec. App. 1997). ...................................................2, 9, 10

*Phreesia, Inc. v. Certify Glob., Inc.*,
  2022 WL 911207 (D. Md. Mar. 29, 2022)..............................................................3

*Piscatelli v. Smith*,
  35 A.3d 1140 (Md. 2012) ................................................................................11, 17

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*,
  829 F.2d 1280 (4th Cir. 1987) .............................................................................10

*Puchalski v. School Dist. of Springfield*,
  161 F. Supp. 2d 395 (E.D. Pa. 2001) ..................................................................12

*Rosenberg v. Helinski*,
  616 A.2d 866 (Md. 1992) ........................................................................... *passim*

*Russell v. Krowne*,
  2010 WL 2765268 (D. Md. July 12, 2010).............................................................19

*Samuels v. Tschechtelin*,
    763 A.2d 209 (Md. Ct. Spec. App. 2000) ...........................................................................10

*Schermerhorn v. Rosenberg*,
    73 A.D.2d 276 (N.Y. App. Div. 1980) ..................................................................................12

*Shulman v. Rosenberg*,
    24-C-16-001867, 2017 WL 5172642 (Md. Ct. Spec. App. 1995) ........................................14

*Tickles v. Johnson*,
    805 F. App'x 204 (4th Cir. 2020) ...........................................................................................7

*Ugwuonye v. Rotimi*,
    2010 WL 3038099 (D. Md. July 30, 2010).............................................................................19

*Unigestion Holdings v. UPM Technology, Inc.*,
    2016 WL 4033976 (D. Or. July 26, 2016)................................................................................1

*Ward v. Zelikovsky*,
    643 A.2d 972 (N.J. 1994).......................................................................................................13

*Wicomico Nursing Home v. Padilla*,
    910 F.3d 739 (4th Cir. 2018) ...................................................................................................3

*Zimmerman v. Buttigieg*,
    521 F. Supp. 3d 1197 (M.D. Fla. 2021) ................................................................................12

**Other Authorities**

Restatement (Second) of Torts.........................................................................................6, 7, 9, 11

Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed.
    Apr. 2022 update) .....................................................................................................................3

Plaintiffs Drs. Nathan Connolly and Shani Mott ("Plaintiffs") reasonably concluded that Defendants Shane Lanham and 20/20 Valuations (collectively, "Lanham") dramatically under-appraised their home because of discrimination. They sued Lanham and described the basis for their complaint to the press, i.e., they exercised their core First Amendment rights. Lanham nevertheless counterclaimed for defamation and false light based on the press statements. As shown below, Lanham's opposition to Plaintiffs' motion to dismiss those claims rests on little if anything more than his disagreement about the validity of his appraisal—which does not clear the high bar for defamation and false light—and an incorrect understanding of the relevant legal standards. The counterclaim should be dismissed, and without leave to amend because the defects are inherent and cannot be cured.[1]

## A.       Lanham Errs By Ignoring the Context of the Allegedly Defamatory Statements

Lanham would like the Court to consider only a few words from Plaintiffs—that the appraisal was low because of discrimination—and ignore all other parts of the articles in which they appear. But black letter law makes plain that the press coverage must be considered in full because it contextualizes the allegedly defamatory statements.[2]

First, it is well-established that it is appropriate for a court to consider materials that are

---

[1] Plaintiffs and Lanham agree that if the defamation claim is dismissed, the false light claim must be, as well. *See* Pls.' Mem. Law (Dkt. 44-1) ("Br.") at 10 n.6; Lanham's Opp. (Dkt. No. 51) ("Opp.") at 2 n.1. The arguments herein are addressed to defamation but require dismissal of both claims.

[2] Relatedly, Lanham is wrong to object that Plaintiffs included some facts from their complaint as part of the background section of their opening brief. *See* Opp. at 5. As one of Lanham's own cases shows, this is appropriate on a motion to dismiss a counterclaim. *See Unigestion Holdings v. UPM Technology, Inc.*, 2016 WL 4033976, at *2 (D. Or. July 26, 2016) ("Certain allegations from Plaintiff[']s amended complaint also are included as background," but are not given a "presumption of truth."). Plaintiffs' arguments do not rely on the truth of the background allegations from their First Amended Complaint.

integral to a complaint when ruling on a motion to dismiss. *E.g.*, *McGowens v. Bank of Am.*, 2015 WL 1137749, at *5 (D. Md. Mar. 12, 2015). Here, the articles and news broadcast at issue plainly are integral to Lanham's Counterclaim and are appropriate for the Court to consider.

Second, it is also well-established that a defamation claim must be evaluated in context. "[W]ords have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed." *Batson v. Shiflett*, 602 A.2d 1191 (1992); *see Peroutka v. Streng*, 695 A.2d 1287, 1293 (Md. Ct. Spec. App. 1997). The context of allegedly defamatory statements evidences whether a statement that, read in isolation, could appear to be defamatory, is in fact constitutionally protected speech. *See, e.g.*, *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998). Although Lanham's Counterclaim omits the actual statements he avers were defamatory, he has now clarified that his claims relate to five statements drawn from the *New York Times* and ABC News articles[3] attached to Plaintiffs' Motion to Dismiss. *See* Opp. at 9-10. To determine whether Lanham has stated a cognizable defamation claim, the Court must consider the articles in full. As shown in Plaintiffs' opening brief and below, they leave no doubt that Plaintiffs' statements do not constitute defamation and that the Counterclaim should be dismissed in full without leave to amend.

