IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHAN CONNOLLY &
SHANI MOTT

      Plaintiffs,

v.

SHANE LANHAM, *et al.*,

      Defendants.

Civil Case No.: SAG-22-2048

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Nathan Connolly and the Estate of Shani Mott[1] (collectively "Plaintiffs") allege that Defendants Shane Lanham and 20/20 Valuations, LLC (collectively "Defendants") racially discriminated while performing an appraisal of Plaintiffs' home. Defendants have counter-sued for defamation. Each party has offered an expert to provide testimony regarding the propriety of Defendants' appraisal of Plaintiffs' home. Plaintiffs seek to strike what they believe is an impermissible sur-rebuttal by Defendants' appraisal expert. ECF 101. Defendants seek to exclude the opinions of Plaintiffs' appraisal expert in their entirety. ECF 112. Each party opposes the other's motion, ECF 106, 131, and has filed a reply in support of their own, ECF 107, 132. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained herein, Plaintiffs'

---

[1] At the time of filing, Dr. Connolly's spouse, Dr. Shani Mott, was also a Plaintiff. Dr. Mott has since passed away, and this Court granted Dr. Connolly's motion to substitute himself for Dr. Mott as the personal representative of her estate. ECF 84. This Court will continue to refer to Plaintiffs in the plural.

motion to strike, ECF 101, will be denied, and Defendants' motion to exclude, ECF 112, will be granted in part and denied in part. [2]

## I. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. A qualified expert may give testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In essence, the trial court must ensure that the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court provides five non-exhaustive factors a court may weigh in making this assessment: (1) "whether a theory or technique …can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," (4) "the existence and maintenance of standards controlling the technique's operation," and (5) whether the technique or theory has gained "general acceptance." *Daubert*, 509 U.S. at 592–94; *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 452 (4th Cir. 2010). However, ultimately, the inquiry is "a flexible one" and relevant factors can vary with the needs of each case. *Daubert*, 509 U.S. at 594.

For the proffered evidence to be sufficiently reliable, it "must be derived using scientific or other valid methods" and not based on mere "belief or speculation." *Casey v. Geek Squad*

---

[2] Other potentially dispositive motions are currently pending: ECF 110, 127, 130, 134. This Court will decide them in a separate opinion.

*Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). The court's analysis focuses on experts' methods, not their conclusions, but an expert opinion that relies on "assumptions which are speculative and are not supported by the record" is inadmissible. *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). For the proffered opinion to be relevant, it "must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Casey*, 823 F. Supp. 2d at 341 (quoting *Daubert*, 509 U.S. at 591).

The proponent of the expert testimony bears the burden of establishing admissibility, or "coming forward with evidence from which the trial court could determine that the evidence is admissible under *Daubert*." *Anderson v. Home Depot U.S.A., Inc.*, No. 14-CV-2615, 2017 WL 2189508, at *3 (D. Md. May 16, 2017) (quoting *Main St. Am. Grp. v. Sears, Roebuck, & Co.*, No. 08-CV-3292, 2010 WL 956178, at *3 (D. Md. Mar. 11, 2010)); *see also Casey*, 823 F. Supp. 2d at 340; *Daubert*, 509 U.S. at 592 n.10 (explaining admissibility must be established by a "preponderance of proof").

In determining the admissibility of expert testimony, the court considers two "guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). On the one hand, Rule 702 was "intended to liberalize the introduction of relevant expert evidence," and the court need not ensure the expert's proposed testimony is "irrefutable or certainly correct." *Id.* (explaining that admissible expert testimony can still be vigorously tested

before the jury by "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" (quoting *Daubert*, 509 U.S. at 596)). On the other hand, "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). The court must determine whether the disputed expert testimony "has a greater potential to mislead than to enlighten." *Id.* If so, the testimony should be excluded. *Id.*; *see also Casey*, 823 F. Supp. 2d at 341 (noting that such testimony would be barred by Federal Rule of Evidence 403).