**B.      Lanham's Claims Rest on Conclusory Allegations and Unwarranted Inferences**

Most of the Counterclaim's allegations serve to demonstrate Lanham's view that his appraisal was conducted correctly. *See generally* Counterclaim (Dkt. 36) ("Countercl.") ¶¶ 24-50. Taking those allegations as true is of no moment because all they establish is that Plaintiffs and Lanham disagree. Defamation requires much more. But in attempting to allege the elements

---

[3] "Articles" is used herein to refer to the two articles as well as the video associated with the ABC News article. Plaintiffs address the five statements in the articles collectively, as Lanham largely does.

2

of defamation, Lanham repeatedly violates some of the most basic rules governing motions to

dismiss:

> A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (2007); "bare assertion" of element "will not suffice," *id.* at 556.

> Conclusory statements, including "vague generalit[ies]," do not support a claim. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 751 (4th Cir. 2018).

> "[U]nwarranted inferences" are not accepted "in deciding whether a case should survive a motion to dismiss." *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 582 (D. Md. 2020).

> "[P]leading upon information and belief cannot save conclusory allegations; it is an inadequate substitute for providing detail as to why the element is present in an action." *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207, at *3 (D. Md. Mar. 29, 2022).

> Legal conclusions that are cast as factual allegations are not creditable. *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996); Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. Apr. 2022 update)).

> Speculation cannot be used to "fill the gaps" in a pleading. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015).

> Allegations in a pleading that are contradicted by documents upon which the pleading relies are not be accepted as true. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Lanham's claims evaporate when shorn of the conclusory statements, unwarranted

inferences, and speculation that are categorically insufficient to support a claim for relief. In

addition to discussing violations of these rules below in connection with specific issues,

Plaintiffs have collected some of them here to make plain how dependent he is on them.

> He repeatedly asserts the naked legal conclusion that Drs. Connolly and Mott acted with negligence, recklessness, or malice. Countercl. ¶¶ 3, 9-13; Opp. at 19-23.

> He repeatedly speculates that Plaintiffs' statements were based on defamatory facts that they failed to disclose: plaintiffs "withheld 'inconvenient' facts" (Countercl. ¶ 5); plaintiffs' "false and defamatory statements . . . implied the existence of undisclosed defamatory facts" (*id.* ¶ 81); plaintiffs "failed to disclose material facts that would have cast doubt on the veracity of" their statements (*id.* ¶ 82); plaintiffs' whitewashing "'experiment' was fatally flawed in numerous respects that they failed to mention" (*id.* ¶

85). Absent legal terminology and conclusory statements, this rests on little more than the allegation that Drs. Connolly and Mott are professors (*id.* ¶ 85) and that they did not tell the press that the home next door to theirs sold for less than Lanham's appraisal of their home (which Lanham speculates they knew) (¶¶ 9, 81).

He repeatedly alleges that Plaintiffs' whitewashing and re-appraisal of their home was "flawed" in that it would not stand up to academic scrutiny, but offers no facts to support that claim—or any explanation for why academic soundness is relevant to the issue of defamation.

He repeatedly alleges that, "on information and belief," Drs. Connolly and Mott had knowledge requisite to impute malice—despite offering no specific facts to ground that knowledge apart from the "vague generality" that they were "educated consumers." *Id.* ¶¶ 45, 59, 67.

He repeatedly claims that because he has not been given a copy of Plaintiffs' second appraisal—to which he claims no entitlement—Plaintiffs must know that it is "flawed" and "undermine[s] their claim of racial discrimination," ¶¶ 13, 64,  a supposed "inference" that is wholly divorced from the predicate.

He repeatedly relies on inferences that are contradicted by the articles that his claims are based on, such as that "Plaintiffs did not make any substantial improvements to their home . . . ." Opp. at 7, *see also id.* at 22.

In short, Lanham's Counterclaim rests primarily on speculation and unwarranted inferences. Reduced to its "nub" of "well-pleaded, nonconclusory factual allegations," Lanham's pleading fails to move his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 565, 570.

## C.   Lanham Fails to Demonstrate Fault Because He Does Not Plausibly Allege That Plaintiffs Knew or Should Have Known His Appraisal Was Accurate

A defamation claim fails in the absence of fault. *See Hawks v. Ruby*, 2019 WL 4860760, at *9 (Md. Ct. Spec. App. 2019). At minimum, that means negligence, i.e., that the alleged defamer "failed to act as a reasonable person under like circumstances" in light of "the facts known to [them] at the time the statements were made." *Hawks*, 2019 WL 4860760, at *8. The Counterclaim must be dismissed because it does not demonstrate fault.