## II. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs have asked this Court to strike a supplemental report by Defendants' appraisal expert, Tobias Peter, as an improper sur-rebuttal. ECF 101. Plaintiffs' rebuttal expert reports—including a report written by Dr. Junia Howell in rebuttal to a report by Defendants' expert, Mr. Peter—were due on September 4, 2024. *Id.* Plaintiffs submitted Dr. Howell's rebuttal report, which featured substantial data analysis, and its underlying materials to Defendants on the due date. *Id.* Defendants deposed Dr. Howell on September 11, 2024. *Id.* The following day, September 12, 2024, Defendants sent Plaintiffs a thirteen-page document styled as a "supplement" by Mr. Peter, which responded to Dr. Howell's data analysis. *Id.* Plaintiffs argue this is a "have it your way strategy" because Defendants had vigorously opposed delaying the expert report deadline. *Id.*

Defendants' opposition to this motion, ECF 106, provides helpful context. Dr. Howell filed her opening report in June, 2024, which consisted of an analysis of Defendants' appraisals over several years, comparing their work in White neighborhoods to their work in otherwise similar non-White neighborhoods. *Id.* Defendants' opening expert reports were due in August, 2024. *Id.* Their expert, Mr. Peter, refuted Dr. Powell's analysis by comparing it to an automated valuation model ("AVM") and stating that he believed her findings were without foundation. *Id.* Defendants

4

also provided Mr. Peter's underlying data to Plaintiffs. *Id.* In her September 4, 2024 rebuttal report, Dr. Howell used AVM data she created from publicly available information from Zillow.com (Zestimates). *Id.* She had not based her opinions on AVM data or Zestimates previously.

Essentially, Defendants argue, "it was not possible for Defendants' expert to address and rebut Plaintiffs' expert's opinions on the Zillow AVM data until after Plaintiffs' expert disclosed her opinions." *Id.* But perhaps more important, the deadline to supplement Rule 26(e)(2) expert disclosures was one week after the last expert deposition. ECF 91. The Defense provided Plaintiffs with Mr. Peter's supplement well before that deadline, and over a month before Mr. Peter's deposition. ECF 106 at 4. Therefore, they argue, the supplement was both timely and appropriate in light of Dr. Howell's disclosure of new data and methodology in her rebuttal report. *Id.*[3]

This Court agrees that the supplement was both timely given the parties' agreed-upon schedule and appropriate under the circumstances. Mr. Peter responded to previously unraised arguments that he could not have responded to in his initial report. By submitting his supplement well before his own deposition, Plaintiffs had the opportunity to question him regarding the supplement. It would be unfair and contrary to the parties' agreed upon supplemental disclosure deadline to forbid Mr. Peter from responding to a newly disclosed opinion well within the deadline. Plaintiffs' motion to strike is denied.

---

[3] To be clear, Plaintiffs' expert's rebuttal went beyond merely responding to Mr. Peter's report. She introduced entirely new data and a previously undisclosed opinion. Even if Plaintiffs' claim she only intended to "rebut" Mr. Peter's AVM analysis, she nevertheless employed entirely new data, and Mr. Peter was entitled to respond to it.

## III. DEFENDANTS' MOTION TO EXCLUDE

For their part, Defendants seek to exclude Dr. Howell's opinions relating to Plaintiffs' discrimination claims.[4] ECF. Dr. Howell is a Visiting Assistant Professor of Sociology at the University of Illinois, Chicago. ECF 112-3 at 57. She obtained a Ph.D. in Sociology from Rice University in 2017. *Id.* Her research interests include urban sociology, race and ethnicity, inequality and mobility, and quantitative methodology. *Id.* She has published several articles about race and housing. *Id.* at 57–59. She is also the founder and director of a nonprofit organization that seeks "to cultivate equity across people and places by reimagining housing and financial services." *Id.* at 2. She has never performed an appraisal and has never been licensed or certified as an appraiser. ECF 112-4 at 10–12, 164, 170, 201, 210.

Dr. Howell issued her opening report on June 21, 2024. ECF 112-3. She conducted a data analysis of 1,996 appraisals performed by Defendants and compared them with each other and with other appraisers' work. ECF 112 at 2. Dr. Howell described her report as essentially divided in three sections:

> So the first bucket is looking just at Mr. Lanham's appraisals and looking to what extent there is a racial difference.
>
> The second bucket is looking at his appraisals compared to another evaluation of the neighborhood. And that has like -- that has four different ways of looking at that. One of those is FHFA data. One is his own evaluations of neighborhood median income. One is now added from the rebuttal, the AVM,[1] and the fourth is the contract price. So that's that middle bucket.
>
> The third bucket are examining to what extent his patterns of behavior in selecting comps and making adjustments are also racialized.