Lanham's contention that Plaintiffs acted negligently rests on four untenable inferences,

all in support of the further inference that Plaintiffs knew Lanham's appraisal was accurate: (1) Plaintiffs knew or should have known that their home had not substantially increased in value since they purchased it in 2017; (2) because Plaintiffs are educated consumers, they knew or should have known that their home was either similar to or less valuable than the comparables selected by Lanham during his appraisal; (3) because Plaintiffs are educated consumers, they knew or should have known that their home was on the "low end" of comparable properties in 2021, like it allegedly had been in 2017; and (4) because other homes near the Connolly-Mott home sold for less than the amount of Lanham's appraisal, Plaintiffs did not have reasonable grounds to believe that Lanham's appraisal was racially biased, despite the second appraisal. Opp. at 20-23.

None of Lanham's inferences are warranted. All depend in whole or part on the notion that Plaintiffs made no "material or meaningful changes to their home that would have significantly improved the value of their home." Opp. at 20. But that assertion in Lanham's brief is directly contradicted by the materials on which his Counterclaim relies—the press coverage at issue expressly notes that Plaintiffs invested tens of thousands of dollars in improvements to their home—and the Counterclaim is silent about improvements by Plaintiffs. *See* Br. Ex. A ($5,000 tankless water heater and $35,000 in other renovations); Ex. B (more than $50,000 in renovations and improvements). The assertion must therefore be rejected. *See Fayetteville*, 936 F.2d at 1465; Br. at 9-10. The inferences that depend on it likewise fail; it is implausible that after making substantial improvements, Plaintiffs would have believed their home had not meaningfully increased in value or was similarly valued to the "low end" houses that Lanham selected as comparables.

Lanham's contentions would also require the Court to credit specific, unwarranted

inferences regarding Plaintiffs' knowledge based on the vague notion that Plaintiffs are educated consumers. Being educated consumers does not support an inference that Plaintiffs knew or should have known that their statements to the press were false when made, as is required for Lanham's claim to proceed. *Hawks*, 2019 WL 4860760 at *8. It takes a speculative leap to go, as Lanham does, from a general statement about Plaintiffs' familiarity with the market to the "fact" that they knew or should have known about particular home sales that occurred after Lanham's appraisal. *See* Opp. at pp. 20-22. He is not entitled to that leap. Even if he were, it would not render Plaintiffs negligent. The Counterclaim makes clear that Plaintiffs did *not* think Lanham's chosen comparables were adequate by confirming that they appealed his appraisal. ¶ 52. And the Counterclaim states that adjustments would be necessary to compare Plaintiffs' home to the subsequently sold properties Lanham references. ¶¶ 58, 67. The inferences that Lanham asks the Court to make are not only illogical, but also at odds with his own allegations.

Even more fundamentally, the Counterclaim and the materials integral to it make clear that Plaintiffs did exactly what reasonable people would have done to check whether Lanham's appraisal was racially biased: they received a second appraisal after removing racial markers from their home. Countercl. ¶¶ 61-63; Br. Exs. A, B; *see* Restatement (Second) of Torts ("Restatement") § 580B (1977) ("The standard of conduct is that of a reasonable person under like circumstances. . . . [T]he question in terms of conduct is to ask whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it."); *Brown v. Bd. of Educ. of Prince George's Cnty., Maryland*, 2022 WL 888424 at *8 (D. Md. Mar. 25, 2022) (quoting Restatement). That the second appraisal came back approximately 60% higher than Lanham's provided reasonable grounds for Plaintiffs to believe that Lanham's appraisal was racially biased, precluding a finding of negligence. *See*

*Hawks*, 2019 WL 4860760, at *9.

Evidently recognizing that the second appraisal justified Plaintiffs' reasonable belief that Lanham's appraisal was racially motivated, Lanham asks the Court to ignore it. As discussed above, he contends that the second appraisal must have "serious problems," Opp. at 22, or that it "undermine[s]" Plaintiffs' claims, Countercl. ¶ 13, simply because he has not been given a copy (to which he claims no entitlement). That is no basis from which to infer anything deficient about the $750,000 appraisal, and his pure speculation cannot be credited. *See McCleary-Evans* at 585 (where "only speculation can fill the gaps" in a pleading, the pleading does not make entitlement to relief plausible); *see also Tickles v. Johnson*, 805 F. App'x 204, 208 (4th Cir. 2020) ("Rule 8 of the Federal Rules of Civil Procedure 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'") (citation omitted). Lanham's claim that Plaintiffs should have viewed the second appraisal as unduly high because they are "educated consumers who had done research about property values in Homeland," Opp. at 22, relies on both Lanham's omission of facts present in the press coverage and the ungrounded inference of a flaw in the second appraisal report. The Court should reject it.

Nor are Lanham's allegations that Plaintiffs' whitewashing was "flawed" or "ill-conceived" due any weight. Whether the post-whitewashing re-appraisal of Plaintiffs' home would qualify as an academic study, Countcl. ¶11, is irrelevant. What matters is whether the second appraisal gave Drs. Connolly and Mott "reasonable grounds for believing" that Lanham's appraisal was affected by racial bias. Restatement § 580B; *see Brown*, 2022 WL 888424, at *8. Plainly, it did. Moreover, these allegations are overwhelmingly conclusory; what minimal facts Lanham does plead—that the re-appraisal involved a different appraiser, and that it occurred seven months after Lanham's appraisal—do not support his proposed inferences. *See Twombly*,

550 U.S. at 564. It strains credulity to think that any person would test whether an appraiser was racially biased by using the same appraiser again. And Lanham has pleaded no *facts* to support that the seven-month time gap rendered the second appraisal meaningless. *See* Countcl. ¶ 11. His unsupported suggestion that such a short time explains away a 60% increase in value is further undercut by his suggestion that a slight 5% appreciation over four years should be accepted as reasonable, especially absent any allegations about changes to the market after his appraisal. Indeed, Lanham's overall argument in support of his claims relies on there *not* being any significant changes in the market; otherwise, his contention that sales that occurred after his appraisal should shed light on the value of Plaintiffs' home would be contradicted.