---

[4] Defendants do not challenge Dr. Howell's opinions relating to Plaintiffs' counterclaim at this time, but have reserved the right to do so before trial.

ECF 112-4 at 43. Defendants use these "buckets" to frame their arguments.

1. *"Buckets" One and Two*

Because Defendants have similar objections to the first two portions of Dr. Howell's report, the Court will consider them together. Essentially, Defendants argue that errors in Dr. Howell's analysis render her conclusions irrelevant, and they thus should be excluded under Rule 702.

Dr. Howell used a regression model to conclude that "Defendant[s] systematically appraised homes in census blocks of color as less valuable than comparable homes in comparable White census blocks." ECF 112-3 at 9. As a general matter, Dr. Howell found, homes in predominately White neighborhoods in the Baltimore area sold for $165,000 more than comparable homes in neighborhoods predominately populated by non-White people. *Id.* at 52–53.[5] Dr. Howell's first opinion was, essentially, that Defendants generally appraised homes in White neighborhoods as more valuable than comparable homes in non-White neighborhoods. Defendants argue that to the extent there is a differential between Defendants' appraisals in White and non-White neighborhoods, such a differential exists for all appraisals, and it is therefore misleading to use this statistic alone to suggest that Defendants discriminated against non-White homeowners.

---

[5] Defendants paint Dr. Howell's analysis as exclusively featuring neighborhoods that were 100% White and 100% non-White. Plaintiffs dispute this characterization, and instead state that Dr. Howell's analysis compared predominately White neighborhoods with predominately non-White neighborhoods. That distinction does not bear on the Court's analysis. For purposes of clarity, the Court will refer to "White neighborhoods" and "non-White neighborhoods," understanding that most "White neighborhoods" have some residents of color and most "non-White neighborhoods" have some White residents.

Dr. Howell provided further analysis, however, suggesting that Defendants' differential was larger than average. Dr. Howell offered five opinions within her second "bucket."[6] Each of those opinions tends to support the theory that Defendants appraised homes in non-White neighborhoods at a lower value than average, and homes in White neighborhoods at a higher value than average.

While Defendants may be right that there are problems with this portion of Dr. Howell's analysis, the Defendants can—and in fact, did— raise arguments regarding the usefulness of her arguments at summary judgment, and, if the case survives summary judgment, at trial. Defendants' arguments boil down to various reasons that Dr. Howell's analysis may not be convincing, or may not provide helpful evidence of Plaintiffs' theory. Rule 702 was "intended to liberalize the introduction of relevant expert evidence," and the court need not ensure the expert's proposed testimony is "irrefutable or certainly correct." *Westberry*, 178 F.3d at 261. Admissible testimony can still be vigorously tested before the jury by "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* And at the summary judgment stage,

---

[6] First, "Defendant systematically evaluated homes in communities of color as less valuable than other appraisers and evaluated homes in White neighborhoods as more valuable than other appraisers." ECF 112-3 at 12. Next, "[c]ompared to the Defendant's own assessment of the neighborhood median sale price, the Defendant systematically appraised subject properties located in White communities as more valuable than comparable homes in similar communities of color." *Id.* at 15. Third, "Defendant was more likely to provide appraisals above the contract price in White neighborhoods compared to communities of color—resulting in substantial financial consequences for buyers and sellers in communities of color." *Id.* at 17. Next, "Defendant selected comparable sales that elevated his appraised values in White neighborhoods and decreased his appraised values in communities of color." *Id.* at 29. And last, "Defendant made larger value adjustments in White neighborhoods than in communities of color for comparable properties of the same sale price with the same feature differences. In short, even when holding constant the average sale price, the Defendant perceived the same features as more valuable when they were located in a White neighborhood compared to a community of color." *Id.* at 22.

Defendants may argue that the expert's testimony is insufficient to create a genuine issue of material fact.

Rather than striking this portion of her opinion, , this Court believes the better course of action is to weigh at summary judgment if Dr. Howell's analysis is sufficient to create a genuine issue of material fact regarding whether the Defendants appraised Plaintiffs' home in a racially discriminatory manner. Defendants' arguments pertain more to the usefulness of Dr. Howell's opinions than their appropriateness under Rule 702. *See Daubert*, 509 U.S. at 587 (Rule 702's "standard of relevance" is relatively liberal).