Once reduced to its "nub" of well-pleaded facts, *Twombly*, 550 U.S. at 565-66; *see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009), Lanham's claim of negligence rests on no more than allegations that the second appraisal was conducted by a different appraiser, after Lanham's appraisal, and that some homes near the Connolly-Mott home sold for around or under $472,000. On the other side of the scale, the pleadings and the materials on which the Counterclaim relies amply demonstrate that Plaintiffs acted reasonably in checking the truth of their statements and had reasonable grounds for believing those statements were true. There is no plausible allegation of fault here.

## D.    Plaintiffs' Statements are Constitutionally Protected Statements of Opinion

Plaintiffs told reporters that they believed Lanham discriminatorily undervalued their home. The straightforward facts upon which they based their conclusion—including that another appraisal subsequently valued the home at $750,000 after it was whitewashed—were disclosed in each article and readily available in the First Amended Complaint. *See* Br. at 13-14. These underlying facts were not false and defamatory. *See id.* at 11-15. Plaintiffs' statements regarding

8

Lanham's appraisal are, therefore, statements of "pure" opinion, not subject to action for defamation. *See id.* at 10-16.

1.   **Lanham Errs by Asserting That a Statement May Only Qualify As Protected Opinion if It Is Incapable of Falsification or Verification**

Lanham claims that Plaintiffs' statements cannot be protected "opinion" because they can be verified or disproven. Lanham misconstrues the law: a statement can be capable of verification *and* a constitutionally protected statement of pure opinion.

A statement that cannot be falsified or verified—e.g., that a publication provides "pseudo research" and "mere puffery"—is not actionable. *See Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d. 697, 702-703 (D. Md. 2000). But that is not the *only* type of non-actionable statement of opinion; where a statement is presented as the conclusion drawn from facts presented or readily available and the underlying facts are not false and defamatory, it is a "pure" opinion, not subject to action for defamation. Restatement § 556 cmt. c; *Agora*, 90 F.Supp.2d at 704 ("[w]hen a statement is made in the form of an opinion, Maryland courts follow the Restatement"); *see also* Br. at 10-16. The reason is that a listener will understand the statement as the speaker's conclusion, drawn from facts disclosed or readily available, and can assess it and decide for him or herself whether to agree. *See, e.g.*, *Peroutka*, 695 A.2d at 1295 ("If the actual facts are accurately stated, an opinion, based thereon will be understood as such and taken for what it is worth." (quoting *Kapiloff v. Dunn*, 343 A.2d 251, 531 n.19 (Md. Ct. Spec. App. 1975))).

This holds irrespective of whether the conclusion is capable of verification—all that matters is that the listener would understand the statement as a conclusion of the speaker drawn from the facts provided. *See, e.g.*, *Agora*, 90 F.Supp.2d at 704-05 (finding verifiable statement non-actionable as pure opinion because underlying facts disclosed); *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1289-90 (4th Cir. 1987) (same); *Peroutka*, 695 A.2d

9

at 1300 ((same); *see also* Restatement § 566 cmt. c. The cases relied upon by Lanham, at best, support only the legal proposition that a statement cannot be defamatory if it is incapable of verification or falsification; none undermines the well-established protection for a pure opinion based on disclosed facts. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) (assessing whether statement is capable of verification or falsification but independently recognizing protection of opinion based on disclosed facts); *Samuels v. Tschechtelin*, 763 A.2d 209, 243-44 (Md. Ct. Spec. App. 2000) (same).

Any listener would understand Plaintiffs' statements as their conclusion drawn from disclosed and readily available facts because the underlying facts are presented in the press reports (and in the readily available complaint identified therein). Lanham may disagree with Plaintiffs' conclusion about his appraisal, but he may not sue them for expressing it.[4]

## 2.   Lanham Errs by Asserting That Plaintiffs Did Not Disclose the Non-Defamatory Bases for Their Opinion

Lanham argues that Plaintiffs did not disclose the facts upon which their conclusion was based because, when Dr. Mott stated that they had "done [their] research," she failed to adequately identify the research. Opp. at 17 (alterations omitted). This mischaracterizes the record. Dr. Mott did not merely state that she had done "research," she explained that Plaintiffs researched home values in the area, including by speaking to neighbors. Br. at 7. Dr. Connolly immediately added that that Plaintiffs had identified comparables that "reflected a value in the mid-sixes or even higher" and that the whitewashing experiment had confirmed their suspicions

---

[4] Lanham also contends that Plaintiffs try to "have it both ways" by treating Lanham's discrimination as a verifiable fact in suing Lanham but an opinion in response to his Counterclaim. *E.g.*, Opp. at 1. There is no inconsistency. As discussed, Plaintiffs' statements about Lanham's discriminatory undervaluation are opinions under defamation law because a listener would understand them as Plaintiffs' conclusion drawn from the facts disclosed, not because discrimination is incapable of verification by a jury.

about Lanham's undervaluation. *Id.* Furthermore, as discussed in Section A above, the statements must be read in the context of the entire piece in which they appear, which includes a plethora of support for the stated opinion and also refers readers and viewers to the complaint, which contains even more. *See* Br. at 13-14. The argument that Plaintiffs "effectively did not state the facts upon which [they] based their opinion," Opp. at 17, is not credible.