2. "Bucket" Three

In her third "bucket," Dr. Howell opined that Defendants did not comply with the Uniform Standards of Professional Appraisal Practice (USPAP), which Maryland appraisers are required to follow, and their own practices in other appraisals. ECF 112-3 at 31. She continued that had they followed USPAP and their own standard practices, their valuation would have been over $600,000. *Id.* at 31–32. She repeatedly referred to industry standards and common practices.

Rule 702 requires an expert to have "knowledge, skill, experience, training, or education" in the field in which they are offering an opinion. Defendants argue that Dr. Howell is unqualified to opine on standards and industry practices for professional appraisers because she is not, and never has been, a certified appraiser. ECF 112-1 at 13. She has never performed an appraisal. *Id.* Because she is not an appraiser, they continue, she is not qualified to opine on whether an appraisal adhered to industry standards, industry regulations, or the individual appraiser's standard practices.

Plaintiffs rejoin that Dr. Howell's research on housing qualifies her to opine on appraisals. Because she is a leading expert on racial inequities in housing, they continue, and her research has included studies of appraisal practices, she has the experience required to opine on appraisals. ECF

9

131 at 20; *see also* 29 Wright & Miller, Fed. Prac. & Proc. Evid. § 6264.1 (2d ed. 2024) ("[A] witness with an academic background in a given area but no practical experience may still qualify as an expert."). She has spoken at conferences and written articles discussing appraisal.

While this Court does not diminish Dr. Howell's substantial expertise in housing, and even some aspects of appraisal, she is a sociologist, not an appraiser. While she certainly has expertise in sociology such that it is proper for her to offer statistical analysis regarding appraisals, she is not qualified to offer opinions on the propriety of an appraisal (including the specific selection of comparative properties and making adjustments) or an appraisal's compliance with professional standards. She has never conducted an appraisal, taken a licensing exam to become an appraiser, or been subject to the professional standards of the appraisal industry. This Court will exclude her opinions insofar as they purport to opine on whether Defendants complied with the USPAP, professional standards, or best practices for appraisals. While Dr. Howell is qualified to opine on appraisals from a sociological perspective (i.e., from a data analysis perspective), she is not qualified to opine on appraisal standards or practices themselves, or to evaluate whether a particular appraisal complied with those standards.

None of the caselaw Plaintiffs cite is to the contrary. Of course, this inquiry is more complicated than "Dr. Howell is not an appraiser, so she may not testify about appraisals." It is true that expert qualifications are not cut and dry. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999); *Friendship Heights Assocs. v. Vlastamil Koubek, A.I.A.*, 785 F.3d 1154, 1159 (4th Cir. 1986). This Court does not find that an expert must always be a certified appraiser to opine on any facet of appraising. But even under a standard favoring inclusion, this Court cannot find that Dr. Howell is qualified to assess whether an appraisal was done in a manner consistent with professional standards and regulations without having ever conducted an appraisal or been

10

subject to those standards. *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (experts may be excluded where they have "neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered"). As this Court has explained, Dr. Howell may appropriately testify about aspects of appraisal informed by her training and experience as a sociologist. She has conducted a robust statistical analysis comparing various appraisals that this Court has declined to strike. But she cannot, as a non-appraiser, opine on how appraisals must or should be done, or whether a particular appraisal met professional standards.

By contrast, Dr. Howell may permissibly opine that, based on her statistical analysis, Defendants deviated from their general practices in conducting this appraisal. She of course may not opine as to what Defendants should have done in the appraisal, but Plaintiffs make clear that she is not making any normative argument. ECF 131 at 24. As above, Defendants' critiques of the approach Dr. Howell took in her assessment bear on its usefulness in determining whether summary judgment is warranted, and potentially whether liability is appropriate. The Court will consider those arguments in assessing whether Dr. Howell's opinion contributes to the creation of a genuine issue of material fact.

The Court will grant the motion to exclude insofar as it applies to Dr. Howell opining on the validity of the appraisal of Plaintiffs' home and whether that appraisal comported with professional standards or norms for appraisers. The motion is denied as to Dr. Howell's opinions based on her statistical analysis comparing Defendants' work in White neighborhoods with their own work in non-White neighborhoods and comparing Defendant's work in non-White neighborhoods to the work of other appraisers.

## IV. CONCLUSION

For the reasons stated above, ECF 101 will be denied and ECF 112 will be granted in part and denied in part. A separate Order follows.


Dated: April 17, 2025

/s/
Stephanie A. Gallagher
United States District Judge