### 3. Lanham's Mere Disagreement with Some Allegations In Plaintiffs' Complaint Cannot Render Their Opinion Defamatory

Lanham relatedly asserts that Plaintiffs' statements are not constitutionally protected opinion because certain statements in Plaintiffs' complaint are, allegedly, inaccurate. Opp. at 17-18. Although a conclusion based on disclosed facts is not entitled to protection if the disclosed facts are false and defamatory,[5] *see, e.g.*, *Piscatelli v. Smith*, 35 A.3d 1140, 1153 (Md. 2012); Restatement § 566 cmt. C, this does not salvage Lanham's claims. Beyond the utterly unwarranted inference that the January 2020 appraisal was defective (and Plaintiffs knew it) because Lanham has not received a copy, Lanham merely disputes that one of his comparables was located outside Homeland and that another was a "fixer-upper."[6] Opp. at 18-19. Even assuming Plaintiffs were wrong about those two facts, there is nothing defamatory about them.[7]

---

[5] The rationale being that one cannot avoid liability by making up defamatory facts and then purporting to draw a conclusion from those defamatory facts.

[6] Lanham also claims entitlement to an inference that, because Dr. Mott said her "jaw dropped" when she learned of Lanham's appraisal, the subsequent $750,000 appraisal did not inform her opinion that Lanham's appraisal was invalid. Opp. at 18. But what matters is what informed Plaintiffs' opinion when they expressed it to the press, which was after receiving the second appraisal. *See, e.g.*, *Hawks*, 2019 WL 4860760, at *8. Moreover, the inference is flatly contradicted by Dr. Connolly's explicit statement, contained in press coverage, that Plaintiffs did not immediately conclude that Lanham discriminatorily undervalued their home. *E.g.* Br. at 7.

[7] To use an example from one of Lanham's cases, a defamatory fact would be something like saying a person displays a "a statuette of a black man hanging from a white noose." *Como v. Riley*, 287 A.D.2d 416 (N.Y. App. Div. 2001).

And of course they must be viewed in the context of all the facts relied on by Plaintiffs that Lanham does not dispute. *Supra* § A; Br. at 22.

> **4.    Lanham's Cases About Defamation Claims Involving Racism Do Not Support His Position**

The cases cited by Lanham about defamation claims related to race that were allowed to go forward do not suggest that the claim at issue here is viable. None involve allegations of discrimination premised on disclosed and readily available nondefamatory facts, and many expressly state that allegations of racism are generally not actionable as defamation.

*Gibson Bros., Inc. v. Oberlin College*, 187 N.E.3d 629, 644 (Ct. App. Ohio 2022), addressed a statement that there was a history of racial profiling incidents at a bakery, which was a straightforward question of verifiable fact, not an opinion. *Puchalski v. School Dist. of Springfield*, 161 F. Supp. 2d 395, 402, 408 & n.7 (E.D. Pa. 2001), addressed a statement that a high school coach made "a specific racist remark," which was also a straightforward question of verifiable fact. This took the case "beyond the realm of mere opinion" and the court even conveyed its doubt that simply "characterizing someone or something he said as 'racist'" would be actionable. *Id.* at 408 n.7. *Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 280, 286 (N.Y. App. Div. 1980), concerned whether a headline accurately reported that an elected official said a commission "can do without blacks," again a question of verifiable fact and "not an opinion." *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1213 (M.D. Fla. 2021), stated a claim because— unlike here—it was not clear that the facts upon which the speakers' opinions were based were available to the public. *Ward v. Zelikovsky*, 643 A.2d 972, 980, 983 (N.J. 1994), explained that "[m]ost courts that have considered whether allegations of racism, ethnic hatred or bigotry are defamatory have concluded for a variety of reasons that they are not," and dismissed the claim. *Como v. Riley*, 287 A.D.2d 416 (N.Y. App. Div. 2001), went forward because the accusation of

12

racism rested on a single verifiable and disputed fact, unlike here where Plaintiffs' claims rest on numerous facts that are mostly not disputed at all or in any legitimate way. *MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050, 1054-55 (Pa. 1996), went forward because the newspaper charged the local district attorney with "misconduct in office," and expressly not on the basis of "a simple accusation of racism."

**E.   Lanham Does Not Plausibly Allege that Plaintiffs Abused the Fair Comment Privilege by Making Statements with Actual Malice**

The fair comment privilege protects a pure opinion shared on a matter of public importance and is closely related to the constitutional protection for statements of pure opinion. *See* Br. at 20. The first prong is satisfied because Plaintiffs' statements are ones of pure opinion.[8] *See supra* § D; Br. at 10-16. The second prong is satisfied because, as Lanham acknowledges, appraisal discrimination is a matter of public concern. *See* Br. at 20-21; *see* Opp. at 25 n.7. Lanham asserts, however, that Plaintiffs may not claim the privilege because they have abused it by making the statements in question with actual malice. This argument has no merit.

As shown above, Lanham has not come close to pleading the actual malice necessary to defeat the privilege. Lanham's conclusory invocations of "malice" and "reckless disregard," *see* Countercl. ¶¶ 83, 86, 95, must be disregarded because they are textbook boilerplate allegations, unsupported by any factual basis. *See supra* § B. Indeed, Lanham does not even argue that he has made a sufficient showing of malice to defeat the privilege—he rests his argument that Plaintiffs abused the privilege on a cross-reference to a section of his brief in which he contends only that Plaintiffs made the challenged statements negligently. *See* Opp. at 25 (referencing *id*. at 19-23).

---

[8] Lanham argues otherwise on the ground that fair comment privilege is inapplicable because Plaintiffs' statements are capable of verification. *See* Opp. at 23-25. That is wrong for the reasons discussed *supra* § D.1.

As discussed *supra* § C, Lanham has not established even negligence and necessarily cannot clear the much higher hurdle of actual malice. *See, e.g.*, *Shulman v. Rosenberg*, 24-C-16-001867, 2017 WL 5172642, at \*14-15 (Md. Ct. Spec. App. 1995). Lanham's attempts to rely on his deficient negligence arguments to prove actual malice are manifestly inadequate.[9]

**F.      Lanham's Counterclaims Are Barred by the Fair Reporting Privilege**

Plaintiffs' allegedly defamatory statements were made during interviews about their lawsuit against Lanham and accurately summarized their claims. *See* Br. at 23-25. They therefore fall squarely within the protection of the fair reporting privilege. *See id.* Lanham's arguments to the contrary, again, rest on fundamental legal and factual misunderstandings.

**1.      Lanham's Discussion of the Judicial Proceedings Privilege Is Irrelevant Because It Is Not at Issue**

Purporting to argue that the fair reporting privilege does not apply to Plaintiffs' statements, Lanham discusses an entirely different privilege: the judicial proceedings privilege.

The judicial proceedings privilege protects all statements made in court documents or during court proceedings. *E.g.*, *Rosenberg v. Helinski*, 616 A.2d 866, 872 (Md. 1992); *Norman v. Borison*, 17 A.3d 697, 710-11 (Md. 2011). The fair reporting privilege protects "persons who report to others" about statements made in court proceedings or contained in court documents. *Rosenberg*, 616 A.2d at 872. The former protects litigants and witnesses regarding their statements in a court case, the latter protects those who report on such statements. *Id.* at 872-73.

Lanham references the "absolute privilege for defamatory statements uttered in the

---

[9] Those arguments all boil down Lanham's claims that Plaintiffs' statements were incorrect and/or that they or did not mention things that Lanham asserts they should have. *See* Opp. 19-23. Such arguments are black-letter examples of evidence insufficient to establish actual malice. *See Harvey v. Cable News Network*, 48 F.4th 257, 273-74 ("courts have consistently held that reliance on tainted or troubled sources does not alone establish actual malice"); Br. at 22.

course of trial or contained in pleadings, affidavits, or other documents related to the case" and argues that "the absolute privilege has its limits, such as communications between an attorney and the news media." Opp. at 26. But Plaintiffs have not raised the absolute privilege for statements made within a case—i.e., the judicial proceedings privilege. Rather, Plaintiffs' statements to the press about the allegations in their complaint are protected by the fair reporting privilege.

### 2. Lanham's Reliance on the "Self-Conferral" Exception to the Fair Reporting Privilege Is Inconsistent with Binding Precedent

Lanham also argues that Plaintiffs impermissibly "self-conferred" the privilege—it is never available, they argue, to one who reports on statements that they personally made in a pleading or hearing. Opp. at 27-29. That argument is inconsistent with binding caselaw, directly on point in this case, holding that the "self-conferral" exception only applies where one initiates a lawsuit in bad faith to later claim the privilege. It is inapplicable here.

In *Rosenberg v. Helsinki*, Maryland's highest court held that an expert witness who recounted the substance of his own in-court testimony was entitled to the protection of the fair reporting privilege. *Rosenberg*, 616 A.2d at 869-70, 876. The court explained that the privilege is only rendered inapplicable by self-reporting where one "act[s] maliciously by commencing judicial proceedings in bad faith and then later repeating their own defamatory statements under the aegis of privilege." *Id.* In other words, "the privilege will be forfeited only if the [alleged] defamer illegitimately fabricated or orchestrated events to appear in a privileged forum in the first place." *Id.* As in *Rosenberg*, "there is not the remotest indication" in the counterclaim that Plaintiffs "sought in bad faith to" file a lawsuit against Lanham "with some perverse wish to harm" him by later reporting their allegations to the media. *Id.* at 877.

Perhaps recognizing that their claim is inconsistent with *Rosenberg*, Lanham relies on

out-of-jurisdiction cases while confining *Rosenberg* to a footnote. In that footnote, they ask the

Court to ignore *Rosenberg*'s clear language, asserting without support that *Rosenberg* "has been

criticized" and that its "interpretation of comment c directly contradicts the language in Section

611 of the Restatement." Opp. at 29 n. 8. These arguments are baseless.

Lanham's conclusory assertion that *Rosenberg* "has been criticized" is belied by the

complete absence of support for that assertion as well as the fact that it was cited with approval

on this very point as recently as 2021, without reference to any criticism or controversy.[10] *See*

*Candy v. People for the Ethical Treatment of Animals, Inc.*, C-01-CV-18-000253, 2021 WL

1346611, at *8 (Md. Ct. Spec. App. Apr. 12, 2021). Moreover, that Lanham disagrees with the

Maryland Court of Appeals is irrelevant. The Court addressed the exact Restatement provision

identified by Lanham (and related commentary[11]) and rejected the interpretation that Lanham

now advances, as have the courts of other states. *Rosenberg*, 616 A.2d at 876-77 (noting

consistency with the Court of Appeals of New Mexico, the Supreme Court of Arizona, and the

Court of Appeals of New York). Lanham may not ask this Court to ignore *Rosenberg* just

because he does not like it and because courts in some other jurisdictions have applied the fair

reporting privilege differently than Maryland.

---

[10] Cases cited by Lanham undermine his unsupported claims that *Rosenberg* has been "criticized." In *Myers v. D.C. Hous. Auth.*, 1:20-CV-00700, 2021 WL 1167032 (D.D.C. Mar. 26, 2021), for example, the court looked to Maryland law for guidance on applying the self-reporting exception and, relying expressly on *Rosenberg*, found that the privilege was not defeated because there was no evidence that the speaker "filed a complaint only to later publish statements to defame." *Myers*, 2021 WL 1167032, at * 5-6. Similarly, Lanham discusses *Bridge C.A.T. Scan Associates v. Ohio Nuclear, Inc.*, 608 F. Supp. 1187 (S.D.N.Y. 1985), Opp. at 28, which concluded, consistent with *Rosenberg*, that an issue of fact regarding whether the initial pleading was filed with malicious intent to enable future defamation precluded finding at summary judgment that the privilege applied. 608 F. Supp. at 1194.

[11] Including 2 Harper et al., *The Law of Torts*, which is consistent with *Rosenberg* but cited by Lanham for the opposite proposition. *Compare Rosenberg*, 616 A.2d at 876 *with* Opp. at 27.

### 3.   Lanham Does Not Plausibly Allege Abuse of the Fair Reporting Privilege by Merely Disagreeing with Some Facts in Plaintiffs' Complaint

Lanham also argues that a factual question exists regarding whether Plaintiffs abused the fair reporting privilege because their claims are based on facts that Lanham asserts are incorrect. Opp. at 29-30 (alleging that there is "a factual question as to whether Plaintiffs' statements were impartial, coherent, and bona fide in light of the facts alleged in the Counterclaim"). This betrays a fundamental misunderstanding of the fair reporting privilege.

The privilege protects those who report on the substance of court documents or proceedings and, accordingly, is abused only where the report is not a "fair and substantially correct" summary of the underlying material—i.e., where the report mischaracterizes or adds to the material such that it would create a misimpression of what it contains. *See, e.g.*, *Piscatelli*, 35 A.3d at 1150-51; *see also* Br. at 25-26. The fair and accurate reporting requirement does not impose, as Lanham suggests, an affirmative obligation to correct allegedly false information in the court document. To do so would create a plainly inaccurate report.

There can be no doubt that the statements to the press about which Lanham complains satisfy the appropriate standard. They restate Plaintiffs' ultimate allegation that Lanham discriminatorily undervalued their home and, indeed, often directly track language contained in their complaint. *See Br.* at 25-26. They do not add to or mischaracterize the underlying allegations. *Id.* That satisfies the requirement that the statements be "fair and substantially correct." *Piscatelli*, 35 A.3d at 1150-51; *see also Rosenberg*, 616 A.2d at 875. It is irrelevant that Lanham disagrees with the allegations contained in Plaintiffs' complaint; their accurate report of those allegations is privileged.

**G.    Lanham Cannot Insulate the Counterclaim from Dismissal as a SLAPP Suit by Merely Alleging an Injury**

Lanham asserts that his counterclaim was not brought in bad faith and so is not a SLAPP suit. He claims there is no bad faith because he alleges financial and other injuries from Plaintiffs' statements to the press. He also appears to suggest that a suit may not be dismissed under Maryland's Anti-SLAPP law prior to discovery. To the contrary, alleging injury does not insulate a SLAPP suit from dismissal on a motion to dismiss. The Appellate Court of Maryland has made plain that dismissal before discovery is proper when bad faith is evident, and bad faith is evident here from Lanham's reliance on implausible and conclusory allegations.

**Alleging Injury is Irrelevant.** Lanham's allegations of injury and assertion that redress for that injury is the purpose of his Counterclaim are of no moment. Every plaintiff and counterclaimant will necessarily assert an injury and argue that the injury gives rise to their claim; to do otherwise would preclude standing and make transparent the bad-faith basis of the claim. The leading case of *MCB Woodberry Developer, LLC v. Council of Owners of Millrace Condominium, Inc.*, 265 A.3d 1140 (Md. Ct. Spec. App. 2021), is on point. A developer claimed it was financially harmed by actions taken by homeowners to prevent the developer from obtaining Baltimore's approval of amendments to its development plan. *Id.* at 1145. The homeowners' motion to dismiss as a SLAPP suit was granted and the Appellate Court of Maryland (then the Court of Special Appeals) affirmed, finding that bad faith was present. The Court found no need to consider the developer's damages allegations, demonstrating that they were immaterial. What mattered were the elements of the anti-SLAPP statute, not alleged injuries. *See id.* at 1157-58.

**Dismissal of a SLAPP Suit on a Motion to Dismiss Is Proper.** *MCB Woodberry* also held that it is appropriate to dismiss SLAPP suits prior to discovery where "the allegations of the

18

pleadings, exhibits incorporated therein, and other matters capable of being noticed judicially, supply evidence from which bad faith may be discernible as a matter of law." *Id.* at 1157; *see also id.* at 1155. Otherwise, the anti-SLAPP statute would be "rendered nugatory." *Id.* The three cases Lanham cites to support his contention that discovery is necessary all predate *MCB Woodberry's* holding that discovery is not necessary prior to dismissal of a SLAPP suit.[12]

**Dismissal of Lanham's SLAPP Suit is Necessary and Proper Because Bad Faith Is Evident.** Key factors that led to dismissal of the developer's suit in *MCB Woodberry* were that the developer's claim for "punitive damages was unsupported by any plausible allegations that the [homeowners] acted with an evil motive," and that "the allegations of the complaint were conclusory and devoid of any specific facts to support the claim." *Id.* (internal quotation marks omitted). As to the latter, the court added that "[t]he conclusory nature" of the plaintiffs' allegations "was notable . . . because the remaining allegations . . . were customarily protected First Amendment activities." *Id.* at 1158-59. These factors likewise reveal bad faith here.

As in *MCB Woodberry*, Lanham's Counterclaim depends entirely on conclusory allegations and unwarranted inferences. Br. at 2-4; *supra* § B. Stripped of these, all that is left is that Lanham believes his appraisal was sound. His difference of opinion does not remotely suggest that Drs. Connolly and Mott were negligent with respect to their statements to the press, much less that they acted with malice as required to sustain the $250,000 punitive damages award that Lanham demands. *See supra* §§ C, E; Br. at 29. And just as in *MCB Woodberry*, the

---

[12] In two of those cases—*Knox v. Mayor & City Council Baltimore City*, 2017 WL 5903709 (D. Md. Nov. 30, 2017), and *Ugwuonye v. Rotimi*, 2010 WL 3038099 (D. Md. July 30, 2010)—the need for discovery was cited specifically and there was no recognition that, as *MCB Woodberry* subsequently held, a court may properly identify a suit as a SLAPP suit without discovery. The third—*Russell v. Krowne*, 2010 WL 2765268 (D. Md. July 12, 2010)—was decided under Rule 56, not as a motion to dismiss.

core allegations are about "customarily protected First Amendment activities"; here, speaking to the press. *See* 265 A.3d at 1158-59.

That is enough to confirm that the Counterclaim was filed in bad faith, but Lanham's allegations make it even clearer than it was in *MCB Woodberry*. That is because Lanham's allegations make plain that Plaintiffs did not defame him. The very press coverage at the center of the Counterclaim demonstrates that Plaintiffs had a reasonable basis for their assessment of the appraisal. Plaintiffs told the reporters the specific reasons they disputed the appraisal and believed it to be discriminatory, including their research into comparables and the second appraisal. As shown above, that defeats Lanham's Counterclaim.

Having filed a Counterclaim dependent on conclusory allegations and illegitimate inferences, and that is not viable on its face, Lanham's bad faith is "discernible as a matter of law." *Id.* at 1157.

**The Other SLAPP Elements Are Satisfied.** Lanham does not dispute that appraisal discrimination is an issue of public concern, *see* Opp. at 25 n.7, or that the Counterclaim is "materially related" to Plaintiffs' statements to the press. Br. at 27-28. And bringing a lawsuit requesting $500,000 in damages, premised on speaking to the press, inevitably inhibits the pursuit of First Amendment rights. *See* Br. at 30-31. There is thus no question that the Anti-SLAPP suit applies to Lanham's Counterclaim. Permitting Lanham's Counterclaim to proceed would give any defendant a green light to file a defamation counterclaim when a plaintiff exercises their First Amendment rights to speak to the press about their lawsuit.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, the Court should dismiss Lanham's Counterclaims with prejudice.

Dated: May 19, 2023                    Respectfully submitted,


<u>/s/ John Relman</u>
John Relman #11482
Gabriel Diaz*
Soohyun Choi*
David DePriest*
RELMAN COLFAX PLLC
1225 19th St., NW, Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
*Attorneys for Plaintiff*

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, a copy of the foregoing Plaintiffs' Reply to

Defendants Oppositions to Plaintiffs' Motion to Dismiss Defendant Lanham and 20/20

Valuation's Counterclaims was filed and served electronically on all counsel of record using the

Court's CM/ECF system.


/s/ John Relman
John Relman

*Counsel for Plaintiff*